KEKER & VAN NEST LLP
RACHAEL E. MENY - # 178514
rmeny@kvn.com
SIMONA A. AGNOLUCCI - # 246943
sagnolucci@kvn.com
ALEXANDER DRYER - # 291625
adryer@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

Attorneys for Defendant LYFT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX ZAMORA and RAYSHON CLARK on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | Case No. 3:16-cv-02558-VC<br><br>**DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND/OR STAY CERTAIN CLAIMS IN AND PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:        October 13, 2016<br>Time:       10:00 a.m.<br>Dept:        Courtroom 4, 17th Floor<br>Judge:      Hon. Vince Chhabria<br><br>Date Filed:   May 11, 2016<br>Trial Date:   None Set |

1109731

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.    INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED .................................................... 1

III.    RELEVANT FACTS ............................................................................................. 2

IV.    ARGUMENT ......................................................................................................... 3

    A.    The conversion claim must be stricken in part and should be stayed in part. ........ 4

        1.    The conversion claim relies entirely on California Labor Code § 351. ...... 4

        2.    The conversion claim must be stricken as to drivers outside California, both because it is based solely on § 351 and because material differences in states' laws bar a nationwide claim for conversion. ................ 5

        3.    The conversion claim should be stayed as to California drivers insofar as it is based on conduct through July 1, 2016 that California drivers are releasing under the *Cotter* settlement. .................................................. 6

    B.    The contract claim must be dismissed because no contract supports it. ................ 7

    C.    The tortious interference claim is not based on independently wrongful conduct and thus rises and falls with the conversion claim: it must be stricken for drivers outside California and should be stayed for California drivers. ............ 8

    D.    The UCL claim for drivers nationwide must be dismissed. .................................... 9

        1.    The UCL claim cannot apply to wrongdoing outside California. .............. 9

        2.    No fraudulent, unlawful, or unfair conduct supports the UCL claim. ......... 9

    E.    The Labor Code claims must be dismissed because no facts support them— and, even if the Court disagrees, such claims should be stayed insofar as they are based on conduct through July 1, 2016 that drivers are releasing. ................. 11

        1.    The Labor Code claims must be dismissed. ................................................ 12

        2.    Alternatively, the Labor Code claims should be stayed in part ................ 14

    F.    The UCL claim on behalf of the California class is derivative of Plaintiffs' conversion and Labor Code claims and thus must be dismissed to the extent those claims are dismissed ........................................................................................ 14

    G.    The PAGA claims must be dismissed because Plaintiffs failed to follow PAGA's notice and administrative exhaustion requirements ................................ 15

i

DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND/OR
STAY CERTAIN CLAIMS IN AND PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT
Case No. 3:16-cv-02558-VC

1109731

V.      CONCLUSION ................................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND/OR
STAY CERTAIN CLAIMS IN AND PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT
Case No. 3:16-cv-02558-VC

1109731

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................3, 11, 13, 14

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................3, 11, 13, 14

*Brazil v. Dell Inc.*
    585 F. Supp. 2d 1158 (N.D. Cal 2008) ............................................6

*Campagna v. Language Line Servs., Inc.*
    No. 08-02488, 2012 WL 1565229 (N.D. Cal. May 2, 2012) ...............9, 10

Cotter v. Lyft, Inc.
    --- F. Supp. 3d ---, 2016 WL 1394236 (N.D. Cal. Apr. 7, 2016) ...........15

*Cotter v. Lyft, Inc.*
    --- F. Supp. 3d ---, No. 13-04065, 2016 WL 3561742 (N.D. Cal. June 23, 2016) .......2, 5, 7, 15

*Cotter v. Lyft, Inc.*
    60 F. Supp. 3d 1059 (N.D. Cal. 2014)................................................4, 5

*Countrywide Financial Corp v. National Labor Relations Board*
    No. 15-72700 (9th Cir.) ......................................................................1

*Formula One Licensing v. Purple Interactive*
    No. 00-2222, 2001 WL 34792530 (N.D. Cal. Feb. 6, 2001)................9

*Grayson v. 7-Eleven, Inc.*
    No. 09-1353, 2011 WL 2414378 (S.D. Cal. June 10, 2011) ...............6

*In Re Am. Medical Sys., Inc.*
    75 F.3d 1069 (6th Cir. 1996) ............................................................6

*In re JPMorgan Chase LPI Hazard Litig.*
    No. 11-03058, 2013 WL 3829271 (N.D. Cal. July 23, 2013)...............7

*Jaffe v. Morgan Stanley DW, Inc.*
    No. 06-3903, 2007 WL 163196 (N.D. Cal. Jan. 19, 2007) ................7

*Johnson v. Hewlett-Packard Co.*
    No. 09-3596, 2010 WL 2680772 (N.D. Cal. July 6, 2010)................4

*Kentmaster Mfg. Co. v. Jarvis Prod. Corp.*
    146 F.3d 691 (9th Cir. 1998), *amended,* 164 F.3d 1243 (9th Cir. 1999) ................8

*Landers v. Quality Commc'ns, Inc.*
    771 F.3d 638 (9th Cir. 2014) ............................................11, 12, 13, 14

1109731

*Leyva v. Certified Grocers of Cal., Ltd.*
  593 F.2d 857 (9th Cir. 1979) ........................................................................... 7

*Marsh v. First Bank of Delaware*
  No. 11- 05226, 2014 WL 2085199 (N.D. Cal. May 19, 2014) ........................... 6

*Mazza v. Am. Honda Motor Co.*
  666 F.3d 581 (9th Cir. 2012) ........................................................................... 6

*O'Connor v. Uber Techs., Inc.*
  58 F. Supp. 3d 989 (N.D. Cal. 2014) ........................................................... 5, 11

