Jahan C. Sagafi (Cal. Bar No. 227887)
jsagafi@outtengolden.com
Julia Rabinovich (Cal. Bar No. 290730)
jrabinovich@outtengolden.com
Relic Sun (Cal. Bar No. 306701)
rsun@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

*Counsel for Plaintiffs, Aggrieved Employees, and Proposed Class Members*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

ALEX ZAMORA and RAYSHON CLARK on behalf of themselves and all those similarly situated,

                    Plaintiffs,

          v.

LYFT, INC.,

                    Defendant.

Case No. 3:16-cv-02558

**PLAINTIFFS' OPPOSITION TO LYFT'S MOTION TO DISMISS, STRIKE, AND/OR STAY**

Hon. Judge Vince Chhabria

Complaint Filed: May 11, 2016

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 1

ARGUMENT ......................................................................................................... 2

    I.    Plaintiffs Have Stated a Breach of Contract Claim. .................................. 3

    II.    Plaintiffs Have Stated a TIPEA Claim. ................................................... 5

    III.    Plaintiffs Have Adequately Pled the Elements of a Nationwide UCL Claim. .......... 6

        A.    Plaintiffs' Nationwide UCL Claim Is Based on Lyft's Conduct in California. ................................................................. 6

        B.    Plaintiffs Allege Facts Sufficient to Plead a UCL Claim. .......................... 7

            1.    Lyft's Misrepresentations that Its Prime Time Premiums Are "for the Driver" Are Unfair. ................................................. 7

            2.    Lyft's Conduct Is Also Unlawful. ................................................. 9

            3.    Plaintiffs Request Leave to Amend Their Claim Under the Fraudulent Prong of the UCL. ................................................. 10

    IV.    Plaintiffs Have Sufficiently Pled an Expense Reimbursement Claim. ................... 11

    V.    Plaintiffs Seek to Amend the Remaining Labor Code and Conversion Claims. ....................................................................... 12

    VI.    The Court Should Permit Plaintiffs to Amend Their PAGA Claim. ...................... 14

    VII.    A Stay Would Be Inappropriate. ......................................................... 15

CONCLUSION ..................................................................................................... 15

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page(s)**

*In re Adobe Sys., Inc. Privacy Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................7

*Alling v. Universal Mfg. Corp.*,
    7 Cal. Rptr. 2d 718 (Cal. Ct. App. 1992) ..........................................................4

*Ambriz v. Coca-Cola Co.*,
    No. 13 Civ. 3539 JST, 2013 WL 5947010 (N.D. Cal. Nov. 5, 2013) ..............12, 13

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15 MD 2617 LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ..................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .........................................................................................2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .........................................................................................2

*Brinker Rest. Corp. v. Super. Ct.*,
    273 P.3d 513 (Cal. 2012) ................................................................................13

*Bus. Integration Tech. v. MuleSoft Inc.*,
    No. 11 Civ. 4782 EDL, 2011 WL 5914012 (N.D. Cal. Nov. 28, 2011) ...............5

*Caliber Bodyworks, Inc. v. Super. Ct.*,
    36 Cal. Rptr. 3d 31 (Cal. Ct. App. 2005) ........................................................14

*Camacho v. Auto. Club of S. Cal.*,
    48 Cal. Rptr. 3d 770 (Cal. Ct. App. 2006) .........................................................9

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..........................................................8, 10

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    83 Cal. Rptr. 2d 548 (Cal. Ct. App. 1999) ......................................................7, 9

*Cousins v. Lockyer*,
    568 F.3d 1063 (9th Cir. 2009)...........................................................................2

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
    902 P.2d 740 (Cal. 1995) ..................................................................................5

*Doe v. SuccessfulMatch.com*,
    70 F. Supp. 3d 1066 (N.D. Cal. 2014) .............................................................10

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................................10

*Donovan v. RRL Corp.*,
    27 P.3d 702 (Cal. 2001) ..................................................................................3, 4

*Ehret v. Uber Techs., Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014). ........................................................................6

*Estrella v. Freedom Fin. Network, LLC*,
    No. 09 Civ. 3156 SI, 2010 WL 2231790 (N.D. Cal. June 2, 2010) ...........................7

*Givemepower Corp. v. Pace Compumetrics, Inc.*,
    No. 07 Civ. 157, 2007 WL 2345027 (S.D. Cal. Aug. 14, 2007)................................6

*In re iPhone 4S Consumer Litig.*,
    No. 12 Civ. 1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) .......................6

*Johnson v. Q.E.D. Envtl. Sys. Inc.*,
    No. 16 Civ. 01454 WHO, 2016 WL 4658963 (N.D. Cal. Sept. 7, 2016) .................13

*Johnson v. Sunrise Senior Living Mgmt., Inc.*,
    No. 16 Civ. 443, 2016 WL 917888 (C.D. Cal. Mar. 8, 2016)..................................14

*Jordan v. Paul Fin., LLC*,
    745 F. Supp. 2d 1084 (N.D. Cal. 2010) ..................................................................10

*In re JPMorgan Chase LPI Hazard Litig.*,
    No. 11 Civ. 03058 JCS, 2013 WL 3829271 (N.D. Cal. July 23, 2013)...................15

*Kaar v. Wells Fargo Bank, N.A.*,
    No. 16 Civ. 1290 WHA, 2016 WL 3068396 (N.D. Cal. June 1, 2016) ......................3

