KEKER, VAN NEST & PETERS LLP
RACHAEL E. MENY - # 178514
rmeny@keker.com
SIMONA A. AGNOLUCCI - # 246943
sagnolucci@keker.com
ALEXANDER DRYER - # 291625
adryer@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant LYFT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX ZAMORA and RAYSHON CLARK on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | Case No. 3:16-cv-02558-VC<br><br>**DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          January 18, 2018<br>Time:          10:00 a.m.<br>Courtroom: 4, 17th Floor<br>Judge:        Hon. Vince Chhabria<br><br>Date Filed:  May 11, 2016<br>Trial Date:  None |

1203430

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that at the time and place set forth above, or as soon thereafter as the matter may be heard, Defendant Lyft, Inc. will move the Court for an order pursuant to Federal Rules of Civil Procedure 12 and 23 striking all nationwide class claims in Plaintiffs' Second Amended Complaint.  The ground for this motion is that this action cannot be maintained as a nationwide class action due to material differences in state laws that apply to putative class members outside California.

This motion is based upon this Notice of Motion and Motion, the concurrently filed Memorandum of Points and Authorities and Appendix, the Declaration of Anne Rupley, all pleadings and papers on file in this action, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing of this matter.

Dated:  November 9, 2017                           KEKER, VAN NEST & PETERS LLP


                                                    By:   */s/ Simona A. Agnolucci*
                                                          RACHAEL E. MENY
                                                          SIMONA A. AGNOLUCCI
                                                          ALEXANDER DRYER

                                                          Attorneys for Defendant LYFT, INC.

1203430

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...........................................................................................................1

II.  STATEMENT OF THE ISSUE TO BE DECIDED............................................................1

III.  BACKGROUND ...........................................................................................................1

IV.  LEGAL STANDARD......................................................................................................2

V.  ARGUMENT .................................................................................................................3

    A.  Plaintiffs cannot impose California law on a nationwide class. ..............................3

        1.  Under California choice-of-law rules, the Court must apply widely varying consumer-protection laws. ...........................................................3

            a.  State consumer-protection statutes differ on multiple dimensions. ......................................................................................4

            b.  A true conflict exists between the laws of different states...............6

            c.  Other states' interests would be most impaired if California's law is applied than *vice versa*. .....................................7

        2.  Under California choice-of-law rules, the Court must apply widely varying contract laws. ......................................................................8

    B.  The different state laws are fatal to class certification............................................10

    C.  Plaintiffs cannot paper over the differences in state law. ......................................11

        1.  Plaintiffs' theory of the case prevents them from relying on the choice-law-clause in the Lyft Terms of Service Agreement. ...................12

        2.  No workable subclass structure exists. ......................................................12

    D.  The Court can and should strike the nationwide class claims now.......................14

VI.  CONCLUSION...............................................................................................................15

1203430

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Am. Fin. Corp. v. Computer Scis. Corp.*
  558 F. Supp. 1182 (D. Del.1983) ............................................................. 9

*Bowers v. Jefferson Pilot Fin. Ins. Co.*
  219 F.R.D. 578 (E.D. Mich. 2004) .......................................................... 10

*Braswell Wood Co. v. Waste Away Grp., Inc.*
  No. 2:09-CV-891-WKW, 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010) ............ 10

*Castano v. Am. Tobacco Co.*
  84 F.3d 734 (5th Cir. 1996) ................................................................. 10

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*
  472 F. Supp. 2d 1183 (S.D. Cal. 2007) ..................................................... 8

*Frezza v. Google Inc.*
  No. 5:12-CV-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) .......... 14

*Gustafson v. BAC Home Loans Servicing, LP*
  294 F.R.D. 529 (C.D. Cal. 2013) ........................................................... 11

*In re Am. Med. Sys., Inc.*
  75 F.3d 1069 (6th Cir. 1996) ............................................................... 10

*In re Onstar Contract Litig.*
  278 F.R.D. 352 (E.D. Mich. 2011) .......................................................... 5

*In re Yasmin & Yaz (Drospirenone) Mktg.*
  275 F.R.D. 270 (S.D. Ill. 2011) ............................................................ 14

*Kamm v. Cal. City Dev. Co.*
  509 F.2d 205 (9th Cir. 1975) ................................................................. 3

*Klay v. Humana, Inc.*
  382 F.3d 1241 (11th Cir. 2004) ............................................................. 10

*Kramer v. Wilson Sporting Goods Co.*
  No. CV 13-6330-JFW (SHX), 2013 WL 12133670 (C.D. Cal. Dec. 13, 2013) ......... 3, 14

*Lawson v. Life of the S. Ins. Co.*
  286 F.R.D. 689 (M.D. Ga. 2012) ............................................................. 3

*Littlehale v. Hain Celestial Grp., Inc.*
  No. C 11-6342 PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012) ..................... 14

*Lumpkin v. E.I. Du Pont de Nemours & Co.*
  161 F.R.D. 480 (M.D. Ga. 1995) ............................................................. 3

*Mantolete v. Bolger*
  767 F.2d 1416 (9th Cir. 1985), *as amended* (Aug. 27, 1985) ......................... 3

ii

1203430

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*
   412 F.3d 215 (1st Cir. 2005) ................................................................ 4