*O'Connor v. Uber Techs., Inc.*
  No. 13-3826, 2015 WL 5138097 (N.D. Cal. Sept. 1, 2015) ............................ 12

*Ohlweiler v. Bank of Am. Corp.*
  No. 15-2268, 2015 WL 8484526 (S.D. Cal. Dec. 9, 2015) ............................... 7

*Raphael v. Tesoro Ref. & Mktg. Co. LLC*
  No. 15-02862, 2015 WL 4127905 (C.D. Cal. July 8, 2015) ............................ 11

*Rice v. Fox Broad. Co.*
  330 F.3d 1170 (9th Cir. 2003) ....................................................................... 14

*Swartz v. KPMG LLP*
  476 F.3d 756 (9th Cir. 2007) (per curiam) ................................................... 11

*Sybersound Records, Inc. v. UAV Corp.*
  517 F.3d 1137 (9th Cir. 2008) ......................................................................... 8

*Tan v. GrubHub, Inc.*
  --- F. Supp. 3d ---, No. 15-05128, 2016 WL 1110236 (N.D. Cal. Mar. 22, 2016) ....... 11, 12, 15

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003) ....................................................................... 10

*Wilson v. Frito-Lay N. Am., Inc.*
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ............................................................ 6

*Yucesoy v. Uber Techs., Inc.*
  No. 15-00262, 2016 WL 493189 (N.D. Cal. Feb. 9, 2016) ............................... 8

*ZL Techs., Inc. v. Gartner, Inc.*
  No. 09-02393, 2009 WL 3706821 (N.D. Cal. Nov. 4, 2009) ........................... 10

**State Cases**

*Alling v. Universal Mfg. Corp.*
  5 Cal. App. 4th 1412 (1992) ........................................................................ 7, 8

*Caliber Bodyworks, Inc. v. Super. Ct.*
  134 Cal. App. 4th 365 (2005) ....................................................................... 15

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
  20 Cal. 4th 163 (1999) ................................................................................. 10

iv
DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND/OR
STAY CERTAIN CLAIMS IN AND PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT
Case No. 3:16-cv-02558-VC

1109731

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*
  11 Cal. 4th 376 (1995) ........................................................................................8

*Korea Supply Co. v. Lockheed Martin Corp.*
  29 Cal. 4th 1134 (2003) ......................................................................................8

*Lu v. Hawaiian Gardens Casino, Inc.*
  50 Cal. 4th 592 (2010) ...................................................................................5, 14

*North Alaska Salmon Co. v. Pillsbury*
  174 Cal. 1 (1916) ...............................................................................................9

*Schnall v. Hertz Corp.*
  78 Cal. App. 4th 1144 (2000) ...........................................................................10

*Sullivan v. Oracle Corp.*
  51 Cal. 4th 1191 (2011) ......................................................................................9

*Vahle v. Barwick*
  93 Cal. App. 4th 1323 (2001) .............................................................................7

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ...............................................................................3

Cal. Lab. Code § 226.7 .............................................................................................13

Cal. Lab. Code § 351 ..............................................................................4, 5, 7, 14

Cal. Lab. Code § 353 .................................................................................................14

Cal. Lab. Code § 512 .................................................................................................13

Cal. Lab. Code § 1174 ..............................................................................................14

Cal. Lab. Code § 1174.5 ...........................................................................................14

Cal. Lab. Code § 1174(d) ..........................................................................................14

Cal. Lab. Code § 2698 ................................................................................................3

Cal. Lab. Code § 2699.3(a) .......................................................................................15

Cal. Lab. Code § 2802 ..............................................................................................12

**Federal Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................10

Fed. R. Civ. P. 11(b)(3) .............................................................................................14

Fed. R. Civ. P. 12(b)(6) ..............................................................................................3

Fed. R. Civ. P. 12(f) ....................................................................................................4

v

1109731

Fed. R. Civ. P. 23 .................................................................................................. 4, 12

Fed. R. Civ. P. 23(c)(1) ............................................................................................. 6

**State Regulations**

Cal. Code Regs. tit. 8, § 11090 ............................................................................... 13

1109731

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at the time and place set forth above, or as soon thereafter as the matter may be heard, Defendant Lyft, Inc. will move the Court for an order dismissing, striking, and/or staying certain claims in and/or portions of Plaintiffs' First Amended Complaint. The grounds for this motion are that Plaintiffs' claims variously (1) fail to state a claim upon which relief can be granted, (2) cannot be maintained as a nationwide class action, and/or (3) should be stayed in light of the anticipated settlement in *Cotter et al. v. Lyft, Inc.*, No. 13-04065 (N.D. Cal.).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion to Dismiss, Strike, and/or Stay Certain Claims in and Portions of Plaintiffs' First Amended Complaint, all pleadings and papers on file in this action, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing of this matter.

Dated:  September 1, 2016                    KEKER & VAN NEST LLP


                                             By:    /s/ Rachael E. Meny
                                                    RACHAEL E. MENY
                                                    SIMONA A. AGNOLUCCI
                                                    ALEXANDER DRYER

                                                    Attorneys for Defendant LYFT, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Alex Zamora and Rayshon Clark seek to represent drivers across California and the nation who, at any time in the last two years, have used the ridesharing platform offered by Defendant Lyft, Inc.  But nearly every claim in Plaintiffs' First Amended Complaint ("FAC") must be dismissed, stricken, or stayed because the FAC is deficient in virtually every respect.  It applies the California Labor Code to drivers who use the Lyft platform entirely outside California—without explaining why such application is permissible.  It asserts a contract claim—without explaining what contract is at issue.  It advances a tortious interference claim—without identifying an independent wrong to support such a claim.  It alleges a raft of California Labor Code violations—without offering allegations to support them.  And it stacks derivative claims under the Unfair Competition Law and Private Attorney General Act on top of these deficient claims—without making any effort to comply with the requirements of those statutes.