*Kaiser Eng'rs, Inc. v. Grinnell Fire Prot. Sys. Co.*,
    219 Cal. Rptr. 626 (Ct. App. 1985) ...........................................................................4

*Klamath Water Users Protective Ass'n v. Patterson*,
    204 F.3d 1206 (9th Cir. 2000)....................................................................................4

*Klein v. Chevron U.S.A., Inc.*,
    137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012) ..............................................................9

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) .............................................................................................5

*Landers v. Quality Commc'ns, Inc.*,
    771 F.3d 638 (9th Cir. 2015)....................................................................................12

iii

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007)..................................................................................7, 8

*Lu v. Hawaiian Gardens Casino, Inc.*,
    236 P.3d 346 (Cal. 2010) ...........................................................................................14

*Meixner v. Wells Fargo Bank, N.A.*,
    101 F. Supp. 3d 938 (E.D. Cal. 2015) ..........................................................................9

*Nicolosi Distrib., Inc. v. BMW N. Am., LLC*,
    No. 10 Civ. 3256 SI, 2011 WL 479993 (N.D. Cal. Feb. 7, 2011) ...............................9

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
    779 F.3d 1036 (9th Cir. 2015)......................................................................................4

*O'Connor v. Uber Techs., Inc.*,
    No. 13 Civ. 3826 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013).........................3, 4, 5, 12

*O'Connor v. Uber Techs., Inc.*,
    No. 13 Civ. 3826 EMC, 2015 WL 5138097 (N.D. Cal. Sept. 1, 2015). ...............11, 12

*Ohlweiler v. Bank of Am. Corp.*,
    No. 15 Civ. 2268, 2015 WL 8484526 (S.D. Cal. Dec. 9, 2015) ...................................5

*Ordonez v. Radio Shack*,
    No. 10 Civ. 7060, 2011 WL 499279 (C.D. Cal. Feb. 7, 2011) ...................................14

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001)........................................................................................2

*Parino v. BidRack, Inc.*,
    838 F. Supp. 2d 900 (N.D. Cal. 2011) ..........................................................................4

*Peterson v. Mazda Motor of Am., Inc.*,
    44 F. Supp. 3d 965 (C.D. Cal. 2014).............................................................................8

*Pirozzi v. Apple, Inc.*,
    966 F. Supp. 2d 909 (N.D. Cal. 2013) ..........................................................................8

*Polich v. Burlington N., Inc.*,
    942 F.2d 1467 (9th Cir. 1991).......................................................................................3

*Progressive W. Ins. Co. v. Yolo Cty. Super. Ct.*,
    37 Cal. Rptr. 3d 434 (Cal. Ct. App. 2005) ...................................................................8

*Rothschild v. Tyco Int'l (US), Inc.*,
    99 Cal. Rptr. 2d 721 (Cal. Ct. App. 2000) ...................................................................9

iv

*Schnall v. Hertz Corp.*,
    93 Cal. Rptr. 2d 439 (Cal. Ct. App. 2000) ...................................................................8

*Searle v. Wyndham Inter'l, Inc.*,
    126 Cal. Rptr. 2d 231 (Cal. Ct. App. 2002) .................................................................7

*Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*,
    708 F.3d 1109 (9th Cir. 2013) ......................................................................................3

*State Farm Fire & Cas. Co. v. Super. Ct.*,
    53 Cal. Rptr. 2d 229 (Cal. Ct. App. 1996) ...................................................................7

*Tan v. GrubHub, Inc.*,
    No. 15 Civ. 5128 JCS, 2016 WL 1110236 (N.D. Cal. Mar. 22, 2016) ...............11, 14

*Varsam v. Lab. Corp. of Am.*,
    120 F. Supp. 3d 1173 (S.D. Cal. 2015) ......................................................................14

*Vasic v. PatentHealth, L.L.C.*,
    No. 13 Civ. 849, 2016 WL 1110300 (S.D. Cal. Mar. 22, 2016) ..................................8

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
    178 F. Supp. 2d 1099 (C.D. Cal. 2001) .......................................................................9

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) .................................................................................7

*Yucesoy v. Uber Techs., Inc.*,
    No. 15 Civ. 262 EMC, 2016 WL 493189 (N.D. Cal. Feb. 9, 2016) .............................5

*Zuniga v. Bank of Am. N.A.*,
    No. 14 Civ. 6471, 2014 WL 7156403 (C.D. Cal. Dec. 9, 2014) ..................................9

**Statutes**

Cal. Bus. & Prof. Code § 17200.................................................................................7, 9

Cal. Lab. Code § 351...................................................................................................14

Cal. Lab. Code § 353...................................................................................................13

Cal. Lab. Code § 1174(d) ......................................................................................13, 14

Cal. Lab. Code § 2699.5..............................................................................................13

Fed. R. Civ. P. 8 ............................................................................................................2

v

# INTRODUCTION

Lyft's motion to dismiss[1] raises an array of challenges that can be grouped as follows. First, Lyft challenges the adequacy of certain claims in the First Amended Complaint ("FAC"). Def. Br. §§ IV.A (conversion), IV.B (breach of contract), IV.C (tortious interference with prospective economic advantage ("TIPEA")), IV.E (Labor Code). While some of Lyft's arguments constitute an overly aggressive reading of modern pleading requirements, others point out imperfections that Plaintiffs seek leave to correct through amendment. Pls. Br. §§ I, II, IV, & V. Second, Lyft makes a similar technical argument about PAGA exhaustion that can readily be remedied through amendment. Def. Br. § IV.G; Pls. Br. § VI. Third, Lyft fails to acknowledge that the Unfair Competition Law ("UCL") applies to conduct in California affecting non-California class members. Def. Br. § IV.D.1; Pls. Br. § III.A. Likewise, Lyft invokes the wrong test for the unfairness prong of the UCL. Def. Br. § IV.D.2; Pls. Br. § III.B.1. Fourth, Lyft's request for a stay is inappropriate because the post-*Cotter* claims will all proceed, and at least the pre-*Cotter* breach of contract and TIPEA claims will proceed. Def. Br. §§ IV.A.3, IV.C, IV.E.2; Pls. Br. § VII. Thus, the ongoing discovery process should continue.