*Mazza v. Am. Honda Motor Co.*
   666 F.3d 581 (9th Cir. 2012) ........................................................ *passim*

*Pilgrim v. Universal Health Card, LLC*
   660 F.3d 943 (6th Cir. 2011) ........................................................ 10, 14

*Polo Fashions, Inc. v. Craftex, Inc.*
   816 F.2d 145 (4th Cir. 1987) ................................................................ 4

*Rikos v. Procter & Gamble Co.*
   No. 1:11-CV-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ........................................... 14

*Route v. Mead Johnson Nutrition Co.*
   No. CV 12-7350-GW JEMX, 2013 WL 658251 (C.D. Cal. Feb. 21, 2013) .......................... 14

*Sanders v. Apple Inc.*
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................. 2

*Schager v. Union Fid. Life Ins. Co.*
   No. 85 C 8244, 1987 WL 13570 (N.D. Ill. July 6, 1987) ........................................ 15

*Schering Corp. v. First DataBank Inc.*
   No. C 07-01142 WHA, 2007 WL 1176627 (N.D. Cal. Apr. 20, 2007)................................ 12

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011).............................................................................. 11

**State Cases**

*ABF Capital Corp. v. Grove Props. Co.*
   126 Cal. App. 4th 204 (2005) ................................................................... 8

*Armed Forces Bank, N.A. v. Hicks*
   365 P.3d 378 (Colo. Ct. App. 2014) ........................................................... 9

*Berg v. Hudesman*
   801 P.2d 222 (Wash. 1990)..................................................................... 9

*Cedars-Sinai Med. Ctr. v. Shewry*
   137 Cal. App. 4th 964 (2006) ................................................................. 9

*Esposito v. True Color Enters. Constr., Inc.*
   45 So.3d 554 (Fla. Dist. Ct. App. 2010) ..................................................... 9

*Estate of Willis v. Kiferbaum Const. Corp.*
   830 N.E.2d 636 (Ill. App. Ct. 2005) ......................................................... 9

*First Bank v. Brumitt*
   519 S.W.3d 95 (Tex. 2017)..................................................................... 9

*Fleet Bank of Maine v. Harriman*
   21 A.2d 658 (Me. 1998)........................................................................ 9

1203430

*Gray & Son, Inc. v. Md. Deposit Ins. Fund Corp.*
 83 Md. App. 584, 575 A.2d 1272 (Md. Ct. Spec. App. 1990)................................. 9

*Guest House of Slidell v. Hills*
 76 So. 3d 497 (La. Ct. App. 2011) ........................................................................ 9

*Hess v. Ford Motor Co.*
 27 Cal. 4th 516 (2002) ................................................................................... 9, 11

*Liss v. Lewiston-Richards, Inc.*
 732 N.W.2d 203 (Mich. 2007) ............................................................................ 5

*Midwest Dredging Co. v. McAninch Corp.*
 424 N.W.2d 216 (Iowa 1988) .............................................................................. 9

*Morey v. Vannucci*
 64 Cal. App. 4th 904 (1998) ............................................................................... 9

*Scarpitti v. Weborg*
 609 A.2d 147 (Pa. 1992) ..................................................................................... 9

*State v. Piedmont Funding Corp.*
 382 A.2d 819 (1978) ........................................................................................... 5

*Sullivan v. Oracle Corp.*
 51 Cal. 4th 1191 (2011) ...................................................................................... 4

*Try Hours, Inc. v. Douville*
 985 N.E.2d 955 (Ohio Ct. App. 2013) ................................................................ 9

*W. Bend Mut. Ins. Co. v. Talton*
 997 N.E.2d 784 (Ill. App. Ct. 2013) ................................................................... 9

*Wash. Mut. Bank v. Super. Ct.*
 24 Cal. 4th 906 (Cal. 2001)................................................................................. 3

**State Statutes**

6 R.I. Gen. Laws Ann. § 6-13.1-4 ............................................................................. 5

Ark. Code Ann. § 4-88- 204 ...................................................................................... 5

Cal. Bus. & Prof. Code § 17200 ............................................................................ 4, 5

Cal. Bus. & Prof. Code § 17203 ................................................................................ 5

Cal. Civ. Code § 1646 ............................................................................................... 8

Colo. Stat. Ann. § 6-1-105 ........................................................................................ 4

D.C. Code Ann. § 28-3904 ........................................................................................ 5

Iowa Code § 714H.5(4)............................................................................................. 5

Mich. Comp. Laws Ann. § 445.90(1)(a) ................................................................... 5

1203430

Miss. Code. Ann. § 75-24-5 ................................................................................................ 5

N.D. Cent. Code § 51-15-02 ............................................................................................... 5

N.H. Rev. Stat. Ann. § 358-A:2 .......................................................................................... 5

N.J. Stat. Ann. § 56:8-2 ...................................................................................................... 4

N.Y. Gen. Bus. Law § 349(a) ............................................................................................. 4

Ohio Rev. Code Ann. § 1345 .............................................................................................. 5

Tex. Bus. & Com. Code Ann. § 17.505 .............................................................................. 5

Va. Code Ann. § 59.1 ......................................................................................................... 5

**Federal Rules**

Fed. R. Civ. P. 1 ............................................................................................................... 15

Fed. R. Civ. P. 23 ................................................................................................... 2, 10, 11

v

DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE NATIONWIDE CLASS
ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:16-cv-02558-VC

1203430

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

Plaintiffs seek to represent a nationwide class that cannot possibly be certified.  Plaintiffs demand that the Court apply California law to transactions that occurred across the country, overriding the legislative and judicial policy choices of nearly every state.  But California's choice-of-law rules do not permit this.  Instead, the Court must apply the law of the states where the relevant transactions occurred.  That makes a nationwide class impossible.  The relevant laws simply differ across too many dimensions.  No amount of discovery can change this fact.