These deficiencies are unsurprising.  This case began as little more than a bargaining chip for Plaintiffs, who at the time were seeking a cut of the pending settlement in *Cotter et al. v. Lyft, Inc.* After the *Cotter* plaintiffs rejected the *Zamora* Plaintiffs' attempt to get a part of the *Cotter* case, Plaintiffs filed the *Zamora* lawsuit as their bargaining chip, apparently seeking a stronger negotiating position.  Unfortunately for Plaintiffs, the demonstrable falsity of the primary allegation in their initial Complaint derailed their efforts.  Now, despite the opportunity to amend their pleading, Plaintiffs have succeeded only in replacing the glaring errors in their initial Complaint with a host of conclusory allegations that fail as a matter of law.  Enough is enough.  Plaintiffs have had two chances to state viable claims and have failed both times.[1]

## II.    STATEMENT OF ISSUES TO BE DECIDED

This motion raises the following issues: (1) whether the California Labor Code applies to conduct outside California; (2) whether Plaintiffs may disregard the release (and injunction) that the

---

[1] As discussed at the July 19, 2016 Case Management Conference, Lyft also intends to move to compel arbitration.  As ordered by the Court, Lyft will file its motion after the Ninth Circuit issues a ruling in *Countrywide Financial Corp v. National Labor Relations Board*, No. 15-72700 (9th Cir.).

1109731

Court entered in *Cotter*; (3) whether a third-party beneficiary contract claim can succeed when no contract supports it; (4) whether a tortious interference with prospective economic advantage claim can succeed in the absence of independently wrongful conduct; (5) whether the California Unfair Competition Law applies to conduct outside California; (6) whether California Labor Code claims can succeed when no specific factual allegation supports them; and (7) whether Plaintiffs may disregard the notice requirements in the Private Attorney General Act.

## III.    RELEVANT FACTS

Lyft is a ridesharing company based in San Francisco. FAC ¶ 14–15.[2] The Lyft platform uses a smartphone application to connect drivers and riders so that they can arrange transportation. *Id.* Plaintiffs in this case allegedly are drivers who use the platform. *Id.* ¶¶ 12-13.

Plaintiffs' suit began as an effort to receive a share of the then-proposed settlement in a class-action lawsuit pending against Lyft, *Cotter et al. v. Lyft, Inc*., No. 13-04065 (N.D. Cal.). On the day this Court denied preliminary approval of the first *Cotter* settlement, Plaintiffs' counsel in this case sent counsel for the *Cotter* plaintiffs an email with the subject "Lyft - navigating Chhabria." *Cotter*, D.E. 213-2 at *2. Counsel for the *Cotter* plaintiffs apparently rejected the offer of help, because Plaintiffs' counsel here soon followed up regarding a "new" basis for liability that he claimed to have discovered. *See id.* Days later, Plaintiffs filed the first Complaint in this action, D.E. 1, and moved to intervene in *Cotter* on the ground that the renewed settlement in that action improperly released the claims in their Complaint, *Cotter*, D.E. 213. Those claims were based on Plaintiff's allegation that Lyft wrongfully charged drivers a commission on the "Prime Time" premiums riders paid during periods of high demand. D.E. 1, ¶¶ 17–26, 35–37, 58–98. After the Court received additional evidence, however, deficiencies in Plaintiffs' Complaint emerged. *See Cotter v. Lyft, Inc.*, --- F. Supp. 3d ---, No. 13-04065, 2016 WL 3561742, at *6 (N.D. Cal. June 23, 2016). The Court denied Plaintiffs' request to intervene, *Cotter*, D.E. 253, and preliminarily approved the *Cotter* settlement, 2016 WL 3561742, at *7.

The settlement releases, through the date of a formal preliminary approval order, all claims:

---

[2] In explaining (and when necessary, relying on) Plaintiffs' allegations here and throughout the Motion, Lyft does not indicate that it accepts them.

1109731

1  that are based on or reasonably related to the claims asserted in the Action, including
2  as amended pursuant to this Agreement, and specifically the following claims based
   on or reasonably relating to claims asserted or alleged in the Action: . . . claims
3  pursuant to Labor Code sections . . . [including] 351, . . . and claims under Business
   and Professions Code section 17200, et seq.

4  *Cotter*, D.E. 206-1, ¶ 24(h); ¶ 24(jj), ¶ 24(ss).

5       On July 1, 2016, following its opinion regarding approval, the Court entered a formal

6  preliminary approval order that set a final approval hearing for December 1, 2016 and that enjoined

7  settlement class members who had not yet opted out of the settlement from asserting class claims

8  that would be released.  *Cotter*, D.E. 256 at ¶ 15.

9       On July 6, 2016, Plaintiffs filed their FAC.  The FAC, like the initial Complaint, alleges that

10 Lyft's practice of charging a commission on Prime Time premiums constitutes conversion, breach of

11 contract, and tortious interference with prospective economic advantage.  FAC ¶¶ 6, 7.b, 8, 63–86.

12 The FAC also alleges that drivers using the Lyft platform should be classified as employees and thus

13 that Lyft's classification of them as independent contractors violates various provisions of the

14 California Labor Code, which also are actionable under California's Unfair Competition Law

15 (UCL), Cal. Bus. & Prof. Code § 17200 et seq., and Private Attorney General Act (PAGA), Cal.