# FACTUAL AND PROCEDURAL BACKGROUND

On May 11, 2016, Plaintiffs Alex Zamora and Rayshon Clark filed this action on behalf of themselves and similarly situated Lyft Drivers. On July 6, 2016, they filed their First Amended Complaint ("FAC").

This action challenges (1) Lyft's misclassification of Drivers as independent contractors and consequent failure to provide the conventional California employment protections such as overtime pay, meal and rest breaks, and reimbursement for reasonable business expenses (the California "Misclassification Claims"), and (2) Lyft's systematic practice of telling Riders that

---

[1] Plaintiffs are disappointed in Lyft's decision to engage in personal attacks against their counsel, by accusing them of using clients as a "bargaining chip" to "receive a share" of *Cotter v. Lyft, Inc.* ("*Cotter*"), Def. Br. 1-2. *See* N.D. Cal. Guidelines for Professional Conduct, § 7 (filings should not "unfairly attack[] the opposing party or opposing counsel").

Prime Time Premiums (surcharges for busy traffic periods) are "for the driver" or going "entirely to your driver," when in fact Lyft takes a portion of those Premiums. The first set of claims seeks relief only for the time period and individuals not covered by the *Cotter* settlement. The second set of claims seeks relief based on (a) California employment law (under the Labor Code, the UCL, and PAGA) on behalf of all Drivers in California, and (b) California common law and the UCL on behalf of all Drivers nationwide (the nationwide "Prime Time Claims").

The case is impacted by the *Cotter* settlement, which will likely release all California Misclassification Claims through July 1, 2016 and will affect the California portion of the nationwide Prime Time Claims. *Cotter* leaves untouched (i) all post-July 1, 2016 claims, (ii) the non-California Prime Time claims for all time, and (iii) the California Prime Time claims under breach of contract and TIPEA for all time.

## ARGUMENT

Plaintiffs have alleged sufficient facts to support most of their claims under Federal Rule of Civil Procedure 8. The Rule requires simply "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). In considering the adequacy of a pleading, the Court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The Court should not dismiss a claim when it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court must "grant leave to amend freely when justice so requires." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (internal quotation marks omitted). "[T]his policy is to be applied with extreme liberality." *Id*. The Court "may decline to grant leave to amend only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (alterations omitted) (internal quotation marks omitted). "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991).

## I. Plaintiffs Have Stated a Breach of Contract Claim.

The FAC sufficiently alleges that Lyft repeatedly breached its contracts with riders, under which Lyft Drivers are third-party beneficiaries. "Under a third-party beneficiary theory, a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." *O'Connor v. Uber Techs., Inc.*, No. 13 Civ. 3826 EMC, 2013 WL 6354534, at *12 (N.D. Cal. Dec. 5, 2013) (alterations omitted) (internal quotation marks omitted). The essential contract elements are "mutual assent" – "an offer communicated to the offeree and an acceptance communicated to the offeror." *Donovan v. RRL Corp.*, 27 P.3d 702, 709 (Cal. 2001). "[T]he complaint must identify the specific provision of the contract allegedly breached by the defendant;" however, plaintiffs are "not require[d] . . . to attach the contract or recite the contract's terms verbatim." *Kaar v. Wells Fargo Bank, N.A.*, No. 16 Civ. 1290 WHA, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016).

The FAC's clarity precludes Lyft's professed confusion about "the contract on which [Plaintiffs'] claim relies." Def. Br. 7. When Lyft wishes to charge customers a Prime Time Premium, Lyft communicates this via a "notice" on its "App," which alerts customers that, if they accept, their ride price will be increased by a Premium that is "for the driver," or going "entirely to your driver." FAC ¶¶ 23-24, 35, 72. In other words, Lyft is offering a ride, for a Premium, which it promises is for the Driver.[2] Customers who click "Confirm Lyft," accept the offer, forming a contract. *See id*. Thus, the FAC alleges that Lyft is breaching these contracts with its customers

---

[2] Although not required, the FAC even includes visual examples of Lyft's contracts with Riders. *See* FAC ¶¶ 23-24 (including screenshots of the notice Riders receive).

by keeping a portion of the Prime Time Premiums for itself that it promised are "for the driver." *Id.* ¶¶ 23-24, 35-36, 72-73. These allegations are sufficient. *See, e.g.*, *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908 (N.D. Cal. 2011) (allegations that plaintiff accepted defendant's offer to register with its website for free by entering information for future transactions constituted a contract and defendant's unauthorized charges were a breach); *Donovan*, 27 P.3d at 712-13 (defendant's advertisement of a certain price and plaintiff's tender of the requested price constitute "mutual assent sufficient to conclude a contract").