Allowing Plaintiffs to pursue a nationwide class will drag the parties and Court through costly, time-consuming, and ultimately futile discovery and motions practice.  By contrast, striking all nationwide claims at the outset will streamline this case, facilitate discovery and trial preparation, and spare everyone needless expense.  There is no good reason to wait, and every reason to act now.

## II.    STATEMENT OF THE ISSUE TO BE DECIDED

This motion raises the question whether Plaintiffs' allegations on behalf of a putative nationwide class should be stricken on the ground that California's choice-of-law rules require the Court to apply the different laws of multiple states, thereby foreclosing class certification.

## III.    BACKGROUND

Lyft is a ridesharing company.  Second Amended Complaint ("SAC") ¶ 15.  Through a smartphone application, the Lyft Platform connects riders who need transportation to drivers willing to provide it.  *Id.* n.2.  Plaintiffs are drivers who use or used the Lyft Platform in California.  *Id.* ¶¶ 12–13.

The ordinary price a rider will pay for a ride is typically referred to as a "base" fare.  SAC ¶ 6.  During periods of high demand, a premium is added to the base fare to encourage more drivers to log on and offer rides.  This feature was initially called "Prime Time Tips," under which 100% of a high-demand surcharge went to drivers.  *Id.* ¶¶ 17–18.  During this time, the Lyft App did not prompt riders to leave an additional "tip."

1
DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE NATIONWIDE CLASS
ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:16-cv-02558-VC

1203430

Lyft later changed the name of the high-demand surcharge to simply "Prime Time."  D.E. 19 ¶ 24.  At the same time, Lyft implemented a separate tipping feature in the Lyft App.  *Id.* n.3. Under this new structure, Lyft collects a commission on Prime Time premiums (as well as on the base fare), and 100% of the tips paid by riders go to drivers.  *Id.* ¶ 24 & n.3.[1]

During the relevant time period, Lyft informed riders that Prime Time was in effect through an in-app notification ("pop-up").  SAC. ¶ ¶ 23–24.  Interpreting the pop-up's wording between 2014 and 2017 to mean that the entire Prime Time premium will go to drivers, Plaintiffs contend that Lyft's charging a commission on Prime Time premiums (1) violates California's Unfair Competition Law ("UCL") and (2) breaches Lyft's contracts with riders, of which drivers are third-party beneficiaries ("Prime Time Claims").  *Id.* ¶¶ 23–24, 28, 39–41, 71–80.  With these Prime Time Claims, Plaintiffs seek to impose the UCL and California contract law on every Prime Time transaction in the United States.[2]

## IV.   LEGAL STANDARD

"Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).  Rule 12(f)—which authorizes a motion to strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter"— permits this.  Fed. R. Civ. P 12(f); *see Sanders*, 672 F. Supp. 2d at 989–90.  So too does Rule 23, which directs the Court to determine whether to certify a class "[a]t an early practicable time" and gives it authority to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(c)(1), (d)(1)(D).  These provisions give the Court "broad discretion in making class action

---

[1] Plaintiffs acknowledged the change in name and implementation of a tipping feature in their past complaint but now, finding these facts inconvenient, gloss over them.  *Compare id.* ¶ 24 & n.3 (acknowledging shift from "Prime Time Tips" to "Prime Time" and contemporaneous implementation of tipping feature), *with* SAC ¶¶ 23–25 (omitting such allegations).

[2] Plaintiffs' prior complaint also acknowledged that at or around the shift to Prime Time, the pop-up language changed.  Because this change is also inconvenient for them, they now try to ignore it as well.  *Compare* D.E. 19 ¶¶ 23–24 (acknowledging change in pop-up language from "[t]he tip goes entirely to your driver" to "X% will be added to your total for the driver"), *with* SAC ¶ 25 n.2 (giving only partial quote of later language and describing it as "slightly different language" used at unspecified times).

1203430

determinations upon a party's motion for *or against* class certification." *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012) (emphasis added) (striking class allegations on the pleadings under Rule 23); *Kramer v. Wilson Sporting Goods Co.*, No. CV 13-6330-JFW (SHX), 2013 WL 12133670, at *4–6 (C.D. Cal. Dec. 13, 2013) (same); *see also Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 207, 209–13 (9th Cir. 1975) (affirming district court decision to strike class allegations under Rule 23 and rejecting argument that district court should have first allowed discovery).

"Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a *prima facie* showing that the class action requirements of [Rule 23] are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985), *as amended* (Aug. 27, 1985) (affirming decision to strike nationwide class allegations). When "awaiting further discovery will only cause needless delay and expense," the Court can and should make a preemptive determination that a class cannot be certified. *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995).

## V.    ARGUMENT

### A.    Plaintiffs cannot impose California law on a nationwide class.

Plaintiffs' proposed nationwide class treats California law as a one-size-fits-all standard, overriding the legislative and judicial policy choices of all other states. California's choice-of-law rules sensibly forbid this.