16 Lab. Code § 2698 et seq.  FAC ¶¶ 6, 7.a, 8, 9, 99–144.  The FAC asserts the Prime-Time allegations

17 on behalf of a proposed nationwide class and the driver-classification allegations on behalf of a

18 proposed California class.  FAC ¶¶ 10–11.  The FAC defines the class period for both classes as

19 August 18, 2014 through the present.  *Id.* ¶¶ 10, 11, 23.

20 **IV.    ARGUMENT**

21      Plaintiffs' FAC must satisfy several requirements to survive a motion to dismiss under

22 Federal Rule of Civil Procedure 12(b)(6).  First, although the Court should accept material factual

23 allegations as true, it must determine whether Plaintiffs have pled such allegations.  Pleadings that

24 are "no more than conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556

25 U.S. 662, 679 (2009).  "Threadbare recitals of the elements" of a claim, rather than factual

26 allegations, "do not suffice."  *Id.* at 678.  Second, the Court must determine whether the FAC states a

27 plausible claim for relief.  *Iqbal*, 556 U.S. at 679.  The FAC must allege facts showing that the "right

28 to relief [rises] above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1109731

To survive a motion to strike under Rule 12(f), Plaintiffs' FAC must demonstrate that it plausibly could proceed as class action. While the text of Rule 12(f) is, "[s]trictly speaking," silent on this point, "[c]ourts in this circuit have permitted [a] broad use of Rule 12(f)" to seek "a preemptive determination of whether [an] action qualifies as a class action under Rule 23," even before a motion for class certification. *Johnson v. Hewlett-Packard Co.*, No. 09-3596, 2010 WL 2680772, at *4 (N.D. Cal. July 6, 2010) (*citing Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 988–89 (N.D.Cal. 2009)); *see, e.g.*, *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1061 (N.D. Cal. 2014).

Here, the vast majority of Plaintiffs' allegations cannot clear one or both of these hurdles. Broadly speaking, Plaintiffs' claims fall into three categories and fail for three reasons. First, Plaintiffs' Prime Time claims largely must be stricken because they require applying California labor law outside the state and are otherwise not maintainable as a national class action. Second, Plaintiffs' California Labor Code claims must be dismissed because Plaintiffs have offered only threadbare allegations that do not satisfy the Ninth Circuit's pleading standards. Third, a variety of derivative claims that depend on either the Prime Time or Labor Code claims cannot survive the failure of the causes of action on which they depend and therefore must be dismissed as well. Finally, to the extent a limited set of claims may proceed on behalf of the California class alone, such claims should be stayed in part given the pending settlement in *Cotter*.

**A. The conversion claim must be stricken in part and should be stayed in part.**

Plaintiffs' conversion claim, which as pled relies solely on section 351 of the California Labor Code, fails as to the majority of the proposed nationwide class. Drivers outside California cannot invoke the California Labor Code, nor could they bring, in a single class action, the 33 different conversion claims required here given material differences in state conversion law. Accordingly, these claims must be stricken. As for drivers in California: they are releasing section 351 claims through July 1, 2016 under the *Cotter* settlement, and thus claims based on conduct before that date should be stayed. The conversion claim can proceed only as to California drivers, and, unless they opt out, only for the period after July 1, 2016.

**1. The conversion claim relies entirely on California Labor Code § 351.**

Plaintiffs allege Lyft engages in "conversion" through a practice of charging a commission

4

1109731

on some Prime Time payments, which Plaintiffs assert "are property under California and other states' laws, either because they are gratuities or because they are property given to Drivers by Riders." FAC ¶ 65. Despite the vague reference to "laws," Plaintiffs' only *specific* allegation is that "California law [applies] to the claims of the Nationwide Class" and that "Cal. Labor Code § 351" creates the property right as to Prime Time payments. *Id.* ¶¶ 64–65; *see also id.* ¶ 47.a.

Without section 351, Plaintiffs have not stated a claim. What else establishes that Prime Time premiums are gratuities or driver property in California? What establishes this status at all in the more than 30 other states (FAC ¶ 14) at issue? Plaintiffs do not say. Plaintiffs failed to plead a conversion claim that does not rely on California labor law. And notably, Plaintiffs failed to do so even though they filed the currently operative Complaint (their second) *after* this Court warned that their conversion claim would be released by the *Cotter* settlement to the extent it "depend[s] on a contention that Lyft's conduct violated section 351." *Cotter*, 2016 WL 3561742, at *2. Put simply, Plaintiffs had clear notice that they should plead a non-section 351 conversion claim, and ample opportunity to do so, and yet did not. The reason is clear: they have *only* a section 351 claim.

> **2. The conversion claim must be stricken as to drivers outside California, both because it is based solely on § 351 and because material differences in states' laws bar a nationwide claim for conversion.**

The law is settled that the California Labor Code, including section 351, does not apply outside the state. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1006 (N.D. Cal. 2014). As this Court held in *Cotter*, "regardless of the connection between Lyft and California, Lyft drivers who worked in other states cannot bring claims under California's wage and hour statutes." *Cotter*, 60 F. Supp. 3d at 1061. As explained above, Plaintiffs' conversion claim relies entirely on section 351—and thus attempts to apply California labor law to drivers outside the state. That Plaintiffs use a common-law tort to assert the Labor Code does not change the analysis. As California's Supreme Court has explained, section 351 does not create a private right of action, and the appropriate remedy for an alleged violation of the statute is (or at least includes) a common-law claim for conversion. *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 603-04 (2010). Thus, even though Plaintiffs bring state-law conversion claims, they do so based on a California Labor Code right. Such claims must be stricken as to non-California drivers.