   Plaintiffs have also pled facts showing they are third-party beneficiaries. *See* Def. Br. 7-8. To enforce a contract as a third-party beneficiary, Plaintiffs must show an intent to benefit the third party. *Kaiser Eng'rs, Inc. v. Grinnell Fire Prot. Sys. Co.*, 219 Cal. Rptr. 626, 629 (Ct. App. 1985). "Because they involve factual questions of intent, third party beneficiary claims are often not appropriate for resolution via motion to dismiss." *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1065 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 240 (2015). "While intent is pivotal, there is no requirement that both of the contracting parties must intend to benefit the third party. Rather, it is sufficient that the promisor [Lyft] must have understood that the promisee [the Rider] had such intent." *O'Connor*, 2013 WL 6354534, at *12 (alteration omitted) (internal quotation marks omitted); *accord Alling v. Universal Mfg. Corp.*, 7 Cal. Rptr. 2d 718, 736 (Cal. Ct. App. 1992). "The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 2000). Plaintiffs have pled that Lyft's contracts with Riders explicitly provide that the Prime Time Premiums are "for the driver[s]." FAC ¶¶ 23-24, 35-36, 72-73. The clear intent is to benefit Plaintiffs and the class. *Id.*[3]

---

[3] Plaintiffs also allege that "[b]ecause Lyft misrepresents Prime Time Premiums as payment 'for the driver,' Riders use Lyft's Tip feature less frequently than they would otherwise." FAC ¶ 37. This allegation, taken as true, is further evidence that Riders intend for the Prime Time Premiums to go to the Drivers.

In *O'Connor*, the court denied a motion to dismiss such claims, where the intent allegations were markedly weaker. The court held that (a) the allegations that Uber told customers the "tip is included and there is no need to tip the driver," plus (b) allegations about standard industry tipping customs, "ma[d]e it plausible" that there was an implied contract with drivers as intended beneficiaries. 2013 WL 6354534, at *12-13. Here, the intent is much clearer: the contract says the Premium is "for the driver."

Lyft's citations, Def. Br. 7-8, are easily distinguishable because there, the plaintiffs either failed to allege key components of the contract or facts sufficient to support their status as third-party beneficiaries. *See Yucesoy v. Uber Techs., Inc.*, No. 15 Civ. 262 EMC, 2016 WL 493189, at *4 (N.D. Cal. Feb. 9, 2016) ("Plaintiffs . . . do not identify what contract is at issue (beyond stating that they are 'Uber's contracts with its customers' . . . ) or which terms . . . show that the contract was clearly and definitely meant to benefit the driver."); *Ohlweiler v. Bank of Am. Corp.*, No. 15 Civ. 2268, 2015 WL 8484526, at *3 (S.D. Cal. Dec. 9, 2015) ("The only detail Plaintiff provides as to the nature of the contract . . . was that . . . , 'Defendant agreed to hold A.L.C. harmless from any and all acts of fraud committed against these accounts,' which is of no relevance to the third party beneficiary claim."). Plaintiffs here have pled both the contract details and the terms indicating they are intended beneficiaries. *See* FAC ¶¶ 23-24, 35-37, 72-73.

## II. Plaintiffs Have Stated a TIPEA Claim.

Plaintiffs have adequately pled a TIPEA claim. Lyft is correct that allegations must point to "conduct that was wrongful by some legal measure other than the fact of interference itself," *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740, 751 (Cal. 1995), and that "an act is independently wrongful if it is unlawful, . . . [or] proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard," *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 954 (Cal. 2003). *See* Def. Br. 8.

However, Plaintiffs have done that. They have alleged that Lyft continues to breach contracts with its Riders that promise to deliver Prime Time Premiums to Drivers. *See* FAC ¶¶ 23-24, 35-36, 72-73, 76, 79-81; *Bus. Integration Tech. v. MuleSoft Inc.*, No. 11 Civ. 4782 EDL,

1  2011 WL 5914012, at *8 (N.D. Cal. Nov. 28, 2011) (breach of contract can satisfy "independently

2  wrongful" requirement); *Givemepower Corp. v. Pace Compumetrics, Inc.*, No. 07 Civ. 157, 2007

3  WL 2345027, at *8 (S.D. Cal. Aug. 14, 2007) ("requirement that the defendant's conduct was

4  independently wrongful" was "adequately alleged" because the plaintiff alleged that the defendant

5  breached a contract).  Lyft does not explain why these allegations are insufficient.

**III.    Plaintiffs Have Adequately Pled the Elements of a Nationwide UCL Claim.**

6

7          **A.    Plaintiffs' Nationwide UCL Claim Is Based on Lyft's Conduct in California.**

8          Lyft's argument that the UCL does not apply extraterritorially, *see* Def. Br. 9, confuses the

9  issue.  Plaintiffs do not seek to apply the UCL extraterritorially.  Rather, the claims on behalf of

10 out-of-state class members are based on Lyft's conduct *within* California: specifically, Lyft

11 "conceived, reviewed, approved, and otherwise controls" all aspects of its Prime Time Premium

12 policies from its headquarters in California; Lyft publicizes its policies through "the Lyft App,

13 which is maintained in . . . California;" and Lyft's "transactions with Riders . . . emanate from and

14 are processed on Lyft servers in . . . California."  FAC ¶¶ 14, 44.  "California's presumption

15 against the extraterritorial application of its statutes . . . does not bar the claims of the out-of-state

16 [p]laintiffs" where the challenged conduct "emanate[d] from and [was] developed at [the