#### 1.    Under California choice-of-law rules, the Court must apply widely varying consumer-protection laws.

Under California's governmental-interests test, "California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interest in having its law applied.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) (quoting *Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 921 (Cal. 2001)). To determine whether California's interests outweigh the interests of other states in applying their consumer-protection statutes, the Court must determine (1) if the relevant law of each potentially affected jurisdiction

3

DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:16-cv-02558-VC

1203430

is different; (2) if so, whether a true conflict exists between different jurisdictions' laws; and (3) if a true conflict exists, which jurisdiction's interest would be "more impaired" if its law were not applied. *Id.*

Under this test, Plaintiffs cannot apply the UCL nationwide. Plaintiffs seek to apply California's UCL to transactions that occurred not only in California, but across the nation. The Ninth Circuit rejected exactly this in *Mazza*, holding that (1) each transaction was subject to the law of the place where it occurred and (2) differences in applicable law made a nationwide class impossible. The result here must be the same.[3]

### a. State consumer-protection statutes differ on multiple dimensions.

*Mazza* explains in painstaking detail how other states' versions of the UCL differ widely, both from the UCL and amongst each other. Following are examples of some of the key differences.[4]

*Actionable conduct.* State consumer-protection statutes forbid very different kinds of conduct. Some, such as New York's, prohibit only fraudulent or deceptive acts generally.[5] Others, like the UCL, refer broadly to "unfair" conduct as well, while others, like the New Jersey Consumer Fraud Act, also cover "unconscionable" conduct in general terms.[6] Yet other statutes, such as Colorado's, contain lists of specifically prohibited acts.[7] Further, even these general categories contain substantial variations. Massachusetts' test for unfairness overlaps with, but is distinct from, North Carolina's.[8] Similarly, Virginia's list of 56 prohibited acts is exclusive and

---

[3] Separate and apart from this choice-of-law analysis, the UCL cannot be applied extraterritorially. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206–09 (2011). Lyft will address extraterritoriality at a later stage of the case, if necessary.

[4] These and other examples may also be found in the Appendix ("App'x") filed with this motion.

[5] N.Y. Gen. Bus. Law § 349(a); *see generally* App'x I.A.

[6] Cal. Bus. & Prof. Code § 17200; N.J. Stat. Ann. § 56:8-2; *see generally* App'x I.A.

[7] Colo. Stat. Ann. § 6-1-105; *see generally* App'x I.A.

[8] *Compare Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005), *with Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987); *see generally* App'x I.A.

1203430

covers only "fraudulent acts or practices," while New Hampshire's statute contains examples of both deceptive and unfair conduct and is meant to be illustrative.[9]

**Areas regulated.**   The relevant statutes also occupy very different fields.  California's UCL applies to "business act[s]."  Cal. Bus. & Prof. Code § 17200.   Some states, like Mississippi, regulate transactions that "affect[] commerce."[10]   In others—such as Ohio and Virginia—the relevant statutes govern only "consumer transactions" involving goods or services primarily for personal or household use.[11]   And at least two states broadly exempt businesses that are regulated by state authorities.[12]

**Elements of claims.**   The relevant statutes also vary on the necessary elements to state a claim.  Many require a showing of *scienter* or wrongful intent for some, if not all, claims.[13]   Others, like California, do not require *scienter* or wrongful intent for any claim.[14]   Similarly, states part ways on whether and when reliance is required.[15]   Further, multiple states require plaintiffs to give written notice to the defendant before filing suit in at least some circumstances.[16]

**Remedies.**   "[E]ven once violation is established, there are also material differences in the remedies given by state laws."  *Mazza*, 666 F.3d at 591.  The UCL authorizes only restitution and injunctive relief.[17]   Other states authorize compensatory damages.[18]   Some go further by allowing punitive or treble damages, depending on the circumstances.[19]

---

[9] *Compare* Va. Code Ann. § 59.1-200(A), *with* N.H. Rev. Stat. Ann. § 358-A:2; *see generally* App'x I.A.

[10] Miss. Code. Ann. § 75-24-5; *see generally* App'x I.B.

[11] Ohio Rev. Code Ann. §§ 1345.01, 1345.02; Va. Code Ann. §§ 59.1-198, 59.1-200(A); *see generally* App'x I.B.

[12] 6 R.I. Gen. Laws Ann. § 6-13.1-4; *State v. Piedmont Funding Corp.*, 382 A.2d 819, 822 (1978); Mich. Comp. Laws Ann. § 445.90(1)(a); *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 203, 213–15 (Mich. 2007); *see generally* App'x I.E.

[13] N.D. Cent. Code § 51-15-02; *see generally* App'x I.C.

[14] *Mazza*, 666 F.3d at 591 (noting UCL does not require showing of *scienter*).; *see generally* App'x I.C.

[15] *Compare In re Onstar Contract Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011), *with* D.C. Code Ann. § 28-3904; App'x I.D.

[16] Tex. Bus. & Com. Code Ann. § 17.505(a), (b); *see generally* App'x I.E.

[17] Cal. Bus. & Prof. Code § 17203.