1109731

Moreover, even if Plaintiffs somehow could articulate a property right with respect to Prime Time premiums that did not rely on the California Labor Code, non-California drivers still could not bring their conversion claims in this action. Plaintiffs assert conversion on behalf of drivers in at least 33 states, FAC ¶ 14, but cannot hope to show either that California's tort law should apply class-wide *or* that a class action involving at least 33 states' *different* tort laws is permissible. The law of conversion varies in material respects across the nation. *Marsh v. First Bank of Delaware*, No. 11- 05226, 2014 WL 2085199, at *5 (N.D. Cal. May 19, 2014) (explaining differences). Plaintiffs thus have no practical ability to show that California law should trump dozens of other states' interests in applying their own law of conversion. *See id.*; *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) (explaining choice-of-law analysis). And if California law does not apply across the class, Plaintiffs cannot satisfy Rule 23's requirements with respect to their conversion claim. *See Grayson v. 7-Eleven, Inc.*, No. 09-1353, 2011 WL 2414378, at *6 (S.D. Cal. June 10, 2011) (decertifying class given difficulty of applying different states' conversion laws).

While Plaintiffs doubtless will argue that striking their nationwide conversion claim is premature, "courts have struck class allegations where it is clear from the pleadings that class claims cannot be maintained." *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1148 (N.D. Cal. 2013); *see also In Re Am. Medical Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law"). Rule 23(c)(1) instructs courts to rule on class certification "[a]t an early practicable time" after a suit is filed. Here, Plaintiffs' proposed nationwide class suffers from an inherent legal defect that no amount of discovery will cure. Accordingly, it is "practicable" and efficient for the Court to strike class allegations now. *See Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166–67 (N.D. Cal 2008); Fed. R. Civ. P. 23(c)(1).

### 3. The conversion claim should be stayed as to California drivers insofar as it is based on conduct through July 1, 2016 that California drivers are releasing under the *Cotter* settlement.

Turning to drivers in California: the release in *Cotter* applies to all claims "that are based on or reasonably related to the claims asserted . . . , and specifically . . : claims pursuant to Labor Code sections . . . [including] 351." *Cotter*, D.E. 206-1, ¶ 24(h); *id.* ¶ 24(jj). Thus, as the Court previously

held, "the agreement in *Cotter* releases . . . Prime Time gratuity claims [in *Zamora*] based on California Labor Code section 351." *Cotter*, 2016 WL 3561742, at *5. That release runs through July 1, 2016. *Cotter*, D.E. 206-1; ¶ 24(ss); D.E. 256.

Given Plaintiffs' failure to assert any basis for their conversion claim other than section 351 (see Section IV.A.1, above), and their proposed class period of August 18, 2014 through the present (FAC ¶¶ 10, 23), Plaintiffs' conversion claim overlaps significantly with claims released under the *Cotter* settlement. With the final approval hearing in *Cotter* scheduled for December 1, 2016, proceeding now with claims that may soon be subject to dismissal makes little sense. Indeed, some courts stay overlapping class actions even before *preliminary* approval is granted, when settlement discussions in one action reach a sufficiently advanced state. *See, e.g.*, *In re JPMorgan Chase LPI Hazard Litig.*, No. 11-03058, 2013 WL 3829271, at *5 (N.D. Cal. July 23, 2013); *Jaffe v. Morgan Stanley DW, Inc.*, No. 06-3903, 2007 WL 163196, at *2 (N.D. Cal. Jan. 19, 2007). This Court has inherent power to stay its proceedings to serve the interests of efficiency and fairness. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). Accordingly, Lyft respectfully requests that the Court stay the California conversion claim to the extent it overlaps with conduct released by the *Cotter* settlement. Lyft anticipates that upon final resolution of *Cotter*, addressing such overlap will be noncontroversial.

### B. The contract claim must be dismissed because no contract supports it.

Plaintiffs' breach of contract claim must be dismissed because Plaintiffs do not allege *any* facts to support it. Under California law, a "third party's right to enforce covenants of a contract is predicated on the contracting parties' intent to benefit the third party." *Vahle v. Barwick*, 93 Cal. App. 4th 1323, 1328 (2001). A "party cannot establish third party beneficiary status unless he or she carries the burden of proving that the contracting parties' intended purpose in executing their agreement was to confer a direct benefit on the alleged third party beneficiary." *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1439 (1992). Here, Plaintiffs have not pled any facts suggesting how they intend to meet that burden. Most notably, they do not even identify the contract on which their claim relies. This failure alone mandates dismissal. *See Ohlweiler v. Bank of Am. Corp.*, No. 15-2268, 2015 WL 8484526, at *3 (S.D. Cal. Dec. 9, 2015) (dismissing third-party beneficiary claim

based on plaintiff's failure to provide a copy of the contract or plead facts supporting the claim); *see also Yucesoy v. Uber Techs., Inc.*, No. 15-00262, 2016 WL 493189, at *4 (N.D. Cal. Feb. 9, 2016) (reaching same result under Massachusetts law because plaintiffs did "not identify what contract is at issue . . . or which terms of the contract show that the contract was clearly and definitely meant to benefit the driver").

To the extent Plaintiffs intend to argue that the in-app Prime Time "pop up" riders see before requesting a ride is the "contract," *compare* FAC ¶ 72, *with id.* ¶¶ 23, 24, their cause of action still fails. Even if the single sentence displayed in this pop up were a contract, Plaintiff cannot seriously contend that the language at issue meets its burden under *Alling*, 5 Cal. App. 4th at 1439. Plaintiffs' contract claim must be dismissed.

**C.     The tortious interference claim is not based on independently wrongful conduct and thus rises and falls with the conversion claim: it must be stricken for drivers outside California and should be stayed for California drivers.**

Plaintiffs' claim for tortious interference with prospective economic advantage rises and falls with their conversion claim because they rely on their allegation of conversion to meet an essential element of a tortious interference claim: intentional and independently wrongful conduct. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008).[3] Tortious interference is a derivative claim that carries with it the "burden of pleading and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995) (internal quotations omitted). Put another way, a tortious interference claim cannot "punish . . . commercial entities for . . . their pursuit of commercial objectives . . . unless their interference amounts to independently actionable conduct." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158-59 (2003). Under this standard, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159.