17 defendant's] California headquarters;" rather, the presumption against extraterritoriality is one

18 against an intent to encompass conduct *occurring in* a foreign jurisdiction in the prohibitions and

19 remedies of a domestic statute."  *In re iPhone 4S Consumer Litig.*, No. 12 Civ. 1127 CW, 2013

20 WL 3829653, at *7 (N.D. Cal. July 23, 2013) (emphasis added).

21         Lyft fails to point out that, in a case alleging very similar wrongdoing, another court in this

22 district rejected the same arguments Lyft makes.  In *Ehret v. Uber Technologies, Inc.*, a customer

23 brought claims on behalf of a nationwide class alleging that Uber's false statement that an

24 automatic "20% gratuity [charge] is . . . for the driver" violated the UCL.  68 F. Supp. 3d 1121,

25 1126-27 (N.D. Cal. 2014).  The plaintiff had alleged that the misrepresentation "w[as] conceived,

26 reviewed, approved and otherwise controlled from Defendant's headquarters in . . . California;"

27 disseminated through Uber's "website mobile phone application, which are maintained in

28

6

California;" and that Uber's transactions with customers "were processed on Defendant's servers in . . . California." *Id.* at 1131-32. The court held these were "sufficient factual allegations from which the Court can plausibly infer that Uber's alleged gratuity misrepresentations emanated from California" and therefore, "these circumstances would not constitute extra-territorial application of [the UCL]." *Id.* at 1132.[4]

### B. Plaintiffs Allege Facts Sufficient to Plead a UCL Claim.

The UCL protects against an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Its coverage is "sweeping," *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548, 560 (Cal. Ct. App. 1999) (internal quotation marks omitted), and California courts have "consistently interpreted [it] broadly," *Searle v. Wyndham Inter'l, Inc.*, 126 Cal. Rptr. 2d 231, 235 (Cal. Ct. App. 2002); *accord In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1223 (N.D. Cal. 2014). "[E]ach prong of the UCL is a separate and distinct theory of liability." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Plaintiffs pursue their UCL claim under all three prongs.

### 1. Lyft's Misrepresentations that Its Prime Time Premiums Are "for the Driver" Are Unfair.

"The 'unfair' prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *In re Adobe*, 66 F. Supp. 3d at 1226. California courts have long applied the "balancing test" in consumer suits, which requires "weigh[ing] the utility of the defendant's conduct against the gravity of the harm to the alleged victim" to determine whether conduct is unfair. *See, e.g.*, *State Farm Fire & Cas. Co. v. Super. Ct.*, 53 Cal. Rptr. 2d 229, 234 (Cal. Ct. App. 1996), *abrogated in part by Cel-Tech*, 973 P.2d 527. In *Cel-Tech*, the California Supreme Court announced the "tethering test," but limited its holding to

---

[4] In addition, where a contract between individuals outside of California mandates application of California law, as Lyft's does, *see* FAC ¶ 43, the non-California individual may invoke the protections of the UCL. *See, e.g.*, *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 485-86 (N.D. Cal. 2011) (similar contract to Lyft's); *Estrella v. Freedom Fin. Network, LLC*, No. 09 Civ. 3156 SI, 2010 WL 2231790, *4-5 (N.D. Cal. June 2, 2010) (same).

competitor cases. 973 P.2d at 544 n.12 ("This case involves an action by a competitor alleging anticompetitive practices. . . . Nothing we say relates to actions by consumers . . . .").

Lyft's position that the tethering test is the *only* available test is wrong. *See* Def. Br. 10. Although some courts have concluded that the tethering test should apply to consumer actions, *see, e.g.*, *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d 439, 456 (Cal. Ct. App. 2000), the Ninth Circuit has affirmed application of the balancing test outside the competitor context. *See Lozano*, 504 F.3d at 736 (upholding district court's application of the balancing test); *see also In re Anthem, Inc. Data Breach Litig.*, No. 15 MD 2617 LHK, 2016 WL 3029783, at *34 (N.D. Cal. May 27, 2016) (rejecting tethering test arguments and allowing plaintiffs to proceed "*on the balancing test alone*"); *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 922 (N.D. Cal. 2013) (applying balancing test); *Progressive W. Ins. Co. v. Yolo Cty. Super. Ct.*, 37 Cal. Rptr. 3d 434, 453 (Cal. Ct. App. 2005) ("the balancing test should continue to apply in consumer cases").

Here, Plaintiffs' allegations readily satisfy the balancing test. Plaintiffs have alleged that Lyft's practices deprive them of the full amount of the Prime Time Premiums that Lyft claims is for them. *See* FAC ¶¶ 23-24, 36. Moreover, Lyft's misrepresentation causes Riders to "use Lyft's Tip feature less frequently than they would otherwise, thus decreasing tip earnings that Drivers otherwise would receive were Riders correctly informed about Lyft's policy of taking a portion of Prime Time Premiums." FAC ¶ 37. There is no discernable "utility" to Lyft's practice of misrepresenting the purpose of the Prime Time Premiums. *See Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 973 (C.D. Cal. 2014) (denying motion to dismiss where plaintiff alleged that defendant's practice created a safety risk, with no apparent utility); *Pirozzi*, 966 F. Supp. 2d at 922 (denying motion to dismiss where plaintiff adequately pled harm and defendant offered no utility from its conduct). Even if Lyft could point to some utility from its practice, "[t]he cost-benefit analysis this test calls for is not properly suited for resolution at the pleading stage." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1117 (N.D. Cal. 2015); *accord Vasic v. PatentHealth, L.L.C.*, No. 13 Civ. 849, 2016 WL 1110300, at *6 (S.D. Cal. Mar. 22, 2016) (denying summary judgment because the balancing of harm against utility "is a jury question").