1203430

As *Mazza* held, these differences are not "trivial or wholly immaterial"—to the contrary, many will "spell the difference between the success and failure of a claim." *Mazza*, 666 F.3d at 591. Take, for example, the difference between statutes that prohibit unfair or unconscionable conduct and those that do not. Given the shaky basis of Plaintiffs' fraud theory—they allege that Lyft defrauded drivers by misrepresenting Prime Time ***to riders***, *see* SAC ¶ 79(a)—a Prime Time Claim under a statute limited to fraudulent or deceptive conduct will face different odds from one under a statute that covers "unfair" conduct. Moreover, success under a broader statute would depend on how it defines "unfair" conduct. Likewise, Prime Time Claims will face unique challenges under statutes that govern only "consumer transactions" or do not apply to fields that are already regulated.

### b.     A true conflict exists between the laws of different states.

"It is a principle of federalism that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *Mazza*, 666 F.3d at 591 (citation and internal marks omitted). Similarly, California law "acknowledges that a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders." *Id.* at 592 (citation and internal marks here). Here, like in *Mazza*, the relevant transactions—riders clicking "Confirm Lyft" after seeing a Prime Time pop-up—occurred in many "different jurisdictions," each of which "has a strong interest in applying its own consumer protection laws to those transactions." *Id.*

As *Mazza* explains, the incredible variety in consumer-protection laws shows that states weigh competing concerns such as "[m]aximizing consumer [protection]" against "corporate liability" and reach different conclusions about the "optimal balance between protecting consumers and attracting foreign businesses, with resulting increase in commerce and jobs." *Id.* These decisions reflect two key interests: "balancing the range of products and prices offered to consumers with the legal protections afforded to them" and "assur[ing] individuals and commercial entities . . . that applicable limitations on liability set forth in the jurisdiction's law

---

[18] Ohio Rev. Code Ann. § 1345.09(A); *see generally* App'x I.G.
[19] Iowa Code § 714H.5(4); Ark. Code Ann. § 4-88- 204; *see generally* App'x I.F.

DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:16-cv-02558-VC

1203430

will be available to those individuals and businesses." *Id.* at 592–93 (citation and internal marks omitted). Those interests are "squarely implicated" where, as here, a plaintiff seeks to override one state's choices by applying another's law. *Id.* at 593.

<strong>c.    Other states' interests would be most impaired if California's law is applied than <em>vice versa</em>.</strong>

"[E]ach foreign state has an interest in applying its law to transactions within its borders" and, if California law were applied nationwide, "foreign states would be impaired in their ability to calibrate liability to foster commerce." *Id.* California thus recognizes that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Id.* (citation omitted). For putative class members, that is where the Prime Time ride occurred.

"California considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred." *Id.* (citation omitted). In *Mazza*, the place of the wrong was the state where the allegedly misleading representation was communicated to foreign class members. *Id.* at 594. So too here. Under Plaintiffs' theory, the "last necessary event" was the communication of Prime Time pop-ups to riders, which obviously "took place in the various foreign states" for rides that began outside California. *Id.* As a result, other states have a significant interest in regulating Prime Time rides that took place within their borders.

On the other side of the scale, *Mazza* recognized that "California's interest in applying its law to residents of foreign states is attenuated." *Id.* While California may have an interest in regulating those who do business within its borders, "applying California law to the claims of foreign residents concerning acts that took place in other states" is not necessary to achieve that interest. *Id.*

Again, there is no material difference between *Mazza* and this case. Applying the UCL to Lyft drivers in other states would substantially impair those states' interests. Conversely, applying local law to those drivers does not harm California's interest in regulating businesses headquartered here or protecting its own residents. The UCL thus cannot apply across the

7

1203430

board—instead, a nationwide class would require the Court to interpret and apply dozens of other states' consumer-protection laws.

### 2. Under California choice-of-law rules, the Court must apply widely varying contract laws.

As with their UCL claim, Plaintiffs assume that California contract law will apply nationwide. SAC ¶ 72. But their theory of the case precludes this. Plaintiffs allege that each time a rider who saw Prime Time pop-up clicked "Confirm Lyft," the pop-up became a standalone, ride-specific contract. As Plaintiffs themselves put it:

> In other words, Lyft is offering a ride, for a Premium, which it promises is for the Driver. Customers who click "Confirm Lyft," accept the offer, *forming a contract.* Thus, the FAC alleges that Lyft is breaching *these contracts* with its customers by keeping a portion of the Prime Time Premiums . . .

D.E. 33 at 3–4 (emphasis added; citations omitted). Lest there be any doubt, Plaintiffs further describe pop-up screenshots as "visual examples of Lyft's *contracts with riders*." *Id.* at 3 n.2 (emphasis added).

This makes the choice-of-law question for contracts simple. "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. Here, the alleged contracts do not state a place of performance, *see* SAC ¶ 24, and so must be interpreted under the law of the place where they are made. That is the "place of acceptance"—in this case, wherever a rider clicked "Confirm Lyft." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1197 (S.D. Cal. 2007) (citing *ABF Capital Corp. v. Grove Props. Co.*, 126 Cal. App. 4th 204, 222 (2005)).

The Court thus would have to apply not only many states' consumer-protection statutes, but their contract law as well. And just like consumer-protection laws, contract law differs materially in many ways.