Accordingly, a claim for tortious interference fails when the claims for the underlying allegedly unlawful conduct fail. *See Kentmaster Mfg. Co. v. Jarvis Prod. Corp.*, 146 F.3d 691, 695

---

[3] As explained below, Plaintiffs' UCL claims are, like the tortious interference claim, derivative, and thus cannot themselves constitute independently wrongful conduct.

1109731

1   (9th Cir. 1998), *amended,* 164 F.3d 1243 (9th Cir. 1999); *Formula One Licensing v. Purple*

2   *Interactive*, No. 00-2222, 2001 WL 34792530, at *4 (N.D. Cal. Feb. 6, 2001).  Here, as explained

3   above, Plaintiffs have not alleged a viable claim for conversion with respect to drivers outside

4   California, and thus Plaintiffs' tortious interference claim must be stricken with respect to such

5   drivers.  With respect to California drivers, given the pending *Cotter* settlement's effect on

6   Plaintiffs' conversion claim, their tortious interference claim should be stayed to the extent it is

7   based on released conduct through July 1, 2016.  *See* Section IV.A.3, above.

8           **D.      The UCL claim for drivers nationwide must be dismissed.**

9           Plaintiffs' UCL claim on behalf of a proposed nationwide class must be dismissed because

10  the UCL applies only to alleged wrongdoing carried out *within California*—yet Plaintiffs have not

11  alleged any such wrongdoing to which drivers *outside California* have been subject.  Moreover,

12  because Plaintiffs' nationwide UCL claim fails as to non-California drivers, it should be dismissed in

13  its entirety because it is duplicative of Plaintiffs' California UCL claim.  *Compare* FAC ¶ 85, *with*

14  *id.* ¶ 97.

15          **1.      The UCL claim cannot apply to wrongdoing outside California.**

16          In proposing a nationwide class for their UCL claim, Plaintiffs contravene at least a century

17  of California law holding that such an exterritorial application of the state's law is impermissible.

18  "Ordinarily the statutes of a state have no force beyond its boundaries. . . .  Although a state may

19  have the power to legislate concerning the rights and obligations of its citizens with regard to

20  transactions occurring beyond its boundaries, the presumption is that it did not intend to give its

21  statutes any extraterritorial effect."  *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916).

22  Here, "[n]either the language of the UCL nor its legislative history provides any basis for concluding

23  the Legislature intended the UCL to operate extraterritorially."  *Sullivan v. Oracle Corp.*, 51 Cal. 4th

24  1191, 1207 (2011).  Thus, an out-of-state plaintiff's "UCL claim survives only to the extent it is

25  based on permissible applications" of California law.  *Campagna v. Language Line Servs., Inc.*,

26  No. 08-02488, 2012 WL 1565229, at *4 (N.D. Cal. May 2, 2012).

27          **2.      No fraudulent, unlawful, or unfair conduct supports the UCL claim.**

28          Here, Plaintiffs have not identified, under any of the UCL's three prongs, either an instance

9

1109731

of wrongdoing carried out in California to which drivers outside California were subject or a permissible application of California law to drivers outside California.

**No unlawful conduct**:  Plaintiffs cannot make out a claim under the UCL's "unlawful" prong because they have not identified a viable claim of unlawful conduct as to non-California drivers.  Plaintiffs' conversion claim is an effort to apply the Labor Code outside California, a use of the UCL that courts reject.  *See, e.g., Campagna*, 2012 WL 1565229, at *4.  Plaintiffs' contract claim fails because they have not offered any facts to support it, including an identification of the contract at issue.  And Plaintiffs' tortious interference claim rests on their impermissible conversion claim.

**No unfair conduct**:  Plaintiffs similarly cannot proceed under the UCL's "unfair" prong because they have not identified a specific "public policy" (FAC ¶ 85.b) that Lyft violated with respect to non-California drivers.  Unfair conduct under the UCL must be "tethered" to specific constitutional, statutory, or regulatory authority.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185-87 (1999).  Although some courts initially read *Cel-Tech* as limited to so-called "competitor" cases, it in fact establishes that even when a case "does not pertain to unfair competition between direct competitors, . . . *any* claims of unfairness under the UCL should be defined in connection with a legislatively declared policy."  *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166 (2000).  Here, the only policy Plaintiffs cite is the Labor Code—which, again, does not apply outside the state—and arguably their deficient contract and tortious interference claims.

**No fraudulent conduct**:  Finally, Plaintiffs also cannot make out a claim under the UCL's fraud prong because they have not pled fraud with particularity or alleged reliance.  A plaintiff who invokes the UCL's "fraud" prong in federal court must comply with the heightened pleading requirements of Rule 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1100, 1103 (9th Cir. 2003).  This requirement is in addition to California law, which holds that, to make out a UCL fraud claim, "a plaintiff must demonstrate with specificity that a defendant's alleged misrepresentations: 1) were relied upon by the plaintiffs; 2) were material; 3) influenced the plaintiff's decision that caused their injury; and 4) were likely to deceive members of the public."  *ZL Techs., Inc. v. Gartner, Inc.*, No. 09-02393, 2009 WL 3706821, at *11 (N.D. Cal. Nov. 4, 2009).  Accordingly, "UCL fraud plaintiffs must allege their *own* reliance—not the reliance of third parties—to have standing under

10

1109731

the UCL." *O'Connor*, 58 F. Supp. 3d at 989.