Alternately, some courts apply the "FTC test," which provides that "(1) [Plaintiffs'] injury must be substantial; (2) "the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that [Plaintiffs] themselves could not reasonably have avoided." *Camacho v. Auto. Club of S. Cal.*, 48 Cal. Rptr. 3d 770, 776-77 (Cal. Ct. App. 2006). Plaintiffs easily satisfy this test. The first two requirements largely track the balancing test. *See supra* § III.B.1; *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 321 (Cal. Ct. App. 2012) ("At the pleading stage, we cannot presume that these alleged harms are not 'substantial' or are otherwise outweighed by [the] benefits" of the allegedly unfair practice). Plaintiffs also have no means to avoid the injury short of not working for Lyft. *See Zuniga v. Bank of Am. N.A.*, No. 14 Civ. 6471, 2014 WL 7156403, at *9 (C.D. Cal. Dec. 9, 2014) (third prong met where plaintiff could only avoid injury by not defaulting on her loan).[5]

## 2. Lyft's Conduct Is Also Unlawful.

Plaintiffs have also pled a claim under the UCL's unlawful prong by asserting two common law violations. *Klein*, 137 Cal. Rptr. 3d at 326-27 ("[C]ommon law[ ]can serve as a predicate for a . . . section 17200 unlawful violation." (alterations omitted) (internal quotation marks omitted); *see Nicolosi Distrib., Inc. v. BMW N. Am., LLC*, No. 10 Civ. 3256 SI, 2011 WL 479993, at *4 (N.D. Cal. Feb. 7, 2011) (TIPEA allegations satisfied UCL unlawfulness prong); *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1117 n.2 (C.D. Cal. 2001) ("a breach of contract may [also] . . . form the predicate for [s]ection 17200 claims, provided it also constitutes conduct that is unlawful, or unfair, or fraudulent" (internal quotation marks

---

[5] If the Court holds that only the tethering test is available, Plaintiffs request leave to amend to meet *Cel-Tech*'s requirement that the unfairness "be tethered to some legislatively declared policy *or* proof of some actual or threatened impact on competition," *Cel-Tech*, 973 P.2d at 543-44 (emphasis added), such as by disadvantaging Lyft's competitors who are honest about how much of their surcharges and tips go to their drivers. The core purpose of section 17200 is to ensure honesty and integrity in the marketplace "to preserve fair business competition," so that consumers are well informed and businesses compete on an even playing field. *Rothschild v. Tyco Int'l (US), Inc.*, 99 Cal. Rptr. 2d 721, 724 (Cal. Ct. App. 2000); *accord Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 959 (E.D. Cal. 2015).

omitted)); *see also* Def. Br. 10 (not disputing this). Lyft only argues that the unlawful prong is unavailable because these predicate offenses are inadequately pled. Plaintiffs have already explained above why these arguments fail. *See supra* §§ I, II.

### 3. Plaintiffs Request Leave to Amend Their Claim Under the Fraudulent Prong of the UCL.

By amending to clarify that they *themselves* have relied on Lyft's misrepresentations, Plaintiffs can also make out a claim under the UCL's fraudulent prong. *See* Def. Br. 11 (noting that fraud prong requires the plaintiff's own reliance). Plaintiffs' fraud prong claim is based on Lyft's omissions of material fact with respect to *them*. "For a plaintiff to bring [a] UCL . . . claim[] on the basis of omissions, the omission must either be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1076 (N.D. Cal. 2014) (internal quotation marks omitted). The duty to disclose can arise when the defendant "makes partial representations but also suppresses some material fact." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012). "A non-disclosed fact is material if the omitted information would cause a reasonable consumer to behave differently if he or she was aware of it." *In re Carrier*, 78 F. Supp. 3d at 1112 (internal quotation marks omitted).

Here, Lyft told Drivers that it would take a share of the Prime Time Premium but failed to tell Drivers that it was telling Riders that the entire Prime Time Premium was "for the driver." This omission is "contrary to" Lyft's representation to Drivers that it would retain a portion of the Prime Time Premium. Moreover, Lyft's representation to Drivers is also a partial representation because had Drivers been aware that Lyft was making misrepresentations to Riders that disincentivized Riders from tipping, Plaintiffs would have accepted fewer "Prime Time" rides, and spent their time performing other work to make more money.[6]

---

[6] These proposed allegations will also support a claim under the UCL's unfairness prong. *See Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1099-1100 (N.D. Cal. 2010) (plaintiffs stated a claim under unfairness prong based on defendant's omission).

**IV.    Plaintiffs Have Sufficiently Pled an Expense Reimbursement Claim.**

Plaintiffs have pled sufficient facts to support their expense reimbursement claim. "Section 2802 claims are sufficiently pled where the complaint identifies the particular expenses that were not reimbursed and affirmatively alleges that the expenses were part of the plaintiff's job duties." *Tan v. GrubHub, Inc.*, No. 15 Civ. 5128 JCS, 2016 WL 1110236, at *3 (N.D. Cal. Mar. 22, 2016).