*Finding ambiguity.* Many states—including Colorado, Louisiana, and Ohio—adhere to a strict "four corners" rule of contract interpretation, refusing to consider extrinsic evidence unless

8

1203430

a contract is facially ambiguous.[20]  Others, like California and Washington, permit use of extrinsic evidence absent any facial ambiguity.[21]

**Extrinsic evidence.**  Some states, such as California, permit broad consideration of any relevant extrinsic evidence.[22]  Others, such as Illinois, permit consideration only of extrinsic evidence that could be supplied by disinterested third parties.[23]

**Presumption against third-party beneficiary status.**  California views third-party beneficiary status as a question of ordinary contract interpretation.[24]  In other states, such as Texas and Illinois, there is a strong presumption ***against*** third-party beneficiary status.[25]

**Controlling intent for third-party beneficiary status.**  States differ on ***whose*** intent matters when it comes to creating a third-party beneficiary.  In states like Delaware, Florida, and Maryland, both parties must intend to create a third-party beneficiary.[26]  In others, like California, Iowa, and Maine, courts focus on the intent of the promisee.[27]  Adding to the confusion, at least one state, Pennsylvania, holds that both parties must intend to create a third-party beneficiary unless there are "compelling" circumstances.[28]

---

[20] *Armed Forces Bank, N.A. v. Hicks*, 365 P.3d 378, 385 (Colo. Ct. App. 2014); *Try Hours, Inc. v. Douville*, 985 N.E.2d 955, 959 (Ohio Ct. App. 2013); *Guest House of Slidell v. Hills*, 76 So. 3d 497, 499 (La. Ct. App. 2011); *see generally* App'x II.A.

[21] *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998); *Berg v. Hudesman*, 801 P.2d 222, 230 (Wash. 1990); *see generally* App'x II.A.

[22] *Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 980 (2006); *see generally* App'x II.B.

[23] *W. Bend Mut. Ins. Co. v. Talton*, 997 N.E.2d 784, 790 (Ill. App. Ct. 2013); *see generally* App'x II.B.

[24] *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002).

[25] *First Bank v. Brumitt*, 519 S.W.3d 95, 103 (Tex. 2017); *Estate of Willis v. Kiferbaum Const. Corp.*, 830 N.E.2d 636, 642 (Ill. App. Ct. 2005); *see generally* App'x II.C.

[26] *Am. Fin. Corp. v. Computer Scis. Corp.*, 558 F. Supp. 1182, 1185 (D. Del.1983); *Esposito v. True Color Enters. Constr., Inc.*, 45 So.3d 554, 554 (Fla. Dist. Ct. App. 2010); *Gray & Son, Inc. v. Md. Deposit Ins. Fund Corp.*, 83 Md. App. 584, 595, 575 A.2d 1272, 1277 (Md. Ct. Spec. App. 1990); *see generally* App'x II.D.

[27] *Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 224 (Iowa 1988); *Fleet Bank of Maine v. Harriman*, 21 A.2d 658, 660 (Me. 1998); *see generally* App'x II.D.

[28] *Scarpitti v. Weborg*, 609 A.2d 147, 150–51 (Pa. 1992).

1203430

These differences are no small matter.  Plaintiffs' Prime Time Claims hinge on just a handful of words in the Prime Time pop-up.  SAC ¶¶ 24–25 & n.3.  Some courts would look just at those words in deciding whether they are ambiguous, while others would consider extrinsic evidence before deciding if they are ambiguous.  Likewise, the ultimate interpretation of those words may depend heavily on whether the law carries a presumption against third-party beneficiary status.  These variations—like the variations in consumer-protection statutes—could spell the difference between success and failure.  Plaintiffs cannot simply ignore them.

**B.     The different state laws are fatal to class certification.**

Case after case recognizes that courts cannot certify a nationwide class where, as here, there are more than a handful of differences in applicable state law.  Indeed, "[i]t goes without saying that class certification is impossible where the fifty states truly establish a large number of different legal standards governing a particular claim."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1261 (11th Cir. 2004), *abrogated in part on other grounds as recognized in Braswell Wood Co. v. Waste Away Grp., Inc.*, No. 2:09-CV-891-WKW, 2010 WL 3168125, at *3 n.1 (M.D. Ala. Aug. 10, 2010); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948–49 (6th Cir. 2011) (striking nationwide class claims that would have required application of multiple states' laws and noting similar authority from multiple circuits).

"In a multi-state class action, variations in state law may swamp any common issues and defeat predominance" under Federal Rule of Civil Procedure 23(b)(3) (the only rule under which Plaintiffs seek to certify a nationwide class).  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996); *Mazza*, 666 F.3d at 596 (same); Fed. R. Civ. P. 23(b)(3).  When "more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996).  Courts thus routinely reject nationwide statutory and breach-of-contract claims under Rule 23(b)(3).  *E.g.*, *Mazza*, 666 F.3d at 590 (holding district court abused its discretion in certifying nationwide class that contained class members in jurisdictions with different consumer-protection laws); *Bowers v. Jefferson Pilot Fin. Ins. Co.*, 219 F.R.D. 578, 579–80 (E.D. Mich. 2004) (finding nationwide breach-of-contract class unmanageable due to state-by-state differences in how

10

extrinsic evidence is considered); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 544–45 (C.D. Cal. 2013) (same).