Here, Plaintiffs' allegations of fraud are deficient. First, to the extent Plaintiffs allege that Lyft engaged in fraudulent conduct towards ***drivers***, the FAC is devoid of specifics. Claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). But Plaintiffs offer only the conclusory statement that "Lyft engaged in fraudulent acts by retaining of a portion of the Prime Time Premiums, because Lyft communicated to Drivers and Riders that 100% of the Prime Time Premiums would be paid to Drivers, when in reality it was taking 20% for itself." FAC ¶ 85(c). Second, to the extent Plaintiffs allege that Lyft engaged in fraudulent conduct towards ***riders***—which in fact does seem to be their complaint, FAC ¶¶ 35, 36—Plaintiffs are pleading "the reliance of third parties" and thus do not have standing under the UCL. *O'Connor*, 58 F. Supp. 3d at 1002.

### E. The Labor Code claims must be dismissed because no facts support them—and, even if the Court disagrees, such claims should be stayed insofar as they are based on conduct through July 1, 2016 that drivers are releasing.

Plaintiffs' Labor Code claims on behalf of the proposed California class must be dismissed because Plaintiffs have failed to satisfy the pleading standards that courts in the Ninth Circuit apply to labor-law claims following the Supreme Court's *Twombly* and *Iqbal* decisions. *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014), *as amended* (Jan. 26, 2015), *cert. denied*, 135 S. Ct. 1845 (2015). *Landers* is one of many Court of Appeals decisions across the country that addressed the particular problem of threadbare allegations in the labor-law context. *See* 771 F.3d at 641–46 (collecting cases). And "[a]lthough *Landers* discussed FLSA claims, its reasoning applies to California Labor Code claims as well." *Tan v. GrubHub, Inc.*, --- F. Supp. 3d ---, No. 15-05128, 2016 WL 1110236, at *3 (N.D. Cal. Mar. 22, 2016); *see also Raphael v. Tesoro Ref. & Mktg. Co. LLC*, No. 15-02862, 2015 WL 4127905, at *2 (C.D. Cal. July 8, 2015). Because Plaintiffs' Labor Code claims rest on allegations of the sort *Landers* rejects, they must be dismissed. But to the extent the Court disagrees, Lyft respectfully requests that the claims be stayed insofar as they overlap with claims released under the *Cotter* settlement.

DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND/OR
STAY CERTAIN CLAIMS IN AND PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT
Case No. 3:16-cv-02558-VC

1109731

### 1. The Labor Code claims must be dismissed.

#### a. The expense-reimbursement claim fails.

Plaintiffs' reimbursement claim under California Labor Code § 2802 must be dismissed because it lacks factual support. Plaintiffs allege that "***Lyft Drivers*** incur expenses that include mileage costs, cell phone service to maintain required email and/or text message contact with Lyft, car cleaning and repair to comply with Lyft requirements, and water, snacks, and/or other supplies for Riders, among other expenses"—without any explanation of the expenses ***Plaintiffs themselves*** allegedly have incurred. FAC ¶ 102. Although Plaintiffs "seek the amount of the respective unpaid expenses owed them," *id.* ¶ 104, they do not explain what those expenses are.

This lack of factual specificity is fatal to Plaintiffs' claims. To be sure, *Tan* allowed a facially similar section 2802 claim to proceed notwithstanding the defendant's argument that *Landers* required dismissal. *See* 2016 WL 1110236, at *3–4. But the complaint in that case was different from the one here in one critical respect: it identified the expenses the ***plaintiffs themselves*** allegedly had incurred. *Tan*, No. 15-cv-05128, D.E. 15 ¶ 15. Such specificity is particularly important in a proposed class action, since the expenses that the proposed named plaintiffs seek and do not seek directly inform the adequacy inquiry under Rule 23. *See O'Connor v. Uber Techs., Inc.*, No. 13-3826, 2015 WL 5138097, at *13–14 (N.D. Cal. Sept. 1, 2015). Thus even if this claim could proceed, by failing to allege the unreimbursed expenses they themselves claim, Plaintiffs ensure a dispute at class certification that could otherwise be easily avoided.

#### b. The overtime and minimum wage claims fail.

Plaintiffs' overtime and minimum wage claims must be dismissed because they do not identify a week in which they allege that they were denied overtime compensation or the minimum wage. Plaintiffs allege only that they "periodically worked more than eight hours in a day or 40 hours in a week" and that "Lyft had a policy and practice of failing and refusing to pay them overtime." FAC ¶ 108.

These allegations are identical to those the Ninth Circuit found deficient in *Landers*. As in *Landers*, Plaintiffs do "not allege facts showing that there was a given week in which [they were] entitled to but denied minimum wages or overtime wages." 771 F.3d at 645. The rule announced in

1109731

*Landers* is clear: "at a minimum the plaintiff must allege at least one workweek when he worked in excess of forty hours and was not paid for the excess hours in that workweek, or was not paid minimum wages." *Id.* at 646. Plaintiffs have not done so.

### c.      The reporting time pay and meal and rest break claims fail.

Plaintiffs' reporting time pay and meal and rest break claims must be dismissed because they simply repeat the elements of a cause of action under the relevant statutes and regulations. *See* Cal. Code Regs. tit. 8, § 11090, ¶ 5 (reporting time); Cal. Lab. Code §§ 226.7, 512; Cal. Code Regs. tit. 8, § 11090, ¶¶ 11–12 (meal and rest breaks). Plaintiffs allege that they "periodically reported for work and were prevented from working at all or for more than half of their usual schedule" and that "Lyft had a policy and practice of failing and refusing to pay them reporting time pay." FAC ¶ 118. They further allege that they "periodically worked four to five hours or more in a day" and that "Lyft had a policy and practice of failing and refusing to allow them to take" meal and rest breaks. *Id.* ¶ 123.