The complaint alleges these facts.  It asserts that, as a result of classifying Plaintiffs and all drivers as independent contractors, Lyft failed to reimburse "Drivers"—which is defined to include Plaintiffs, *see* FAC ¶ 5—for their expenses, which: "include mileage costs, cell phone service to maintain required email and/or text message contact with Lyft, car cleaning and repair to comply with Lyft requirements, and water, snacks, and/or other supplies for Riders, among other expenses." *Id*. ¶¶ 9, 39.

These allegations are sufficient.  *See, e.g.*, *Tan*, 2016 WL 1110236, at *3 (allegations that plaintiffs paid for "vehicles, gas, parking, phone data, and other expenses" were "sufficient to state a plausible claim for relief because" plaintiffs "identified the type of expenses that GrubHub failed to reimburse").  Lyft attempts to distinguish *Tan* by arguing that *Tan* identified the expenses the plaintiffs themselves incurred.  Def. Br. 11.  However, the *Tan* court cited to just one paragraph of the complaint and to the expense reimbursement count, which speak in general terms about expenses incurred as a result of "[drivers'] misclassification as independent contractors."  *See* 2016 WL 1110236, at *3 (citing *Tan* ECF. No. 15 ¶ 15 & Count I).  In any event, the FAC defines "Drivers" to include Plaintiffs.  *See* FAC ¶ 5.  Thus, Plaintiffs have alleged that they incurred the same types of expenses as other Lyft Drivers.  *Id*. ¶ 39.

Lyft's argument, Def. Br. 12, that Plaintiffs may be inadequate class representatives for the section 2808 claim is premature.  Lyft relies solely on *O'Connor v. Uber Technologies, Inc.*, where the plaintiffs failed to provide sufficient common evidence of expenses at *class*

*certification.* No. 13 Civ. 3826 EMC, 2015 WL 5138097, at *14 (N.D. Cal. Sept. 1, 2015). In fact, *O'Connor* denied Uber's motion to dismiss a very similar section 2808 claim.[7]

**V.      Plaintiffs Seek to Amend the Remaining Labor Code and Conversion Claims.**

Plaintiffs respectfully request leave to amend their minimum wage, overtime, wage statement, meal and rest break, reporting time, record-keeping, and conversion claims, as follows:

Overtime and Minimum Wage. Plaintiffs request leave to amend these claims to allege specific weeks and/or days when they were denied overtime and minimum wages. *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2015), *cert. denied*, 135 S. Ct. 1845 (2015).

Wage Statements. Plaintiffs request leave to amend this claim to clarify that Lyft's wage statements fail to itemize all wages due to its Drivers, as set forth in the complaint, including regular and overtime hours worked, hourly rates, and all wages earned, such as Prime Time Premiums. *See Ambriz v. Coca-Cola Co.*, No. 13 Civ. 3539 JST, 2013 WL 5947010, at *6 (N.D. Cal. Nov. 5, 2013) (upholding claim alleging failure to provide wage statements showing "hours worked, corresponding wage rates, and gross and net wages").

Meal and Rest Breaks. Plaintiffs seek leave to amend these claims to clarify that: (a) as a result of its policy of classifying all Drivers as independent contractors, Lyft lacks policies under which Drivers who work five or more hours in a day are authorized to take a 30-minute meal break during which they are relieved from all work duties and Drivers who work four hours at a time are authorized to take a 10-minute rest break and are similarly relieved of all duties; (b) the absence of such policies, together with other Lyft policies that incentivize Drivers to work long hours without breaks, cause Drivers to regularly fail to take meal and rest breaks; and (c) such incentives include messages from Lyft to Drivers discouraging them from logging out from the App when they are logged in, messages encouraging them to log on when they are logged out, and

---

[7] *O'Connor* ECF No. 1 ¶ 24 (listing "expenses for their vehicles, gas, and other expenses"); *O'Connor*, 2013 WL 6354534, at *6-7 (focusing on independent contractor misclassification allegations).

12

structures (*e.g.*, the Power Driver Bonus program) that reward Drivers for working longer hours. *See Brinker Rest. Corp. v. Super. Ct.*, 273 P.3d 513, 536-37 (Cal. 2012) (employer must "relieve[] its employees of all duty, relinquish[] control over their activities and permit[] them a reasonable opportunity to take an uninterrupted 30-minute break, and . . . not impede or discourage them from doing so"); *see also Johnson v. Q.E.D. Envtl. Sys. Inc.*, No. 16 Civ. 01454 WHO, 2016 WL 4658963, at *3 (N.D. Cal. Sept. 7, 2016) (a "plaintiff must allege facts that plausibly suggest that defendant did not in some way authorize the breaks, and therefore such breaks were not provided, as required by the Labor Code" (alterations omitted) (internal quotation marks omitted)); *Ambriz*, 2013 WL 5947010, at *3-5 (allegation that employer failed to provide any meal or rest periods at all is sufficient; "an employer's lack of a meal break policy may subject the employer to liability because it suggests that the employer did not provide meal breaks to its employees"). Plaintiffs will also provide details of the extent of their missed meal and rest breaks.

Reporting Time. The FAC alleges that, "[a]lthough Plaintiffs . . . periodically reported for work and were prevented from working at all or for more than half of their usual schedule, Lyft had a policy and practice of failing and refusing to pay them reporting time pay." FAC ¶ 118. Lyft cites ¶ 118, but omits ¶ 40, *see* Def. Br. 13, which elaborates that, "because of Lyft's promotions, restrictions, and other policies and programs," there are "periods of time when Drivers report to work but there is no work or less than half of a normal day's work available." FAC ¶ 40. Although ¶ 40 answers several of the questions Lyft poses, *see* Def. Br. 13, Plaintiffs request leave to amend to clarify that "reporting for work" refers to logging on to the Lyft App and to elaborate on "Lyft's promotions, restrictions, and other policies and programs."