Indeed, because of the many variations in state law, Plaintiffs cannot satisfy the basic threshold requirements of Rule 23(a).  Take, for example, the "common" questions Plaintiffs identify: "(a) Whether California law applies to transactions outside of California; (b) Whether Lyft breached a contract with Riders that was made for the benefit of Drivers; (c) Whether Lyft's Prime Time program is unlawful, unfair, and fraudulent; and (d) The proper measure of damages sustained by members of the Nationwide Class."  SAC ¶ 50.  The answer to (a) is no, which means the answers to (b)–(d) depend on different legal standards.  As a result, Plaintiffs lack a "common contention" whose "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); Fed. R. Civ. P. 23(a)(2).

The differences in state laws also mean that Plaintiffs do not have claims typical of, and cannot adequately represent, a nationwide class.  Fed. R. Civ. P. 23(a)(3), (4).  Plaintiffs' Prime Time Claims are very different from the Prime Time Claims of out-of-state drivers.  Plaintiffs, for example, have no reason to probe the issue of *scienter* or intent because neither would affect their own recovery under the UCL.  But these could be critical for drivers in states such as Alabama, Illinois, Indiana, Kansas, North Dakota, Utah, and Virginia.[29]  Likewise, Plaintiffs have a lighter burden in proving third-party beneficiary status under California law—where it is an ordinary matter of contract interpretation—than would drivers in Illinois and Arkansas—which have a strong presumption against third-party beneficiary status.[30]  These and other differences create obvious conflicts of interest between Plaintiffs and non-California drivers.

### C.   Plaintiffs cannot paper over the differences in state law.

Plaintiffs no doubt will contend the various differences in state law do not matter.  While Lyft cannot anticipate all the arguments Plaintiffs will raise, it will briefly address here two of the most likely ones: that (1) the choice-of-law clauses in the Lyft Terms of Service Agreements

---

[29] *See* App'x I.C.

[30] *Hess*, 27 Cal. 4th at 524; *see generally* App'x II.C.

1203430

mandate applying California law, and (2) any differences in state law can be addressed by grouping similar states together in subclasses.

### 1. Plaintiffs' theory of the case prevents them from relying on the choice-law-clause in the Lyft Terms of Service Agreement.

Plaintiffs' Prime Time Claims rest on the idea of standalone, ride-specific transactions that occur every time riders see a Prime Time pop-up and click "Confirm Lyft."  SAC ¶ 74; D.E. 33 at 3–4 & n.2.  Plaintiffs no doubt took this approach to avoid the Lyft Terms of Service Agreement, which contains detailed provisions on driver pay that Plaintiffs hope to avoid.  Regardless of their motives, they cannot now turn around and demand the Court apply the Terms of Service Agreements' choice-of-law clauses.  *See* SAC ¶ 72.  These clauses have always governed only the Terms of Service Agreements themselves,[31] and the most recent version, now in effect for over a year, expressly states that it "is intended to specify the use of California law to interpret this Agreement and is not intended to create any other substantive right to non-Californians to assert claims under California law whether by statute, common law, or otherwise."[32]  The choice-of-law clauses thus do not control the separate, ride-specific agreements that Plaintiffs allege.  *See Schering Corp. v. First DataBank Inc.*, No. C 07-01142 WHA, 2007 WL 1176627, at *7 (N.D. Cal. Apr. 20, 2007) (agreement's choice-of-law clause did not apply to defamation claim that "d[id] not require any consideration of how the agreement should be construed").

### 2. No workable subclass structure exists.

While in some cases a plaintiff might be able to group states with similar laws into a reasonable number of subclasses, this is not such a case.  The relevant laws differ across multiple dimensions, with each dimension exponentially increasing the number of possible variations.

To illustrate the problem, consider the statutory claims of drivers in just six states: California, Arizona, Massachusetts, Ohio, New York, and Michigan.

---

[31] Declaration of Anne Rupley ¶ 4 & Exhibit 1 at 10, Exhibit 2 at 14, Exhibit 3 at 14, Exhibit 4 at 12, Exhibit 5 at 12.

[32] *Id.* Exhibit 6 at § 21.

12
DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:16-cv-02558-VC

1203430

| | Covers Only Fraudulent Or Deceptive Conduct (App'x I.A) | "Consumer Transactions" Only (App'x I.B) | *Scienter* or Intent Required (App'x I.C) | Reliance Required (App'x I.D) | Pre-Suit Notice Required (App'x I.E) | Carve-Out For Regulated Entities (App'x I.F) |
|---|---|---|---|---|---|---|
| CA | No | No | No | Yes | No | No |
| AZ | No | No | Yes | Yes | No | No |
| MA | No | No | No | No | Yes | No |
| OH | No | Yes | No | Yes | No | No |
| NY | Yes | No | No | No | No | No |
| MI | No | No | Yes | Yes | No | Yes |

Each state presents a unique combination of elements requiring its own subclass. Adding more states would, of course, multiply the number of configurations and necessary subclasses. So too would accounting for other factors, such as differences in remedies and varying definitions of "unfair" or "unconscionable" conduct.