What these allegations even mean in the context of a service that "connect[s] [riders] with Lyft Drivers through a mobile phone application" (FAC ¶ 15 n.1) is unclear. When and how did Plaintiffs "report[] for work"? When and how did Lyft "prevent[] [them] from working"? When Plaintiffs were driving, how did Lyft "refus[e] to allow them to take a . . . break" for meals or rest? Plaintiffs' allegations contain no answers—much less plausible ones—to these questions. Their allegations are thus insufficient. *Landers*, 771 F.3d at 641.

### d.      The wage statement claim fails.

Plaintiffs' wage statement claim must be dismissed because it is devoid of factual detail. Plaintiffs allege that "Lyft's wage statements do not clearly itemize earnings in a way that Drivers can readily identify whether they received all applicable bonuses, premiums, and other tips and pay for which they were eligible under Lyft promotions, programs, or policies." FAC ¶ 128. Plaintiffs do not explain what this allegation means. Can Plaintiffs *themselves* not identify the information at issue? Is the information not listed at all—or is it listed but not "clearly"? Notably, Plaintiffs do not allege that they have not *received* wage statements, and thus they easily could review the statements they are challenging and explain what is missing. Again, such specificity is what *Twombly*, *Iqbal*, and *Landers* demand.

13

1109731

### e. The recordkeeping claim fails.

Plaintiffs' recordkeeping claim must be dismissed for at least two reasons. First, Plaintiffs assert a claim under Cal. Lab. Code § 353, but no California cases recognize such a cause of action, and the state's Supreme Court has held that a closely related statute, Cal. Lab. Code § 351, does not create a private right of action. *Lu*, 50 Cal. 4th at 603. Put simply, Plaintiffs may not sue under section 353. Second, as to Cal. Lab. Code §§ 1174 and 1174.5, although Plaintiffs' statements are framed as factual allegations, they are simply restatements of the elements of a cause of action, *compare* FAC ¶ 133, *with* Cal. Lab. Code § 1174(d). The lack of any basis for such allegations is apparent from how they are pled: Plaintiffs do not assert them "on information and belief" or under Rule 11(b)(3), and yet they concern the contents of Lyft's internal databases—information that Lyft itself considers a trade secret. Plaintiffs cannot escape *Twombly*, *Iqbal*, and *Landers* simply by repeating a statute as an allegation.

### 2. Alternatively, the Labor Code claims should be stayed in part.

While all of Plaintiffs' Labor Code claims fail for the reasons set forth above, should the Court disagree, Lyft respectfully requests that the Court stay the Labor Code claims to the extent that the class period alleged by Plaintiffs overlaps with claims released by the *Cotter* settlement. *See* Section IV.A.3, above.

### F. The UCL claim on behalf of the California class is derivative of Plaintiffs' conversion and Labor Code claims and thus must be dismissed to the extent those claims are dismissed.

Plaintiffs' UCL claim on behalf of the proposed California class derives from and depends on Plaintiffs' conversion and Labor Code claims. *See* FAC ¶¶ 89–96. As such, the UCL claim must be dismissed insofar as the underlying predicate claims are dismissed. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1182 (9th Cir. 2003).

To the extent Plaintiffs contend that they also have asserted non-derivative UCL liability under the statute's unfairness or fraud prongs, *see* FAC ¶ 97.b–c, they have failed to identify an independent legal violation constituting unfairness and have failed to plead fraud with specificity or with allegations of reliance. *See* Section IV.E.2, above.

1109731

### G. The PAGA claims must be dismissed because Plaintiffs failed to follow PAGA's notice and administrative exhaustion requirements.

Like Plaintiffs' UCL claim, the PAGA claim is derivative of Plaintiffs' Labor Code claims and thus must be dismissed to the extent those claims are dismissed. However, the PAGA claim also fails for an independent reason: Plaintiffs have failed to satisfy the prerequisite for filing such a claim. In bringing a PAGA action, a plaintiff assumes significant powers that normally belong to the state. *Cotter v. Lyft, Inc.*, --- F. Supp. 3d ---, 2016 WL 1394236, at *9 (N.D. Cal. Apr. 7, 2016). Given this unusual delegation of the state's police power to a private litigant, a plaintiff can bring suit "only after the [statutory] requirements have been met." Cal. Lab. Code § 2699.3(a). These include "giv[ing] written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation," and then receiving from the LWDA notice "that it does not intend to investigate the alleged violation" (or, alternatively, receiving no notice "within 33 calendar days"). *Id.* Courts routinely dismiss PAGA claims that have not satisfied these administrative exhaustion requirements. *See, e.g.*, *Tan*, 2016 WL 1110236, at *8; *Caliber Bodyworks, Inc. v. Super. Ct.*, 134 Cal. App. 4th 365, 384 (2005).

Here, Plaintiffs did not comply with the requirements of section 2699.3. They admit that they provided notice to the LWDA and Lyft on the very day they filed their FAC, without waiting for a response. FAC ¶ 143. Accordingly, Plaintiffs' PAGA claim must be dismissed.

## V. CONCLUSION

For the foregoing reasons, Lyft respectfully requests that the Court dismiss, strike, and stay the identified claims in and portions of Plaintiffs' First Amended Complaint.

Dated: September 1, 2016          KEKER & VAN NEST LLP


By:  */s/ Rachael E. Meny*
RACHAEL E. MENY
SIMONA A. AGNOLUCCI
ALEXANDER DRYER

Attorneys for Defendant LYFT, INC.

15

DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND/OR
STAY CERTAIN CLAIMS IN AND PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT
Case No. 3:16-cv-02558-VC

1109731