Record-Keeping. Plaintiffs request leave to eliminate the record-keeping claim as a stand-alone claim, because their intent was to pursue the claim under PAGA. PAGA creates a private right of action for violations of California Labor Code sections 353 and 1174(d). Cal. Lab. Code § 2699.5. In failing to classify Prime Time Premiums as gratuities, Lyft failed to keep accurate records of all gratuities it received, as section 353 requires. *See* Cal. Lab. Code § 353. Contrary to Lyft's argument, Plaintiffs do not merely restate the elements of section 1174(d). They allege that

Lyft violated section 1774(d) by "fail[ing] to record all hours Drivers actually work and *instead record[ing] only those hours a Driver spends engaged in providing a ride*." FAC ¶ 133 (emphasis added). This is sufficient. *See Ordonez v. Radio Shack*, No. 10 Civ. 7060, 2011 WL 499279, at *4-7 (C.D. Cal. Feb. 7, 2011) (refusing to strike portions of PAGA claim alleging "Defendant failed to record all hours worked by Plaintiff . . . , including . . . during meal and rest breaks, and overtime;" finding record-keeping violation sufficiently pled).[8]

        <u>Conversion.</u> Plaintiffs request leave to amend their nationwide conversion claim to limit it to California, since it is based on California Labor Code section 351. *See* Def. Br. 5; *Lu v. Hawaiian Gardens Casino, Inc.*, 236 P.3d 346, 353 (Cal. 2010).

## VI.    The Court Should Permit Plaintiffs to Amend Their PAGA Claim.

        Lyft is correct that Plaintiffs' FAC does not allege that the 65-day exhaustion period had passed by the date of the FAC filing. *See* Def. Br. 15; *Tan*, 2016 WL 1110236, at *8. However, where plaintiffs file PAGA claims before the end of the exhaustion period, but otherwise comply with PAGA's notice requirements, courts routinely grant leave to amend so they can plead that the waiting period has passed. *See*, *e.g.*, *Johnson v. Sunrise Senior Living Mgmt., Inc.*, No. 16 Civ. 443, 2016 WL 917888, at *11 (C.D. Cal. Mar. 8, 2016); *Varsam v. Lab. Corp. of Am.*, 120 F. Supp. 3d 1173, 1183 (S.D. Cal. 2015). Even the cases Lyft cites, *see* Def. Br. 15, acknowledge this. *Tan*, 2016 WL 1110236, at *8, 12 (granting leave to amend PAGA claim despite failure to plead compliance with exhaustion requirements); *Caliber Bodyworks, Inc. v. Super. Ct.*, 36 Cal. Rptr. 3d 31, 46 n.19 (Cal. Ct. App. 2005) ("plaintiffs are not precluded from later requesting leave to amend their first amended complaint . . . but must first satisfy [PAGA's exhaustion] requirements").

---

[8] Because the UCL claim in the Fifth Claim for Relief rests on the Labor Code claims above, FAC ¶¶ 87-98, the amendments proposed herein ensure no deficiency in the UCL claim. To the extent that any of the underlying Labor Code claims are dismissed, Plaintiffs request leave to amend their UCL claim accordingly.

## VII. A Stay Would Be Inappropriate.

The parties are moving forward in discovery, per the Court's instructions. Lyft's request for a stay should be denied because it ignores the fact that the bulk of the claims will go forward regardless of the outcome in *Cotter*. The breach of contract and TIPEA claims are not released in *Cotter*, so discovery as to those claims with respect to the pre-July 2016 period is appropriate. The essence of those claims – that the Prime Time Premiums were unlawful – and the UCL and PAGA claims are the same. The parties agree that only the pre-July 2016 independent contractor misclassification claims are released by *Cotter*, so discovery as to them for the post-*Cotter* period is appropriate (and ongoing). It would be inefficient to pursue the discovery piecemeal.

Lyft's authority is distinguishable because those cases involved "identical" claims. *In re JPMorgan Chase LPI Hazard Litig.*, No. 11 Civ. 03058 JCS, 2013 WL 3829271, at *3-4 (N.D. Cal. July 23, 2013) (discussing *Jaffe v. Morgan Stanley DW, Inc*., No. 06 Civ. 3903 THE, 2007 WL 163196, at *1 (N.D. Cal. Jan. 19, 2007)). Here, because the claims and time periods are different, no stay would be appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Lyft's Motion to Dismiss, Strike, and/or Stay and grant Plaintiffs leave to amend as set forth above.

Dated: September 22, 2016       Respectfully submitted,

            By: */s/ Jahan C. Sagafi*
                 Jahan C. Sagafi

            Jahan C. Sagafi (Cal. Bar No. 227887)
            jsagafi@outtengolden.com
            Julia Rabinovich (Cal. Bar No. 290730)
            jrabinovich@outtengolden.com
            Relic Sun (Cal. Bar No. 306701)
            rsun@outtengolden.com
            OUTTEN & GOLDEN LLP
            One Embarcadero Center, 38th Floor

15

San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

*Counsel for Plaintiffs, Aggrieved*
*Employees, and Proposed Class Members*

16