The subclasses needed for Plaintiffs' breach-of-contract theory would be nearly as numerous. By way of example, the next chart considers the following six states: California, Texas, Colorado, Illinois, Pennsylvania, and Louisiana.

| | Requires Finding Of Ambiguity Before Considering Extrinsic Evidence (App'x II.A) | Extrinsic Evidence Must Be Of Type That Comes From Disinterested Third Parties (App'x II.B) | Presumption Against Third-Party Beneficiary (App'x II.C) | Both Parties Must Intend To Create Third-Party Beneficiary (App'x II.D) |
|---|---|---|---|---|
| CA | No | No | No | No |
| TX | Yes | No | Yes | Yes |
| CO | Yes | No | No | Yes |
| IL | No | Yes | Yes | No |
| PA | No | No | No | Yes, except in "compelling" circumstances |
| LA | No | No | No | Yes |

1203430

1   Again: six states, six distinct combinations, six necessary subclasses.  And that number would

2   only grow if Plaintiffs fairly accounted for other states and subtle distinctions in state law.

3          Even assuming Plaintiffs can identify the necessary subclasses for all variations in state

4   law, the resulting trial plan would collapse of its own weight.  Subclassing cannot fix Plaintiffs'

5   choice-of-law problem.

6          **D.     The Court can and should strike the nationwide class claims now.**

7          Plaintiffs may urge the Court to ignore potential class-certification problems until after

8   full nationwide class discovery and a motion to certify a class.  But that is both unnecessary and

9   ill-advised.

10          "[W]here the matter is sufficiently obvious from the pleadings, a court may strike class

11   allegations."  *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW JEMX, 2013 WL

12   658251, at *8 (C.D. Cal. Feb. 21, 2013) (finding choice-of-law analysis suitable for resolution on

13   pleadings and striking nationwide class allegations).  Here, the "key reality" is that out-of-state

14   drivers' "claims are governed by different States' laws, a largely legal determination, and no . . .

15   potential factual development offers any hope of altering that conclusion."  *Pilgrim*, 660 F.3d at

16   949 (affirming order striking nationwide class allegations at pleadings stage).  Under

17   "California's choice of law rules as applied in *Mazza*, . . . it is clear from the pleadings that

18   application of California law to a nationwide class would be inappropriate here."  *Route*, 2013

19   WL 658251, at *8.[33]

20

21

22   ────────────
   [33] *See also Kramer*, 2013 WL 12133670, at *4–6 (holding that *Mazza* choice-of-law analysis can
   be resolved via motion to strike and striking nationwide class allegations at pleadings stage);

23   *Rikos v. Procter & Gamble Co.*, No. 1:11-CV-226, 2012 WL 641946, at *6 (S.D. Ohio Feb. 28,
   2012) (noting that *Mazza* assessed variations in state law "without conducting; a factual analysis"

24   and striking nationwide class allegations at pleadings stage); *Littlehale v. Hain Celestial Grp.,
   Inc.*, No. C 11-6342 PJH, 2012 WL 5458400, at *1 (N.D. Cal. July 2, 2012) (citing *Mazza* and

25   dismissing Pennsylvania-law claim at pleadings stage); *In re Yasmin & Yaz (Drospirenone)
   Mktg.*, 275 F.R.D. 270, 276 (S.D. Ill. 2011) (holding at pleadings stage that "because governing

26   choice of law principles require application of the substantive laws of the fifty states and the
   District of Columbia—laws which vary amongst the jurisdictions—the case cannot be maintained

27   as a nationwide class action"); *cf. Frezza v. Google Inc.*, No. 5:12-CV-00237-RMW, 2013 WL
   1736788, at *6 (N.D. Cal. Apr. 22, 2013) ("[T]he principle articulated in *Mazza* applies generally

28   and is instructive even when addressing a motion to dismiss.").

────────────
14

1203430

1    Further, resolving the nationwide-class issue now will promote "the just, speedy, and

2    inexpensive determination" of the case.  Fed. R. Civ. P. 1.  Nationwide class discovery is, of

3    course, exceptionally burdensome, costly, and time-consuming.  *See Schager v. Union Fid. Life*

4    *Ins. Co.*, No. 85 C 8244, 1987 WL 13570, at *4 (N.D. Ill. July 6, 1987) ("Particularly when a

5    nationwide class action is alleged involving potentially enormous discovery, plaintiff must

6    advance a *prima facie* showing that discovery is likely to produce information substantiating the

7    viability of a class.").  Plaintiffs have already made plain that they want sweeping nationwide

8    discovery, including information and communications about Prime Time across multiple markets,

9    contact and identifying information for every Lyft driver nationwide, and detailed ride and

10   payment data for all these drivers.  All that would go to waste when the Court inevitably refuses

11   to certify a nationwide class.

12   Because the propriety of a nationwide class is a foregone conclusion, the Court can spare

13   the parties and itself much wasted effort by resolving that issue now.  It should do so.

14   **VI.    CONCLUSION**

15   For the foregoing reasons, Lyft respectfully requests that the Court strike the nationwide

16   class claims from Plaintiffs' Second Amended Complaint.

17
18   Dated:  November 9, 2017                           KEKER, VAN NEST & PETERS LLP

19
20                                                By:   */s/ Simona A. Agnolucci*
                                                        RACHAEL E. MENY
21                                                      SIMONA A. AGNOLUCCI
                                                        ALEXANDER DRYER
22
                                                        Attorneys for Defendant LYFT, INC.
23

24

25

26

27

28

DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE NATIONWIDE CLASS
ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:16-cv-02558-VC

1203430