# Exhibit 1

1    JAHAN C. SAGAFI (CAL. BAR NO. 227887)
    jsagafi@outtengolden.com
2    RELIC SUN (CAL. BAR NO. 306701)
    rsun@outtengolden.com
3    OUTTEN & GOLDEN LLP
    One Embarcadero Center, 38th Floor
4    San Francisco, CA 94111
    Telephone: (415) 638-8800
5    Facsimile: (415) 638-8810

6    RACHEL BIEN (CAL. BAR NO. 315886)
    rmb@outtengolden.com
7    MICHAEL J. SCIMONE (PRO HAC VICE)
    mscimone@outtengolden.com
8    OUTTEN & GOLDEN LLP
    685 Third Avenue, 25th Floor
9    New York, NY 10017
    Telephone: (212) 245-1000
10   Facsimile: (646) 509-2060

11   Attorneys for Plaintiffs, Aggrieved Employees, and Proposed Class Members

12   KEKER, VAN NEST & PETERS LLP
    RACHAEL E. MENY - # 178514
13   rmeny@keker.com
    SIMONA A. AGNOLUCCI - # 246943
14   sagnolucci@keker.com
    JAY RAPAPORT - # 281964
15   jrapaport@keker.com
    633 Battery Street
16   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
17   Facsimile:    415 397 7188

18   Attorneys for Defendant LYFT, INC.

19            UNITED STATES DISTRICT COURT

20          NORTHERN DISTRICT OF CALIFORNIA

21             SAN FRANCISCO DIVISION

| | |
|---|---|
| 22   ALEX ZAMORA and RAYSHON CLARK | Case No. 3:16-cv-02558-VC |
| 23   on behalf of themselves and all those similarly situated, | **CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE** |
| 24          Plaintiffs, | |
| 25        v. | Judge:     Hon. Vince Chhabria |
| 26   LYFT, INC., | Date Filed: May 11, 2016<br>Trial Date: None |
| 27          Defendant. | |
| 28 | |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release, including Exhibits A–E hereto ("Settlement Agreement" or "Agreement"), is made and entered into by, between, and among Plaintiffs Alex Zamora and Rayshon Clark (collectively, "Named Plaintiffs"), on behalf of themselves and the Settlement Class as defined below, and Defendant Lyft, Inc. ("Defendant" or "Lyft").  Named Plaintiffs and Defendant (collectively, the "Parties") enter into this Agreement to effect a full and final settlement and dismissal with prejudice of the Released Claims as defined below.  This Agreement is intended to fully and finally compromise, resolve, discharge, and settle the Released Claims, as defined and on the terms set forth below, and to the full extent reflected herein, subject to the approval of the Court.

## I.    RECITALS

1.    This Agreement is made in consideration of the following facts:

2.    WHEREAS, on May 11, 2016, Named Plaintiffs filed a complaint in the Northern District of California asserting various Prime Time Premium-related claims against Lyft on behalf of themselves and a proposed class of Drivers nationwide, thereby initiating *Zamora et al. v. Lyft, Inc.*, No. 3:16-cv-02558-VC (the "Action"), *see* Docket Entry No. 1;

3.    WHEREAS, on July 6, 2016, Named Plaintiffs filed a first amended complaint in the Action asserting various wage-, hour-, expense-, and Prime Time Premium-related claims against Lyft on behalf of themselves and a proposed class of Drivers nationwide, *see* Docket Entry No. 19;

4.    WHEREAS, on November 6, 2017, Named Plaintiffs filed a second amended complaint in the Action asserting various wage-, hour-, expense-, and Prime Time Premium-related claims against Lyft on behalf of themselves and a proposed class of Drivers nationwide, *see* Docket Entry No. 62;

5.    WHEREAS, on December 1, 2017, the Court approved a stipulation under which Named Plaintiffs filed a third amended complaint in the Action asserting various wage-, hour-, expense-, and Prime Time Premium-related claims against Lyft on behalf of themselves and a proposed class of Drivers in California, *see* Docket Entry Nos. 68, 68-1, and 69;

1261713

6.      WHEREAS, the Parties have engaged in extensive formal and informal discovery, including all of the following: Named Plaintiffs propounded multiple sets of written discovery and reviewed more than 7,500 pages of documents produced by Lyft, and analyzed several sets of confidential data made available by Lyft;

7.      WHEREAS, Lyft denies all allegations in the Action; denies that it has engaged in any wrongdoing; denies that it improperly charged a commission on any Prime Time Premium; denies that it breached any contract, converted any property belonging to plaintiffs or violated Business & Professions Code 17200; denies that it took monies or gratuities from any Driver; denies that any Driver is or ever was an employee of Lyft; denies that it ever failed to pay any Driver any amounts or expenses required by California law or that it failed to provide any documentation required by California law; denies that the Named Plaintiffs' allegations state valid claims; denies that a litigation class could properly be certified in the Action; and states that it is entering into this Settlement Agreement solely to eliminate the uncertainties, burden, expense, and delay of further protracted litigation;

8.      WHEREAS, the parties attended a mediation session with Mark Rudy and negotiated extensively at arm's length before agreeing to the terms of this Settlement Agreement at arm's length;

9.      WHEREAS, on September 30, 2016, the arbitration provisions in the Lyft Terms of Service Agreement were amended to, among other things, permit Drivers to opt out of arbitrating claims based on an alleged employment relationship between Lyft and the Driver, and only a few hundred Drivers in California have attempted to opt out of arbitrating such claims;

10.     WHEREAS, on March 16, 2017, this Court entered an order granting final approval of the settlement in *Cotter v. Lyft, Inc.*, No. 3:13-cv-04065-VC, which had the effect of releasing California Drivers' employee-misclassification claims and claims for civil penal penalties under the Labor Code Private Attorney General Act of 2004 ("PAGA") for the period of May 25, 2012 through July 1, 2016, and which was summarily affirmed by the United States Court of Appeals for the Ninth Circuit on September 15, 2017;

11.     WHEREAS, in view of these developments, the parties have agreed, as described in further detail below, to settle, on a class-wide basis, claims that arise out of, are based on, or relate to unpaid Prime Time Premiums, the charging of commissions on Prime Time Premiums, or any other Prime Time Premium-related allegation included in the Action, and to dismiss without prejudice other claims (except for Named Plaintiffs' claims, which will be dismissed with prejudice);

12.     WHEREAS, the Named Plaintiffs and Class Counsel believe that the Settlement Agreement provides a favorable recovery for the Settlement Class, based on the claims asserted, the evidence developed, the damages that might be proven against Lyft in the Action, and the claims to be dismissed without prejudice;

13.     WHEREAS, the Named Plaintiffs and Class Counsel further recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Lyft through trial and appeals; have considered the uncertain outcome and the risk of any litigation, especially in complex litigation such as the Action, as well as the difficulties and delays inherent in any such litigation; are mindful of the inherent challenges of proof and the strength of the defenses to the alleged claims; and therefore believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice;

14.     WHEREAS, the Named Plaintiffs and Class Counsel, based on their own independent investigations and evaluations, have examined the benefits to be obtained under the terms of this Settlement Agreement, have considered the claims of the Named Plaintiffs, the claims of the average Settlement Class Member, the risks associated with the continued prosecution of the Action, and the likelihood of success on the merits of the Action, and believe that, after considering all the circumstances, including the uncertainties surrounding the risk of further litigation and the defenses that Lyft has asserted and could assert, the proposed Settlement set forth in this Agreement is fair, reasonable, adequate, in the best interests of the Named Plaintiffs and the Settlement Class, and confers substantial benefits upon the Settlement Class;

15.     WHEREAS, Named Plaintiffs warrant and represent that they are effecting this Settlement and executing this Agreement after having received full legal advice as to their

1  respective rights and have had the opportunity to obtain independent counsel to review this

2  Agreement;

3      16.   WHEREAS, the Parties further agree that the Agreement, the fact of this

4  Settlement, any of the terms in the Agreement, and any documents filed in support of the

5  Settlement shall not constitute, or be offered, received, claimed, construed, or deemed as, an

6  admission, finding, or evidence of: (i) any wrongdoing, (ii) any violation of any statute or law,

7  (iii) any liability on the claims or allegations in the Action on the part of any Released Parties, or

8  (iv) the propriety of certifying a litigation class in the Action or any other proceeding, and shall

9  not be used by any Person for any purpose whatsoever in any legal proceeding, including but not

10  limited to arbitrations, other than a proceeding to enforce the terms of the Agreement.

11      17.   WHEREAS, there has been no final determination by any court as to the merits of

12  the claims asserted by Named Plaintiffs against Lyft, nor has there been any final determination

13  as to whether a class should be certified;

14      18.   WHEREAS, for settlement purposes only, Lyft will stipulate to the certification of

15  class claims that are subject to the certification requirements of Rule 23, and Lyft disputes that

16  certification is proper for the purposes of litigating the class' claims proposed in or flowing from

17  the operative complaint in the Action;

18      19.   WHEREAS, the Parties desire to compromise and settle certain claims in the

19  manner and upon the terms and conditions hereafter set forth in this Agreement.

20      20.   NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO, AND

21  AGREED, by the Named Plaintiffs, for themselves and on behalf of the Settlement Class, and by

22  Lyft that, subject to the approval of the Court, the Action shall be settled, compromised, and

23  dismissed, and the Released Claims shall be finally and fully compromised, settled, and dismissed

24  as to the Released Parties, in the manner and upon the terms and conditions hereafter set forth in

25  this Agreement.

26  **II.    DEFINITIONS**

27      21.   In addition to the terms defined elsewhere in this Agreement, the following terms,

28  used in this Settlement Agreement, shall have the meanings specified below:

a)      "Authorized Claimant" means any Settlement Class Member who submits a valid and timely Claim that qualifies for a payment under the terms of this Settlement Agreement.

b)      "Bar Date" means the final date by which a Claim Form must be postmarked or submitted online in order for a Settlement Class Member to be eligible to receive a Settlement Payment.  The Bar Date shall be the date of the Fairness Hearing, and shall be specifically identified and set forth in the Preliminary Approval Order and the Class Notice.

c)      "Claim" means the submission to be made by Settlement Class Members, using the Claim Form.

d)      "Claim Form" means the claim form to be developed by the Parties and the Settlement Administrator, or an electronic equivalent of such claim form.

e)      "Class Counsel" means Outten & Golden LLP.

f)      "Class Members' Released Claims" means any and all past and present claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including but not limited to those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and for claims for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs, or disbursements, including but not limited to those incurred by Class Counsel or any other counsel representing the Named Plaintiffs or any Settlement Class Members, other than those expressly awarded by the Court in the Fee and Expense Award authorized by this Agreement) that arise out of, are based on, or relate to unpaid Prime Time Premiums, the charging of commissions on Prime Time Premiums, or any other Prime Time Premium-related allegation included in the Action, including, but not limited to, the following claims: (i) conversion; (ii) breach of contract; (iii) unfair, unlawful, and/or fraudulent business practices, including under California Business and Professions Code section 17200, *et seq.*; (iv) the California Labor Code or the Fair Labor Standards Act; (v) civil penalties pursuant to PAGA; and (vi) claims for attorneys' fees and costs.

1261713

1   Without limiting the scope of Class Members' Released Claims as stated above, for sake of

2   clarity the Parties agree that the Class Members' Released Claims do not include non-Prime

3   Time-related claims asserted as part of the Fifth, Sixth, Seventh, and Eighth Claims for Relief

4   asserted in the Third Amended Complaint, Docket No. 68-1.  Such claims shall be dismissed

5   without prejudice.

6           g)      "Class Notice" means the notice of settlement to be provided to Settlement

7   Class Members pursuant to Federal Rule of Civil Procedure 23, the Preliminary Approval Order,

8   and this Settlement Agreement.

9           h)      "Court" means the United States District Court for the Northern District of

10  California.

11          i)      "Dispute Resolution Fund" means the fund consisting of twenty thousand

12  dollars ($20,000) set aside from the Settlement Amount to be used: (i) to resolve any bona fide

13  disputes that may arise regarding the calculation and disbursement of Settlement Payments

14  according to the Plan of Allocation, as provided in Paragraph 49; and (ii) to disburse Settlement

15  Payments to individuals mistakenly excluded from the Settlement Class, as provided in Paragraph

16  64.

17          j)      "District Court Final Approval Order" means the Final Judgment and

18  order that is entered by the Court finally approving the Settlement and this Settlement Agreement

19  in all respects, as further set forth in Paragraph 27.

20          k)      "Driver" means any individual who has been approved by Lyft to use the

21  Lyft smartphone application in "driver mode."

22          l)      "Effective Date" means two (2) days after which both of the following

23  events have occurred: (i) the District Court Final Approval Order has been entered and (ii) the

24  District Court Final Approval Order and Judgment have become Final.

25          m)      "Escrow Account" means the bank account maintained by the Escrow

26  Agent into which the Settlement Fund shall be deposited, pursuant to the Escrow Agreement,

27  which shall be agreed to by the Parties.

28

1          n)      "Escrow Agent" means Rust Consulting, Inc., the entity mutually agreed

2    upon by Lyft and Class Counsel to maintain the Escrow Account, into which the Settlement Fund

3    shall be deposited in accordance with the terms of this Agreement.

4          o)      "Exclusion/Objection Deadline" means the final date by which a

5    Settlement Class Member may either (i) object to any aspect of the Settlement (pursuant to the

6    Preliminary Approval Order and Section XI), or (ii) request to be excluded from the Settlement

7    (pursuant to the Preliminary Approval Order and Section X).  The Exclusion/Objection Deadline

8    shall be sixty (60) days after the Notice Date, and shall be specifically identified and set forth in

9    the Preliminary Approval Order and the Class Notice.

10         p)      "Fairness Hearing" means the hearing at or after which the Court will make

11   a final decision pursuant to Federal Rule of Civil Procedure 23 as to whether the Settlement is

12   fair, reasonable, and adequate and, therefore, finally approved by the Court.

13         q)      "Fee and Expense Award" means the attorneys' fees and expenses as

14   awarded by the Court to Class Counsel and as further described in Paragraph 38.  Under the terms

15   of Paragraph 38, the Fee and Expense Award is payable fourteen (14) days after the Effective

16   Date.

17         r)      "Final," when referring to a judgment order, means that (i) the judgment is

18   a final, appealable judgment; and (ii) either (a) no appeal has been taken from the judgment as of

19   the date on which all times to appeal therefrom have expired, or (b) an appeal or other review

20   proceeding of the judgment having been commenced, such appeal or other review is finally

21   concluded and no longer is subject to review by any court, whether by appeal, petitions for

22   rehearing or re-argument, petitions for rehearing en banc, petitions for writ of certiorari, or

23   otherwise, and such appeal or other review has been finally resolved in such manner that affirms

24   the judgment order in its entirety.

25         s)      "Judgment" means the judgment to be entered in the Action on final

26   approval of this Settlement, pursuant to Paragraph 27 and elsewhere in this Agreement.

27         t)      "Legally Authorized Representative" means an

28   administrator/administratrix, personal representative, or executor/executrix of a deceased

Settlement Class Member's estate; a guardian, conservator, or next friend of an incapacitated Settlement Class Member; or any other legally appointed Person responsible for handling the business affairs of a Settlement Class Member.

u) "Lyft Line Ride" means a Ride provided by a driver through the Lyft smartphone application's Lyft Line mode.

v) "Named Plaintiffs' General Released Claims" means any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including but not limited to those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and for claims for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs, or disbursements against the Releasees (as defined below), including unknown claims covered by California Civil Code section 1542, as quoted below in Paragraph 67, by the Named Plaintiffs, arising during the period from the beginning of the Named Plaintiffs' first interaction with Lyft to the date on which the Court enters the Order of Final Approval of this Settlement, for any type of relief that can be released as a matter of law, including, without limitation, claims for wages, damages, unpaid costs, penalties (including civil and waiting time penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief with the exception of any claims which cannot be released as a matter of law.  Plaintiffs Zamora and Clark will generally release all known and unknown claims against Lyft, and waive the application of section 1542 of the California Civil Code conditioned upon Court approval of a Service Award for them.  The claims released pursuant to this Paragraph include but are not limited to the Class Members' Released Claims, as well as any other claims under any provision of the Fair Labor Standards Act, the California Labor Code (including sections 132a, 4553 *et seq.*) or any applicable California Industrial Welfare Commission Wage Orders, and claims under state or federal discrimination statutes, including, without limitation, the California Fair Employment and Housing Act, California Government Code section 12940 *et seq.*; the Unruh

Civil Rights Act, California Civil Code section 51 *et seq.*; the California Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Age Discrimination in Employment Act of 1967, as amended; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*; and all of their implementing regulations and interpretive guidelines.

w)     "Net Settlement Fund" means the Settlement Fund less the portion of the PAGA Payment allocated to the California Labor and Workforce Development Agency, the Fee and Expense Award, Service Awards, escrow fees, costs, Taxes, and expenses (including, but not limited to, any costs and expenses paid out of the Notice and Administration Fund, any estimated future costs and expenses approved by the Court) approved by the Court as further provided in this Agreement, and all other funds, payments, and amounts provided for in subparts (a) through (f) of Paragraph 74.

x)     "Non-Released Claims" means all claims pleaded in this action that are not Released Claims.

y)     "Notice and Administration Fund" means the fund consisting of one hundred-ninety thousand dollars ($190,000) advanced by Lyft from the Settlement Amount to the Escrow Account to be used by the Settlement Administrator at the direction of Class Counsel to pay the costs of notifying the Settlement Class Members, soliciting the filing of Claims by Settlement Class Members, assisting Settlement Class Members in making their Claims, and otherwise administering, on behalf of the Settlement Class Members, the Settlement embodied in this Settlement Agreement, as further described in this Agreement.  The monies in the Notice and Administrative Fund are part of the Settlement Amount to be paid by Lyft.  If for any reason the Settlement does not become Final or the Effective Date does not occur, the remaining money deposited into the Notice and Administration Fund shall be returned to Lyft, in accordance with the terms of the Escrow Agreement, and as further provided in Paragraph 63.  The Notice and Administration Fund shall not limit the total amount to be paid to the Settlement Administrator for services reasonably rendered to the Class, although any additional amount to be paid to the

1261713

DocuSign Envelope ID: 642E6047-DB91-48D3-A994-B189BB2A295D

1    Settlement Administrator shall be paid exclusively from the Net Settlement Fund (subject to

2    Court approval).

3           z)    "Notice Date" means the date of the initial electronic distribution of the

4    Notice of Settlement of Class Action to potential Settlement Class Members, as provided in

5    Paragraphs 22 and 55.

6           aa)   "Notice of Settlement of Class Action" means the long-form Court-

7    approved notice, without material variation from Exhibit B.

8           bb)   "Opt-Out List" means the Court-approved list of all Persons who timely

9    and properly requested exclusion from the Settlement Class, as further provided in Section X and

10   Paragraph 27.

11          cc)   "PAGA Payment" means a total payment of one hundred thousand dollars

12   ($100,000) to settle claims under PAGA that arise out of, are based on, or relate to unpaid Prime

13   Time Premiums or the charging of commissions on Prime Time Premiums covering the period

14   between the effective date of the class action settlement agreement release in *Cotter v. Lyft, Inc.*,

15   No. 3:13-cv-04065-VC and April 7, 2017.  From this amount, seventy-five percent (75%),

16   seventy-five thousand dollars ($75,000), will be paid to the California Labor and Workforce

17   Development Agency for civil penalties pursuant to PAGA and twenty five percent (25%), or

18   twenty-five thousand ($25,000), will be distributed to Class Members.

19          dd)   "PAGA Released Claims" means the claims released as part of Named

20   Plaintiffs' representative action seeking penalties pursuant to PAGA in exchange for the PAGA

21   Payment.  The PAGA Released Claims encompass civil penalties under PAGA to the extent they

22   arise out of, are based on, or relate to unpaid Prime Time Premiums, the charging of commissions

23   on Prime Time Premiums, or any other Prime Time Premium-related allegation included in the

24   Action.

25          ee)   "Person" means any individual, corporation, partnership, association,

26   affiliate, joint stock company, estate, trust, unincorporated association, entity, government and

27   any political subdivision thereof, or any other type of business or legal entity.

28

1261713

ff)    "Plan of Allocation" means the plan for allocating the Net Settlement Fund between and among Authorized Claimants as approved by the Court, as further set forth in Paragraphs 40–46.  Settlement Payments pursuant to the Plan of Allocation shall be considered non-wages for which IRS Form 1099 will be issued to Authorized Claimants if required.

gg)    "Preliminary Approval Date" means the date that the Court enters the Preliminary Approval Order and thus: (i) preliminarily approves the Settlement, and the Exhibits thereto, and (ii) enters an order providing for notice to the Settlement Class, an opportunity to opt out of the Settlement Class, an opportunity to submit timely objections to the Settlement, a procedure for submitting claims, and setting a hearing on the fairness of the terms of Settlement, including approval of attorneys' fees and costs.

hh)    "Prime Time Premium" means a surcharge on top of Rides' base fares during periods of high demand.  For purposes of this Agreement, "Prime Time Premium" includes "Prime Time Tips."

ii)    "Prime Time Ride" means a Ride for which (i) the passenger or passengers paid a Prime Time Premium, (ii) Lyft charged a commission on the Prime Time Premium, and (iii) Lyft has not completely refunded that commission to the Driver as of the Effective Date. Notwithstanding the foregoing, "Prime Time Ride" excludes Lyft Line Rides and other Rides for which the Lyft mobile smartphone application did not display a Prime Time Premium "pop-up" of the type alleged in the Action.

jj)    "Released Claims" means (i) Class Members' Released Claims, (ii) Named Plaintiffs' General Released Claims, and (iii) PAGA Released Claims.

kk)    "Released Parties" or "Releasees" means (i) Lyft and its past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by Lyft and (ii) the past, present, and future shareholders, officers, directors, members, agents, employees, independent contractors, consultants, representatives, fiduciaries, insurers, attorneys, legal representatives, predecessors, successors, and assigns of the entities in Part (i) of this Subparagraph.

1        ll)    "Ride" means the pickup and transportation of a passenger or group of

2  passengers traveling together, from origin to destination, by a Driver.  A Ride begins when the

3  Driver uses the Lyft smartphone application to accept a transportation request from a passenger

4  and such acceptance is recorded by Lyft.  A Ride ends when the Driver selects the "drop off" or

5  equivalent option in the Lyft smartphone application (or the application selects such option

6  automatically) and such selection is recorded by Lyft.

7        mm)    "Service Award" means the amount approved by the Court to be paid to

8  each Named Plaintiffs, in addition to their respective payments under the Plan of Allocation, and

9  as further described in Paragraph 37, in recognition of their efforts in coming forward as Named

10  Plaintiffs and as consideration for a full, general, and comprehensive release of the Named

11  Plaintiffs' General Released Claims.  Under the terms of Paragraph 37, Service Awards are

12  payable fourteen (14) days after the Effective Date.  Service Awards shall be considered non-

13  wages for which IRS Form 1099 will be issued to each of the Named Plaintiffs.

14        nn)    "Settlement" means the settlement of the Action between and among the

15  Named Plaintiffs, the Settlement Class Members, and Defendant, as set forth in this Settlement

16  Agreement.

17        oo)    "Settlement Administrator" means Rust Consulting, Inc., the neutral, third-

18  party settlement administrator to be appointed by the Court.

19        pp)    "Settlement Amount" means one million nine hundred-fifty thousand

20  dollars ($1,950,000).

21        qq)    "Settlement Class" means all Drivers who gave at least one Prime Time

22  Ride in California during the Settlement Class Period.  Excluded from the Settlement Class are

23  Class Counsel and their employees and immediate family members and the judicial officers and

24  associated court staff assigned to the Action and their immediate family members.

25        rr)    "Settlement Class Member" means any member of the Settlement Class.

26        ss)    "Settlement Class Period" means the period from August 18, 2014 through

27  April 7, 2017.

28        tt)    "Settlement Fund" means the Settlement Amount.

uu)    "Settlement Payment" means the payment to a Settlement Class Member calculated pursuant to the Plan of Allocation.

vv)    "Summary Notice of Settlement of Class Action" means the form of summary notice, without material variation from Exhibit C.

ww)    "Stipulated Order Dismissing Non-Released Claims Without Prejudice" means the stipulated order dismissing without prejudice the Non-Released Claims, that is entered by the Court concurrently with the District Court Final Approval Order;

## III.    SUBMISSION OF THE SETTLEMENT AGREEMENT TO THE COURT FOR PRELIMINARY AND FINAL APPROVAL

22.    Within 30 days of execution of this Settlement Agreement, the Named Plaintiffs shall submit to the Court a motion for preliminary approval of the Settlement.  The motion for preliminary approval shall include a proposed plan for the sending of the Notice of Settlement of Class Action to Settlement Class Members within forty-five (45) days after the Preliminary Approval Date (the Notice Date), and establishing a period of sixty (60) days from the Notice Date within which any Settlement Class Member may (i) request exclusion from the Settlement Class or (ii) object to any aspect of the proposed Settlement (the "Exclusion/Objection Deadline").  The motion for preliminary approval shall also request that any hearing on final approval of the Settlement and any determination on the request for attorneys' fees, costs, and Service Awards (the "Fairness Hearing") be set for no earlier than twenty-one (21) days after the Exclusion/Objection Deadline; that Class Counsel shall file a petition for awards of attorneys' fees and costs and Service Awards at least twenty-one (21) days before the Exclusion/Objection Deadline; and that any reply briefs on such motions and petitions be filed fourteen (14) days before the Fairness Hearing.  The proposed settlement approval schedule described in this Paragraph is set forth in Exhibit E.

23.    The Parties stipulate to certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3), for settlement purposes only, of the Settlement Class, excluding the Settlement Class's claims under PAGA.  Each Party agrees that this stipulation shall not be used by any Person for any purpose whatsoever in any legal proceeding, including but not limited to

arbitrations, other than a proceeding to enforce the terms of the Agreement, as further set forth in this Agreement.

24.     The Parties and their counsel shall use their best efforts to obtain a District Court Final Approval Order approving the Settlement.

25.     The Parties agree to submit to the Court for its consideration this Settlement Agreement, including all Exhibits: Preliminary Approval Order (Exhibit A); Notice of Settlement of Class Action (Exhibit B), Summary Notice of Settlement of Class Action (Exhibit C), Stipulated Order Dismissing Non-Released Claims Without Prejudice (Exhibit D), and Proposed Settlement Approval Schedule (Exhibit E).

26.     Solely for purposes of implementing this Agreement and effectuating the proposed Settlement, the Parties agree and stipulate that the Court may enter the Preliminary Approval Order, without material variation from Exhibit A, preliminarily approving the Settlement and this Agreement. Among other things, the Preliminary Approval Order shall grant leave to preliminarily certify the Settlement Class for settlement purposes only; approve the Named Plaintiffs as class representatives; appoint Class Counsel to represent the Settlement Class; appoint the Settlement Administrator; approve the Notice of Settlement of Class Action, the Summary Notice of Settlement of Class Action, and the class notice plan embodied in the Settlement Agreement, and find them to be consistent with Federal Rule of Civil Procedure 23 and due process; set out the requirements for objecting to the Settlement, excluding Settlement Class Members from the Settlement Class, all as provided in this Agreement; provide that certification and all actions associated with certification are undertaken on the condition that the certification and other actions shall be automatically vacated if this Agreement is terminated, as provided in this Agreement; and schedule the Fairness Hearing.

27.     At the Fairness Hearing, the Named Plaintiffs shall request entry of a District Court Final Approval Order and a Judgment, to be agreed upon by the Parties, the entry of which is a material condition of this Settlement Agreement, and that, among other things:

a)     finally approves the Settlement as fair, reasonable, and adequate, within the meaning of Federal Rule of Civil Procedure 23 and due process, and directs its consummation pursuant to the terms of the Settlement Agreement;

b)     finds that Class Counsel and the Named Plaintiffs adequately represented the Settlement Class for the purpose of entering into and implementing the Agreement;

c)     re-confirms the appointment of the Settlement Administrator and finds that the Settlement Administrator has fulfilled its duties under the Settlement;

d)     finds that the Class Notice (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, and their right to exclude themselves from or object to the proposed settlement and to appear at the Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of Federal Rule of Civil Procedure 23, due process, and any other applicable rules or law;

e)     finds that the CAFA Notice sent by Lyft complied with 28 U.S.C. § 1715 and all other provisions of the Class Action Fairness Act of 2005;

f)     approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the District Court Final Approval Order and Judgment;

g)     dismisses the Action on the merits and with prejudice, and without fees or costs except as provided in this Agreement;

h)     approves the Stipulated Order Dismissing Non-Released Claims Without Prejudice;

i)     directs that the District Court Final Approval Order and Judgment of dismissal shall be final and entered forthwith;

j)     without affecting the finality of the District Court Final Approval Order and Judgment, reserves jurisdiction over the Named Plaintiffs, the Settlement Class, and Lyft as

1    to all matters concerning the administration, consummation, and enforcement of this Settlement

2    Agreement;

3              k)      adjudges that, as of the Effective Date, the Named Plaintiffs, and all

4    Settlement Class Members who have not been excluded from the Settlement Class as provided in

5    the Opt-Out List approved by the Court, and their heirs, estates, trustees, executors,

6    administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or

7    anyone claiming through them or acting or purporting to act for them or on their behalf,

8    regardless of whether they have received actual notice of the proposed Settlement, have

9    conclusively compromised, settled, discharged, and released Named Plaintiffs' General Released

10    Claims (in the case of the Named Plaintiffs) and Class Members' Released Claims (in the case of

11    the Settlement Class Members) against Lyft and the Released Parties, and are bound by the

12    provisions of this Agreement;

13              l)      declares this Agreement and the District Court Final Order and Judgment

14    to be binding on, and have *res judicata* and preclusive effect in, all pending and future lawsuits or

15    other proceedings: (i) that encompass the Named Plaintiffs' General Released Claims and that are

16    maintained by or on behalf of the Named Plaintiffs and/or their heirs, estates, trustees, executors,

17    administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or

18    anyone claiming through them or acting or purporting to act for them or on their behalf, and

19    (ii) that encompass the Class Members' Released Claims and that are maintained by or on behalf

20    of any Settlement Class Member who has not been excluded from the Settlement Class as

21    provided in the Opt-Out List approved by the Court and/or his or her heirs, estates, trustees,

22    executors, administrators, principals, beneficiaries, representatives, agents, assigns, and

23    successors, and/or anyone claiming through them or acting or purporting to act for them or on

24    their behalf, regardless of whether the Settlement Class Member previously initiated or

25    subsequently initiates individual litigation or other proceedings encompassed by the Class

26    Members' Released Claims, and even if such Settlement Class Member never received actual

27    notice of the Action or this proposed Settlement;

28

m)      determines that the Agreement and the Settlement provided for herein, and any proceedings taken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, a presumption, concession, or an admission by any Party of liability or non-liability or of the certifiability or non-certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made by any Party; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the provisions of this Agreement, as further set forth in this Agreement;

n)      orders that the certification of the Settlement Class and final approval of the proposed Settlement, and all actions associated with them, are undertaken on the condition that they shall be vacated if the Settlement Agreement is terminated or disapproved in whole or in part by the Court, or any appellate court and/or other court of review, or if Lyft invokes the right to withdraw from the Settlement Agreement as provided in Paragraph 83, in which event the Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as evidence for any purpose, including but not limited to an admission by any Party of liability or non-liability or of any misrepresentation or omission in any statement or written document approved or made by any Party, or of the certifiability of a litigation class, as further provided in Paragraphs 85–86;

o)      authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement, including all Exhibits hereto, as (i) shall be consistent in all material respects with the District Court Final Approval Order and (ii) do not limit the rights of Settlement Class Members; and

p)      contains such other and further provisions consistent with the terms of this Settlement Agreement to which the Parties expressly consent in writing.

28.      At the Fairness Hearing and as a part of the final approval of this Settlement, Class Counsel will also request approval of the Plan of Allocation set forth in Section V.  Any modification to the Plan of Allocation by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to terminate the Settlement

1261713

Agreement, or (iii) impose any obligation on the Defendant to increase the consideration paid in connection with the Settlement.

29.     At the Fairness Hearing, Class Counsel may also request entry of an Order approving Class Counsel's application for an award of attorneys' fees and expenses and for Service Awards to the Named Plaintiffs. Any such Fee and Expense Award or Service Award shall be paid exclusively from the Settlement Fund. In no event shall Lyft otherwise be obligated to pay for any attorneys' fees and expenses or Service Awards.

30.     The disposition of Class Counsel's application for a Fee and Expense Award, and for Service Awards, is within the sound discretion of the Court and is not a material term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that such application be granted. Any disapproval or modification of such application by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to terminate the Settlement Agreement, or (iii) impose any obligation on the Defendant to increase the consideration paid in connection with the Settlement.

## IV.    SETTLEMENT CONSIDERATION

31.     The Settlement includes both monetary and non-monetary components, as set forth in detail below.

32.     The total monetary component of the Settlement from Lyft is the Settlement Amount ($1,950,000). This Settlement Amount is an "all in" number that includes, without limitation, all monetary benefits and payments to the Settlement Class, Service Awards, Fee and Expense Award, escrow fees, Taxes and Tax Expenses (as defined below), PAGA Payments, and all other costs and expenses relating to the Settlement (including, but not limited to, administration costs and expenses, notice costs and expenses, and settlement costs and expenses). Under no circumstances shall Lyft be required to pay anything more than the Settlement Amount. In no event shall Lyft be liable for making any payments under this Settlement, or for providing any relief to Settlement Class Members, before the deadlines set forth in this Agreement.

33.     Lyft shall pay this monetary component of the Settlement into the Escrow Account, for the benefit of the Settlement Class, as follows: (i) within twenty-one (21) days of the

Preliminary Approval Date, Lyft shall pay into the Escrow Account one hundred-ninety thousand dollars ($190,000) to be used by the Settlement Administrator at the direction of Class Counsel for reasonable costs in connection with providing notice of the Settlement to Settlement Class Members and for other administrative expenses (the "Notice and Administration Fund"), according to the terms in Section VI; and (ii) within seven (7) days after the Effective Date, Lyft shall pay into the Escrow Account the remaining amount of the Settlement Amount ($1,760,000). After the Effective Date, Lyft shall not have any right to the return or reversion of the Settlement Fund, or any portion thereof, except as provided in Section IX.

34.     The Settlement Fund shall be deposited, at the times specified in Paragraph 33, into an account backed by the full faith and credit of the United States government or an agency thereof, such as an account insured by the Federal Deposit Insurance Corporation ("FDIC") pass-through insurance program.  The Parties and the Escrow Agent agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B–1, and the Escrow Agent, as administrator of the Escrow Account within the meaning of Treasury Regulation § 1.468B–2(k)(3), shall be responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any and all taxes, including any interest or penalties thereon (the "Taxes"), owed with respect to the Escrow Account, to the extent necessary.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including if necessary the "relation-back election" (as defined in Treasury Regulation § 1.468B–1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

35.     All Taxes arising with respect to the income, if any, earned by the Settlement Fund, (including any Taxes that may be imposed upon Lyft with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes), and any expenses and costs

1261713

incurred in connection with the payment of Taxes pursuant to this Paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing, administration, and distribution costs and expenses relating to the filing or the failure to file all necessary or advisable tax returns (the "Tax Expenses")), shall be paid out of the Settlement Fund. Lyft shall not have any liability or responsibility for the Taxes or the Tax Expenses. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the distributions and payments therefrom, including, without limitation, the tax returns described in Treasury Regulation § 1.468B–2(k), and to the extent applicable, Treasury Regulation § 1.468B–2(1). Such tax returns shall be consistent with the terms herein, and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. The Escrow Agent shall also timely pay Taxes and Tax Expenses out of the Settlement Fund to the extent necessary, and is authorized to withdraw from the Escrow Account amounts necessary to pay Taxes and Tax Expenses. The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Settlement Agreement. Neither the Parties nor their counsel shall have any responsibility or liability for the acts or omissions of the Escrow Agent.

36.   The Named Plaintiffs and all Settlement Class Members who receive a payment of any kind from the Settlement Fund (including, in the case of the Named Plaintiffs, Service Awards) expressly acknowledge that such payments shall be considered non-wages for which an IRS Form 1099 will be issued, if required. The Named Plaintiffs and all Settlement Class Members who receive a payment of any kind from the Settlement Fund agree to timely pay in full all of the federal, state, and municipal income taxes owed on such payments.

37.   The terms of this Agreement relating to the Fee and Expense Award and Service Awards were not negotiated by the Parties before full agreement was reached as to all other material terms of the proposed Settlement, including, but not limited to, any terms relating to the relief to the Settlement Class. Lyft agrees not to oppose a request for Service Awards for Plaintiffs Zamora and Clark, as awarded by the Court, up to a maximum of ten thousand

1 ($10,000) each.  The Named Plaintiffs and Class Counsel agree not to seek a Service Award in

2 excess of the above amount.  Any Service Awards, as awarded by the Court, shall be payable

3 from the Settlement Fund contained in the Escrow Account, as ordered, fourteen (14) days after

4 the Effective Date.

5   38. Class Counsel may seek an award of fees and costs from the Court not to exceed

6 one-third of the settlement amount (*i.e.*, six hundred fifty thousand dollars ($650,000)) plus

7 actual, reasonable costs from the Settlement Fund (not including, but in addition to, costs of

8 administration).  Lyft agrees not to oppose a request for attorneys' fees and costs up to six

9 hundred fifty thousand dollars ($650,000) plus actual reasonable costs from the Settlement Fund.

10 Any Fee and Expense Award, as awarded by the Court, shall be payable from the Settlement

11 Fund contained in the Escrow Account, as ordered, fourteen (14) days after the Effective Date.

12   39. The non-monetary component of the Settlement from Lyft is a set of revisions to

13 the Lyft smartphone application.  Lyft has modified the Lyft smartphone application to eliminate

14 the Prime Time "pop-up" language indicating to riders that Prime Time Premiums went "to your

15 driver" or were added to the total price "for the driver."  If this Settlement is finally approved,

16 Lyft agrees it will not use "to your driver," "for the driver," or comparable language when

17 describing Prime Time Premiums to Lyft users through the Lyft smartphone application.

18 **V. PLAN OF ALLOCATION AND DISBURSEMENT OF SETTLEMENT
19   PAYMENTS**

20   40. To receive a payment from the Settlement, a Settlement Class Member or his

21 Legally Authorized Representative must timely submit a Claim Form that satisfies the

22 requirements of Paragraph 41, must not have submitted a request for exclusion, and must be

23 eligible for a payment under the Plan of Allocation in Paragraphs 43–44.  Each Settlement Class

24 Member who satisfies these criteria is an Authorized Claimant.

25   41. A Claim Form is timely if mailed to the Settlement Administrator at the address in

26 the Notice of Settlement of Class Action and postmarked by the Bar Date, or if it is submitted

27 online by the Bar Date.  The Claim Form must be signed (electronically, if submitted online)

28 under penalty of perjury.  Prior to the Bar Date, the Settlement Administrator shall make

1261713

reasonable efforts to alert Settlement Class Members who have submitted defective Claim Forms of the deficiency in their Claim Forms so the Settlement Class Members can timely submit corrected Claim Forms.

42. Settlement Payments shall be calculated using a points system, in accordance with the following Plan of Allocation.

43. Each Authorized Claimant shall be awarded:

a) Six hundred (600) points for each dollar of unrefunded commissions on Prime Time Rides the Authorized Claimant gave from the beginning of the Settlement Class Period through March 16, 2015;

b) Two hundred (200) points for each dollar of unrefunded commissions on Prime Time Rides the Authorized Claimant gave from March 17, 2015 through October 30, 2016; and

c) One hundred (100) points for each dollar of unrefunded commissions on Prime Time Rides the Authorized Claimant gave from October 31, 2016 through the end of the Settlement Class Period.

44. For each Authorized Claimant who gave 400 to 999 Rides during the Settlement Class Period, the points calculated according to Paragraph 43 above shall be doubled (*i.e.*, multiplied by 2). For each Authorized Claimant who gave 1,000 or more Rides during the Settlement Class Period, the points calculated according to Paragraph 43 above shall be tripled (*i.e.*, multiplied by 3).

45. The Settlement Administrator shall calculate the number of points to which each Authorized Claimant is entitled. The determination of each Authorized Claimant's number of Prime Time Rides shall be based on the relevant records that Lyft is able to identify following a good-faith inquiry, and Lyft shall make a diligent effort to supply the records to the Settlement Administrator in a standard electronic format, such as a Comma Separated Value file.

46. Following the award of points to all Authorized Claimants, each Authorized Claimant's points shall be divided by the sum of the points awarded to the Authorized Claimants

1261713

DocuSign Envelope ID: 64EE8D4F-DB34-48D8-A945-5EB99B2A2B00

as a whole, and the resulting fraction shall be multiplied by the Net Settlement Fund. The product of this calculation is the Settlement Payment that each Authorized Claimant shall receive.

47.    The Settlement Administrator shall use reasonable efforts to disburse Settlement Payments to all Authorized Claimants within ninety (90) days after the Effective Date, but in no event before twenty-one (21) days after the Effective Date. Such disbursements shall be made by direct payment by check via first-class mail. For those Settlement Payments for which the check is returned as undeliverable, the Settlement Administrator shall make a diligent effort to obtain updated mailing addresses and attempt a second disbursement if the Settlement Payment is likely to be greater than fifteen dollars ($15).

48.    The Settlement Administrator shall send with each Settlement Payment disbursement information containing an explanation of how the Authorized Claimant's Settlement Payment was calculated and how the Authorized Claimant may challenge that calculation (as set forth in Paragraph 49.) At the same time, the Settlement Administrator shall send a letter, via electronic mail if possible and via first-class mail if necessary, to each claimant who is not an Authorized Claimant explaining that the claimant is not entitled to a payment under this Settlement and that the claimant may challenge that determination (as set forth in Paragraph 49).

49.    If an Authorized Claimant or Settlement Class Member disagrees with the calculation of his or her Settlement Payment, the records used for such calculation (that is, his or her number of Rides and Prime Time Rides), or the determination that he or she is not an Authorized Claimant, he or she may challenge the calculation, records, or determination. The Authorized Claimant or Settlement Class Member must send the challenge, along with any supporting documentation, to the Settlement Administrator such that it is postmarked no later than sixty (60) days from the date of the initial disbursement of Settlement Payments. The Settlement Administrator shall resolve the challenge based on input from Class Counsel and Lyft, who shall cooperate in good faith to assist the Settlement Administrator. Class Counsel and Lyft acknowledge in this regard that, as provided for by Paragraph 121, they remain subject to the jurisdiction of the United States District Court for the Northern District of California for all

1261713

purposes related to this Settlement Agreement.  In the event that the Settlement Administrator resolves the challenge in favor of the Authorized Claimant or Settlement Class Member, the Settlement Administrator shall provide the Authorized Claimant or Settlement Class Member with a disbursement from the Dispute Resolution Fund.

50.     The Parties recognize that the Settlement Payments to be paid to Authorized Claimants reflect settlement of a dispute over the Released Claims.  The Parties agree that the Settlement Payments are not, and are not intended to be made as a payment with respect to, a penalty or a punishment of the type or kind contemplated by Internal Revenue Service Code Section 162(f), except that the PAGA Payment is a civil penalty.  With the exception of the PAGA Payment, no governmental entity is directly or indirectly a recipient of any portion of the payments made pursuant to this Settlement, and no governmental entity has any interest or involvement of any type or kind in the litigation hereby settled.  The payments made herein are not made or received with the intention of avoiding or reducing any liability to a governmental entity of any type or kind.

51.     As provided in Paragraph 36, Authorized Claimants shall be solely responsible for the timely payment in full of all federal, state, and municipal income taxes owed on Settlement Payments, and, if necessary, the prompt completion and submission to the IRS of Form 4669. Neither Party has made any representation to the other Party as to the taxability or tax implications of any Settlement Payments or other payments pursuant to this Agreement.

## VI.     NOTICE AND ADMINISTRATION FUND AND ISSUANCE OF CLASS NOTICE

52.     The Notice and Administration Fund shall be used by the Settlement Administrator to pay the costs of identifying and notifying Settlement Class Members, and, as allowed by the Court, soliciting the filing of Claims, facilitating the claims process, and otherwise administering the Settlement on behalf of the Settlement Class Members.  Any notice and administration costs, as well as all applicable Taxes and escrow fees, shall be paid out of the Notice and Administration Fund and, if the Notice and Administration Fund is exhausted, out of the Settlement Fund.  Notice and administration costs shall include, among other things, identifying the last-known electronic and/or postal mailing addresses for Settlement Class Members, mailing,

1   printing (if necessary), and publishing notice, as directed by the Court, and the cost of processing

2   Claims and distributing the Net Settlement Fund to Settlement Class Members.

3       53.     Lyft will provide the Settlement Administrator the names and last-known

4   electronic and postal mail addresses of potential Settlement Class Members that it is able to

5   identify following a good-faith inquiry.

6       54.     To the extent that sending the Notice of Settlement of Class Action via postal

7   mail is necessary under the terms of Paragraph 56, before any mailing, the Settlement

8   Administrator shall make a good-faith attempt to obtain the most-current names and postal mail

9   addresses for all potential Settlement Class Members to receive such postal mail, including cross-

10  checking the names and/or postal mail addresses it received from Lyft, as well as any other

11  sources, with appropriate databases (*e.g.*, the National Change of Address Database) and

12  performing further reasonable searches (*e.g.*, through Lexis/Nexis) for more-current names and/or

13  postal mail addresses for potential Settlement Class Members.  All potential Settlement Class

14  Members' names and postal mail addresses obtained through these sources shall be protected as

15  confidential and not used for purposes other than the notice and administration of this Settlement.

16      55.     The Settlement Administrator shall send a copy of the Notice of Settlement of

17  Class Action by electronic mail to each potential Settlement Class Member, as well as to Class

18  Counsel and to counsel for Lyft.

19      56.     If any Notice of Settlement of Class Action sent via electronic mail to any

20  potential Settlement Class Member in accordance with Paragraph 55 is undeliverable, the

21  Settlement Administrator will promptly log each such Notice of Settlement of Class Action and

22  provide copies of the log to Class Counsel and counsel for Lyft on a weekly basis.  Upon logging,

23  the Settlement Administrator shall send the Notice of Settlement of Class Action to the potential

24  Settlement Class Member's postal mailing address on file via first-class mail.  If any Notice of

25  Settlement of Class Action sent to any potential Settlement Class Member via first-class mail is

26  returned to the Settlement Administrator as undeliverable, the Settlement Administrator will

27  promptly log each such Notice of Settlement of Class Action and provide copies of the log to

28  Class Counsel and counsel for Lyft on a weekly basis.  If the postal mailing is returned with a

1261713

forwarding address, the Settlement Administrator shall forward the postal mailing to that address. For any remaining returned postal mailings, the Settlement Administrator shall make a good-faith search of an appropriate database, and postal mailings shall be forwarded to any new postal mail address obtained through such a search. In the event that any Notice of Settlement of Class Action is returned as undeliverable a second time, no further postal mailing shall be required.

57.     The Parties agree that the procedures set forth in this Section constitute reasonable and the best practicable notice under the circumstances and an appropriate and sufficient effort to locate current addresses for Settlement Class Members such that no additional efforts to do so shall be required.

58.     The Settlement Administrator will provide Class Notice by, at a minimum, (i) electronic mail notice without material variation from the form attached as Exhibit B; (ii) if necessary in accordance with Paragraph 56, first-class mail (where available) notice without material variation from the form attached as Exhibit B; and (iii) a content-neutral settlement website managed by the Settlement Administrator, and approved by counsel for the Parties, which will contain further information about the Settlement and Claims process, including relevant pleadings. The Class Notice shall comply with Federal Rule of Civil Procedure 23 and due process.

59.     The Class Notice shall inform potential Settlement Class Members that Settlement Payments will be made to Authorized Claimants by check sent via first-class mail. The Settlement Administrator shall provide an opportunity for potential Settlement Class Members to submit an updated email address and/or postal mailing addresses.

60.     Thirty (30) days before the Bar Date or at such other time or times as the Settlement Administrator deems appropriate, the Settlement Administrator shall distribute by electronic mail a neutral notice reminding Settlement Class Members who have not submitted a Claim Form of the need to do so in order to receive a Settlement Payment.

61.     The Parties and Settlement Administrator will notify each other of the receipt of any request for exclusion or objection to this Settlement within one (1) business day of receipt.

1261713

62.     As of the Effective Date, any balance, including interest if any, remaining in the Notice and Administration Fund, less expenses incurred or expected but not yet paid, shall be deposited into the Settlement Fund.

63.     If the Settlement is not approved, is overturned, or is modified on appeal or as a result of further proceedings on remand of any appeal with respect to the Settlement, or if the Effective Date otherwise does not occur, the balance of the Notice and Administration Fund which has not been expended pursuant to this Agreement, and the balance of the Settlement Fund, including all earned or accrued interest, shall be returned to Lyft within five (5) days, or as soon as practicable, as set forth in this Agreement and in accordance with the Escrow Agreement.

64.     If any individual whose name does not appear on the list of potential Settlement Class Members that Lyft provides the Settlement Administrator pursuant to Paragraph 53 (and who has not previously opted out of the Settlement Class), believes that he or she is a Settlement Class Member, he or she shall have the opportunity to dispute his or her exclusion from the Settlement Class.  If an individual believes he or she is a Settlement Class Member, he or she must notify the Settlement Administrator within a reasonable amount of time after the first mailing of the Notice of Settlement of Class Action.  The Parties will meet and confer regarding any such individuals in an attempt to reach an agreement as to whether any such individual should be regarded as a Settlement Class Member.  If the Parties so agree, the Settlement Administrator will mail a Notice of Settlement of Class Action and Claim Form to the individual, and treat the individual as a Settlement Class Member for all other purposes.  Such an individual will have all of the same rights as any other Settlement Class Member under this Agreement.  In the event that the initial disbursement of Settlement Payments has begun (in accordance with this Settlement Agreement) at the time that the Parties agree that such individual should be regarded as a Settlement Class Member and that such individual submits a valid Claim Form, the Settlement Payment to such individual shall be disbursed from the Dispute Resolution Fund.

1261713

## VII.    RELEASES

65.    The Released Claims against each and all of the Released Parties shall be released and dismissed with prejudice and on the merits (without an award of costs to any party other than as provided in this Agreement) upon entry of District Court Final Approval Order and Judgment.

66.    As of the Effective Date, the Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, individually and on behalf of their heirs, estates, trustees, executors, administrators, representatives, agents, successors, and assigns, and anyone claiming through them or acting or purporting to act on their behalf, agree to forever release, discharge, hold harmless, and covenant not to sue each and all of the Released Parties from each and all of the Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs) and the Class Members' Released Claims (in the case of the Settlement Class Members), and by operation of the Judgment shall have fully and finally released, relinquished, and discharged all such claims against each and all of the Released Parties; and they further agree that they shall not now or hereafter initiate, maintain, or assert any Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs) and any Class Members' Released Claims (in the case of the Settlement Class Members) against the Released Parties in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicating body.  Without in any way limiting the scope of the release described in Paragraphs 21(f) and 21(v) or in the remainder of this Section, this release covers, without limitation, any and all claims for attorneys' fees, costs, or disbursements incurred by Class Counsel or any other counsel representing the Named Plaintiffs or Settlement Class Members, or by the Named Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Agreement.

67.    The Named Plaintiffs and the Settlement Class Members expressly acknowledge that they are familiar with principles of law such as Section 1542 of the California Civil Code, which provides:

1261713

DocuSign Envelope ID: 648EA6A7-DB94-18D6-A944-B1B89B62A2D8D

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

68.     With respect to the Class Members' Released Claims, as described in Paragraph 21(f), each Settlement Class Member shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein.  In connection with the release, the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein.  Nevertheless, the Settlement Class Members acknowledge that a portion of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Settlement Class Members in agreeing to this release fully, finally, and forever to settle and release all matters and all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action), constituting Class Members' Released Claims.

69.     With respect to the Named Plaintiffs' General Released Claims, as described in Paragraph 21(v), each Named Plaintiff shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein.  In connection with the release, the Named Plaintiffs acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein.  Nevertheless, the Named Plaintiffs acknowledge that a portion

1261713

of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Named Plaintiffs in agreeing to this release fully, finally, and forever to settle and release all matters and all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action), constituting Named Plaintiffs' General Released Claims.

70.    Each Named Plaintiff further acknowledges, agrees, and understands that: (i) he or she has read and understands the terms of this Agreement; (ii) he or she has been advised in writing to consult with an attorney before executing this Agreement; (iii) he or she has obtained and considered such legal counsel as he deems necessary; (iv) he or she has been given twenty-one (21) days to consider whether or not to enter into this Agreement (although he or she may elect not to use the full 21 day period at his option).

71.    Each Named Plaintiff further acknowledges, agrees, and understands that he or she is expressly, knowingly, and voluntarily waiving and relinquishing, to the fullest extent permitted by law, all rights or claims arising under the Age Discrimination in Employment Act of 1967. Each Named Plaintiff may revoke his or her acceptance of the Service Award in consideration for the Named Plaintiffs' General Released Claims within seven (7) days after the date he or she signs it. Any revocation must be in writing and received by counsel for Defendant.

72.    Subject to Court approval, the Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, shall be bound by this Settlement Agreement, and all of their Released Claims shall be dismissed with prejudice and released, even if they never received actual notice of the Action or this Settlement.

## VIII.    ADMINISTRATION OF THE SETTLEMENT FUND

73.    The Settlement Administrator or its authorized agents in consultation with the Parties and subject to the supervision, direction, and approval of the Court, shall administer and identify Claims submitted by Settlement Class Members, and shall calculate the allocation of and oversee the distribution of the Settlement Fund to Settlement Class Members.

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
Case No. 3:16-cv-02558-VC

1261713

74.     The Notice and Administration Fund and the Settlement Fund shall be applied as follows:

      a)     to pay all costs and expenses incurred in connection with providing Class Notice to Settlement Class Members and, as allowed by the Court, locating Settlement Class Members' last-known postal mail addresses, soliciting Claims, assisting with the filing of Claims, processing Claim Forms and any objections, challenges, and requests for exclusion, administering and distributing the Settlement Fund to the Settlement Class, and escrow fees and costs, in accordance with the terms provided for the Notice and Administration Fund in Section VI;

      b)     subject to the approval and further order(s) of the Court, and according to the terms provided in Paragraph 37, to pay to Plaintiffs Zamora and Clark Service Awards based on contributions and time expended assisting in the litigation, up to a maximum of ten thousand ($10,000) each;

      c)     subject to the approval and further order(s) of the Court, and according to the terms of Paragraph 38, to pay the Fee and Expense Award as ordered by the Court;

      d)     to pay Taxes and Tax Expenses owed by the Settlement Fund, according to the terms in Paragraphs 34–35;

      e)     to pay any costs and expenses incurred in connection with the services provided by the Escrow Agent;

      f)     to fund the Dispute Resolution Fund;

      g)     after the Effective Date and subject to the approval and further order(s) of the Court, to distribute the balance of the Net Settlement Fund for the benefit of the Settlement Class pursuant to the Plan of Allocation, or as otherwise ordered by the Court, provided that no funds from the Net Settlement Fund shall be disbursed until after the Effective Date; and

      h)     if necessary, to make further distributions according to the terms of Paragraph 75.

75.     One hundred eighty (180) days after the distribution of the balance of the Net Settlement Fund for the benefit of the Settlement Class, should any amount remain in the Net Settlement Fund or the Notice and Administration Fund, but not the Dispute Resolution Fund, the

Settlement Administrator shall disburse from such amounts Settlement Payments to those Authorized Claimants who did not receive a full Settlement Payment due to the exhaustion of the Dispute Resolution Fund.  If any funds are not successfully disbursed through this further distribution (for example, if checks are not cashed or returned as undeliverable), the Settlement Administrator shall direct such unclaimed funds to Legal Aid at Work, which the parties agree has a direct and substantial nexus to the interests of the Settlement Class, and thus provides for a "next best distribution" to the Settlement Class.

76.     Settlement Class Members who are not on the Opt-Out List approved by the Court shall be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Judgment with respect to all Class Members' Released Claims, regardless of whether they seek or obtain any distribution from the Settlement Fund.

77.     Lyft shall bear no responsibility for the costs, fees, or expenses related to the administration and distribution of the Settlement Fund.  Neither Lyft nor its counsel shall have any responsibility for, interest in, or liability whatsoever with respect to any solicitation, receipt, or processing of Claims, the Settlement Fund, any Plan of Allocation, the calculations or disbursement of Settlement Payments, the payment or withholding of Taxes, the distribution of the Net Settlement Fund, or any losses incurred in connection with any such matters.

78.     The Settlement Administrator shall be responsible for issuing copies of IRS Form 1099 for the Named Plaintiffs and for all Settlement Class Members who receive a payment of any kind from the Settlement Fund (including, in the case of the Named Plaintiffs, Service Awards) and for whom such form is required.

79.     Neither Lyft nor Plaintiffs nor their counsel shall have any liability concerning the appointment of the Settlement Administrator and any actions taken by it.

80.     Payment from the Settlement Fund and Net Settlement Fund made pursuant to and in the manner set forth herein shall be deemed conclusive of compliance with this Settlement Agreement as to all Settlement Class Members.

81.     No Settlement Class Member shall have any claim against the Named Plaintiffs, Class Counsel, or the Settlement Administrator based on distributions made substantially in

DocuSign Envelope ID: 642E6042-DB94-48D3-A925-B3896B2A29BB

accordance with this Settlement Agreement and/or orders of the Court.  No Settlement Class Member shall have any claim against Lyft or its counsel relating to distributions made under this Settlement.

## IX.   EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION OF SETTLEMENT AGREEMENT

82.     If the Court does not approve the Settlement as set forth in this Settlement Agreement, or does not enter the District Court Final Approval Order and Judgment that will be agreed upon by the Parties, or if the Court enters the Judgment and appellate review is sought, and on such review, the entry of Judgment is vacated, modified in any way, or reversed, or if the District Court Final Approval Order does not otherwise become Final, then this Settlement Agreement shall be cancelled and terminated, unless all Parties, in their sole discretion within thirty (30) days from the date of such ruling, provide written notice to all other Parties hereto of their intent to proceed with the Settlement under the terms of the Judgment as it may be modified by the Court or any appellate court.

83.     Lyft shall have the sole and absolute discretion to withdraw from the Settlement Agreement if more than 0.5% of the Settlement Class opts out of this Settlement Agreement. Lyft shall have the sole and absolute discretion to determine the percentage of the Settlement Class that has opted out by measuring either (i) the number of Settlement Class Members who have opted out as a percentage of the total number of Settlement Class Members or (ii) the total sum of money Settlement Class Members who opted out would have received under this Settlement Agreement as a percentage of the Settlement Amount.  If Lyft chooses, pursuant to its sole and absolute discretion, to exercise this right, it must do so within ten (10) days of receipt of the Settlement Administrator's opt-out list as provided in Paragraph 95, by providing written notice to Class Counsel.

84.     In the event that (i) the Settlement is not approved, is overturned, or is materially modified by the Court or on appeal, (ii) the Judgment does not become Final, or (iii) this Settlement Agreement is terminated, cancelled, or fails to become effective for any reason, then within five (5) business days after written notice is sent by Class Counsel or counsel for

1261713

Defendant to all Parties hereto, the Notice and Administration Fund, less any funds paid or expenses incurred but not yet paid, the Settlement Fund, and any other cash deposited by Lyft into the Escrow Account pursuant to this Agreement shall be refunded to Lyft, including interest earned or accrued.

85.　　In the event that: (i) the Settlement is not approved, is overturned, or is materially modified by the Court or on appeal, (ii) the Judgment does not become Final, or (iii) this Settlement Agreement is terminated, cancelled, or fails to become effective for any reason, then: (a) the Settlement shall be without force and effect upon the rights of the Parties hereto, and none of its terms shall be effective or enforceable, with the exception of this Paragraph, which shall remain effective and enforceable; (b) the Parties shall be deemed to have reverted *nunc pro tunc* to their respective status as of January 29, 2018, including with respect to any Court-imposed deadlines; (c) Lyft shall be refunded the amounts paid pursuant to this Agreement but not yet spent or disbursed; (d) all Orders entered in connection with the Settlement, including the certification of the Settlement Class and the approval for filing of the Amended Complaint for Settlement, shall be vacated without prejudice to any Party's position on the issue of class certification, the issue of amending the complaint, or any other issue, in this Action or any other action, and the Parties shall be restored to their litigation positions existing on the date of execution of this Agreement; and (e) the Parties shall proceed in all respects as if the Settlement Agreement and related documentation and orders had not been executed, and without prejudice in any way from the negotiation or fact of the Settlement or the terms of the Settlement Agreement. The Settlement Agreement, the Settlement, all documents, orders, and other evidence relating to the Settlement, the fact of their existence, any of their terms, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement, the Settlement, their existence, or their terms, any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement shall not be offered, received, or construed as evidence of a presumption, concession, or an admission of liability, of the certifiability of a litigation class, or of any misrepresentation or omission in any statement or

1261713

1  written document approved or made, or otherwise used by any Person for any purpose

2  whatsoever, in any trial of this Action or any other action or proceedings.

3      86.    Lyft does not agree or consent to certification of the Settlement Class for any

4  purpose other than to effectuate the Settlement of the Action.  If this Settlement Agreement is

5  terminated pursuant to its terms, or the Effective Date for any reason does not occur, all Orders

6  certifying the Settlement Class for purposes of effecting this Settlement Agreement, and all

7  preliminary and/or final findings regarding the Settlement Class certification order, shall be

8  automatically vacated upon notice to the Court, the Action shall proceed as though the Settlement

9  Class had never been certified pursuant to this Settlement Agreement and such findings had never

10  been made, and the Action shall revert *nunc pro tunc* to the procedural status quo as of the date

11  and time immediately before the execution of the Settlement Agreement, in accordance with this

12  Settlement Agreement.

## X.    PROCEDURES FOR REQUESTS FOR EXCLUSION

14      87.    Settlement Class Members (with the exception of the Named Plaintiffs) may opt

15  out of the Settlement.  Those who wish to exclude themselves (or "opt out") from the Settlement

16  Class must submit timely, written requests for exclusion.  To be effective, such a request must

17  include the Settlement Class Member's name, address, and telephone number; a clear and

18  unequivocal statement that the Settlement Class Member wishes to be excluded from the

19  Settlement Class and that the Settlement Class Member understands that he or she is still bound

20  by the release of the PAGA Released Claims upon Final Approval of the Settlement and Final

21  Judgment; and the signature of the Settlement Class Member or the Legally Authorized

22  Representative of the Settlement Class Member.  The request must be mailed to the Settlement

23  Administrator at the address provided in the Notice of Settlement of Class Action and must be

24  postmarked no later than the Exclusion/Objection Deadline.  The date of the postmark shall be the

25  exclusive means used to determine whether a request for exclusion has been timely submitted.

26  Requests for exclusion must be exercised individually by the Settlement Class Member, not as or

27  on behalf of a group, class, or subclass, except that such individual requests for exclusion may be

28  submitted by shared counsel on behalf of multiple Settlement Class Members.

1261713

88.     The Settlement Administrator shall promptly log each request for exclusion that it receives and provide copies of the log and all such requests for exclusion to Class Counsel and counsel for Lyft at least weekly.

89.     The Settlement Administrator shall prepare a list of all Persons who timely and properly requested exclusion from the Settlement Class and shall, before the Fairness Hearing, submit an affidavit to the Court attesting to the accuracy of the list.

90.     All Settlement Class Members who are not included in the Opt-Out List approved by the Court shall be bound by this Agreement, and all their Released Claims shall be dismissed with prejudice and released as provided for herein, even if they never received actual notice of the Action or this proposed Settlement.

91.     The Settlement Administrator, in its sole discretion, shall determine whether a request for exclusion was timely submitted.  The Settlement Administrator's decision shall be final, binding, and non-appealable.

92.     The Named Plaintiffs agree not to request exclusion from the Settlement Class.

93.     Settlement Class Members may object to or opt out of the Settlement, but may not do both.  Any Settlement Class Member who submits a timely request for exclusion may not file an objection to the Settlement, submit a Claim, or receive a Settlement Payment, and shall be deemed to have waived any rights or benefits under the Settlement Agreement.

94.     Notwithstanding the submission of a timely request for exclusion, Class Members will still be bound by the settlement and release of the PAGA Released Claims under the Final Judgment pursuant to *Arias v. Superior Court*, 46 Cal. 4th 969 (2009).  Requests for exclusion do not apply to the PAGA Released Claims.

95.     No later than ten (10) business days after the Exclusion/Objection Deadline, the Settlement Administrator shall provide to Class Counsel and counsel for Lyft a complete opt-out list together with copies of the opt-out requests.  Notwithstanding any other provision of this Settlement Agreement, Lyft may rescind and revoke the entire Settlement Agreement as set forth in Paragraph 83.

1261713

## XI.     PROCEDURES FOR OBJECTIONS

96.     Any Settlement Class Member that wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement must provide to the Settlement Administrator (who shall forward it to Class Counsel and Counsel for Lyft), and file with the Court, a timely statement of the objection, as set forth below.

97.     To be timely, the objection must be postmarked and mailed to the Settlement Administrator, and filed with the Court, no later than the Exclusion/Objection Deadline.  The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether an objection has been timely submitted.

98.     The objection must contain at least the following: (i) the objector's full name, address, telephone, and signature; (ii) a clear reference to the Action; (iii) a statement of the specific legal and factual basis for each objection argument; and (iv) a statement whether the objecting person or entity intends to appear at the Fairness Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, bar number, address, and telephone number.  All objections shall be signed by the objecting Settlement Class Member (or his Legally Authorized Representative), even if the Settlement Class Member is represented by counsel.

99.     The right to object to the proposed settlement must be exercised individually by a Settlement Class Member or his attorney, and not as a member of a group, class, or subclass, except that such individual objections may be submitted by a shared counsel on behalf of multiple individual Settlement Class Members.

100.     The right to object to the proposed settlement must be exercised individually by a Settlement Class Member or his attorney, and not as a member of a group, class, or subclass, except that such individual objections may be submitted by a Settlement Class Member's Legally Authorized Representative.

101.     Any Settlement Class Member who does not file a timely notice of intent to object in accordance with this Section shall waive the right to object or to be heard at the Fairness Hearing and shall be forever barred from making any objection to the proposed Settlement, the

1261713

1  Plan of Allocation, the Fee and Expense Award, and the Service Awards.  Settlement Class

2  Members who object to the proposed Settlement shall remain Settlement Class Members, and

3  shall be deemed to have voluntarily waived their right to pursue an independent remedy against

4  Lyft and the Released Parties.  To the extent any Settlement Class Member objects to the

5  proposed Settlement, and such objection is overruled in whole or in part, such Settlement Class

6  Member will be forever bound by the District Court Final Approval Order and Judgment.

7       102.    In the event that any Person objects to or opposes this proposed Settlement, or

8  attempts to intervene in or otherwise enter the Action, the Parties agree to use their best efforts to

9  cooperate in the defense of the Settlement.  Notwithstanding the foregoing, it shall be Class

10  Counsel's sole responsibility to respond to any objections made with respect to any application

11  for the Fee and Expense and Service Awards.

12  **XII.    ADDITIONAL PROVISIONS**

13       103.    All of the Exhibits to this Agreement are an integral part of the Settlement and are

14  incorporated by reference as though fully set forth herein.

15       104.    The Named Plaintiffs and Class Counsel acknowledge that an adequate factual

16  record has been established that supports the Settlement and, apart from the limited discovery

17  described in the next sentence, hereby waive any right to conduct further discovery to assess or

18  confirm the Settlement.  Notwithstanding the prior sentence, the Parties agree to reasonably

19  cooperate with respect to limited confirmatory discovery to be agreed upon related to the last-

20  known addresses of Settlement Class Members and with regard to the challenges described in

21  Paragraph 49.

22       105.    Unless otherwise noted, all references to "days" in this Agreement shall be to

23  calendar days.  In the event any date or deadline set forth in this Agreement falls on a weekend or

24  federal legal holiday, such date or deadline shall be on the first business day thereafter.

25       106.    This Agreement supersedes all prior negotiations and agreements and may be

26  amended or modified only by a written instrument signed by counsel for all Parties or the Parties'

27  successors-in-interest.

28

1261713

107.   The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement. Such extensions must be in writing to be enforceable.

108.   The Settlement Agreement, the Settlement, the fact of the Settlement's existence, any of terms of the Settlement Agreement, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement or the Settlement, and/or any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement: (i) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of the validity of any Released Claims or of any wrongdoing or liability of Lyft; and (ii) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of any fault, wrongdoing, or omission by Lyft in any trial, civil, criminal, or administrative proceeding of the Action or any other action or proceedings in any court, administrative agency, or other tribunal.

109.   The Released Parties shall have the right to file the Settlement Agreement, the District Court Final Approval Order and Judgment, and any other documents or evidence relating to the Settlement in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

110.   The Parties to the Settlement Agreement agree that the Settlement Amount and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, resulted from a mediation facilitated by Mark Rudy and lengthy arm's-length negotiations, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

111.   The Named Plaintiffs and Class Counsel have concluded that the Settlement set forth herein constitutes a fair, reasonable, and adequate resolution of all Released Claims, and that it promotes the best interests of the Settlement Class.

1261713

112.    To the extent permitted by law, all agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Settlement Agreement.

113.    The Parties agree that the Plaintiffs and Class Counsel are not required to return any documents produced by Lyft until the final resolution of the Action.  Within sixty (60) days following the Effective Date, Class Counsel shall return to Lyft all documents produced in the Action, or confirm in writing that all such documents have been destroyed, in a manner consistent with the terms of any applicable Protective Order in the Action, and to the extent practicable. Notwithstanding the above, Class Counsel may retain their work product referencing Lyft's documents subject to the terms of any applicable Protective Order in the Action.

114.    The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

115.    This Settlement Agreement, including its Exhibits, constitutes the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits, other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement and its Exhibits.

116.    This Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

117.    The Parties hereto and their respective counsel agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Settlement Agreement.

118.    This Settlement Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

119.     This Settlement Agreement shall not be construed more strictly against one Party than another merely because of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in the Settlement Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Settlement Agreement.

120.     Except where this Settlement Agreement itself provides otherwise, all terms, conditions, and Exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

121.     This Settlement Agreement shall be governed by federal law.  To the extent that federal law does not apply, this Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to choice of law principles. Any action based on this Settlement Agreement, or to enforce any of its terms, shall be venued in the United States District Court for the Northern District of California, which shall retain jurisdiction over all such disputes.  All Parties to this Settlement Agreement shall be subject to the jurisdiction of the United States District Court for the Northern District of California for all purposes related to this Settlement Agreement.  This Paragraph relates solely to the law governing this Settlement Agreement and any action based thereon, and nothing in this Paragraph shall be construed as an admission or finding that California law applies to the Released Claims of any Named Plaintiffs or Settlement Class Members who reside outside of the state.

122.     The Court shall retain continuing and exclusive jurisdiction over the Parties to this Settlement Agreement for the purpose of the administration and enforcement of this Settlement Agreement.

123.     The headings used in this Settlement Agreement are for the convenience of the reader only, and shall not affect the meaning or interpretation of this Settlement Agreement.

124.     In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

125.     Each Party to this Settlement Agreement warrants that he, she, or it is acting upon his or its independent judgment and upon the advice of his or its counsel, and not in reliance upon

1261713

1  any warranty or representation, express or implied, of any nature of any kind by any other Party,

2  other than the warranties and representations expressly made in this Settlement Agreement.

3      126.    Signatory counsel warrant that they are fully authorized to execute this Agreement

4  on behalf of their respective co-counsel listed below.  Each counsel signing this Settlement

5  Agreement on behalf of his/her clients who are unable to sign the Agreement on the date that it is

6  executed by other Parties represents that such counsel is fully authorized to sign this Settlement

7  Agreement on behalf of his/her clients; provided, however, that all Parties who have not executed

8  this Agreement on the date that it is executed by the other Parties shall promptly thereafter

9  execute this Agreement, and in any event no later than one (1) week after the Agreement has been

10  executed by counsel.

11                                SIGNED AND AGREED,

12  Dated:  March 2, 2018                KEKER, VAN NEST & PETERS LLP

14                          By:  _Rachael E. Meny_____

15                               RACHAEL E. MENY
                                 SIMONA A. AGNOLUCCI
                                 JAY RAPAPORT

16                               Attorneys for Defendant LYFT, INC.

18  Dated:  March 2, 2018                OUTTEN & GOLDEN LLP

20                          By:  _____

21                               JAHAN C. SAGAFI
                                 RACHEL BIEN
                                 MICHAEL J. SCIMONE
                                 RELIC SUN

23                               Attorneys for Plaintiffs, Aggrieved
                                 Employees, and Proposed Class Members

1   Dated:  March 7 __, 2018

2

3   By: _____
    Kristin Sverchek (Mar 7, 2018)
    KRISTIN SVERCHEK
4   General Counsel

5   Defendant LYFT, INC.

6   Dated:  March 2 __, 2018

7   By: _____

8   ALEX ZAMORA

9   Plaintiff

10  Dated:  March 2nd __, 2018

11  By: _____

12  RAYSHON CLARK

13  Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

1   JAHAN C. SAGAFI (CAL. BAR NO. 227887)
    jsagafi@outtengolden.com
2   RELIC SUN (CAL. BAR NO. 306701)
    rsun@outtengolden.com
3   OUTTEN & GOLDEN LLP
    One Embarcadero Center, 38th Floor
4   San Francisco, CA 94111
    Telephone: (415) 638-8800
5   Facsimile: (415) 638-8810

6   RACHEL BIEN (CAL. BAR NO. 315886)
    rmb@outtengolden.com
7   MICHAEL J. SCIMONE (PRO HAC VICE)
    mscimone@outtengolden.com
8   OUTTEN & GOLDEN LLP
    685 Third Avenue, 25th Floor
9   New York, NY 10017
    Telephone: (212) 245-1000
10  Facsimile: (646) 509-2060

11  Attorneys for Plaintiffs, Aggrieved Employees, and Proposed Class Members

12                      UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                        SAN FRANCISCO DIVISION

15  ALEX ZAMORA and RAYSHON CLARK          Case No. 3:16-cv-02558-VC
    on behalf of themselves and all those
16  similarly situated,                    **[PROPOSED] ORDER GRANTING
                                           PRELIMINARY APPROVAL OF CLASS
17              Plaintiffs,                 ACTION SETTLEMENT AND RELEASE**

18          v.
                                           Date:    _____, 2018
19  LYFT, INC.,                            Time:    10:00 a.m.
                                           Courtroom: 4, 17th Floor
20              Defendant.                 Judge:   Hon. Vince Chhabria

21                                         Date Filed: May 11, 2016
                                           Trial Date: None
22

23

24

25

26

27

28

Plaintiffs have filed a Motion for Preliminary Approval of the class action settlement reached with Defendant Lyft, Inc., a hearing on which was held on _____, 2018. The Court's scrutiny of the proposed Settlement has been as rigorous at the preliminary stage as it will be at the final approval stage. *See Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036–37 (N.D. Cal. 2016). In accordance with that level of scrutiny, the Court has carefully considered the Settlement Agreement together with all exhibits thereto, all the filings related to the Settlement, the arguments of counsel, and the record in this case. The Court hereby gives its preliminary approval of the Settlement; finds that the Settlement and Settlement Agreement are sufficiently fair, reasonable and adequate to allow dissemination of notice of the Settlement to the Settlement Class and to hold a Fairness Hearing; orders the Class Notice be sent to the Settlement Class in accordance with the Settlement Agreement and this Order; and schedules a Fairness Hearing to determine whether the proposed Settlement is fair, adequate and reasonable.

**IT IS HEREBY ORDERED THAT:**

1.      The Settlement Agreement is hereby incorporated by reference in this Order, and all terms or phrases used in this Order shall have the same meaning as in the Settlement Agreement.

2.      The Court preliminarily approves the Settlement, together with all of its Exhibits, finding that the terms of the Agreement are fair, reasonable, and adequate, and within the range of possible approval and sufficient to warrant providing notice to the Settlement Class.

3.      Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Court certifies, for settlement purposes only, the following Settlement Class: "All Lyft Drivers who gave at least one Prime Time Ride in California during the period from August 18, 2014 to April 7, 2017, excluding Class Counsel and their employees and immediate family members and the judicial officers and associated court staff assigned to the Action and their immediate family members."

4.      The Court finds, for settlement purposes only, that the Action may be maintained as a class action on behalf of the Settlement Class because:

1262192

a.      Numerosity: Based on Lyft's records, more than 250,000 individuals have potential claims and are members of the Settlement Class. This satisfies the Rule 23(a)(1) numerosity requirement.

b.      Commonality: The threshold for commonality under Rule 23(a)(2) is not high and a single common issue will suffice.  Plaintiffs allege, among other things, that the Prime Time "pop-up" displayed in the Lyft smartphone application during the Settlement Class Period creates a uniform right to relief for all Rides in which it was displayed to the passenger requesting a Ride.

c.      Typicality. Named Plaintiffs' claims are typical of the claims of the Settlement Class Members and satisfy Rule 23(a)(3).

d.      Adequacy: There are no conflicts of interest between Named Plaintiffs and Settlement Class members and Named Plaintiffs have retained competent counsel to represent the Settlement Class.  Class Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter.  The adequacy requirement is satisfied.

e.      Predominance and Superiority: There is predominance and superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The common legal and factual issue listed in the preliminary approval papers predominate all over other issues.  Resolution of the common question constitutes a significant part of Plaintiffs' and Settlement Class Members' claims.

5.      The Court appoints as class representatives, for settlement purposes only, Named Plaintiffs Alex Zamora and Rayshon Clark.  The Court finds, for settlement purposes only, that the Named Plaintiffs will adequately represent the Settlement Class.

6.      Pursuant to Federal Rule of Civil Procedure 23(g), and for settlement purposes only, the Court designates as Class Counsel the law firm of Outten & Golden LLP.  The Court preliminarily finds that, based on the work Class Counsel have done identifying, investigating, and prosecuting the claims in this action; Class Counsel's experience in handling class actions and claims of this type asserted in this Action; Class Counsel's knowledge of the applicable law;

and the resources Class Counsel have and will commit to representing the class, that Class Counsel have represented and will represent the interests of the Settlement Class fairly and adequately.

7.      The Court appoints Rust Consulting, Inc. as the Settlement Administrator, which shall administer the Settlement in accordance with the terms and conditions of this Order and the Settlement Agreement.

8.      The Court finds that the proposed Class Notice and the proposed plan of distribution of the Class Notice meets the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), and hereby directs the Claims Administrator to proceed with the notice distribution in accordance with the terms of the Settlement Agreement.

9.      Any Settlement Class Members who wishes to opt out from the Agreement must do so within 60 days of the Notice Date and in accordance with the terms of the Settlement Agreement.

10.     Any Settlement Class Members who wishes to object to the Agreement must do so within 60 days of the Notice Date and in accordance with the terms of the Settlement Agreement.

11.     The Court has reviewed and approves the claims process. To be considered timely, a Claim Form must be submitted by a Settlement Class Member so that it is postmarked and mailed to the Settlement Administrator, or submitted online via the settlement website, by no later than the Fairness Hearing, that is, by _____, 2018.  Any Claim Form postmarked or submitted after this date may be rejected as untimely and invalid.  However, the parties have agreed to consider late-filed claims and will cooperate to ensure the greatest possible participation by Settlement Class Members.

12.     The Court finds that the Notice plan, including the form, content, and method of dissemination of the Class Notice to Settlement Class Members as described in the Settlement Agreement, (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the lawsuit and the Settlement and of their right to object to or exclude themselves from the proposed Settlement; (iii) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to

1262192

receive notice; and (iv) meets all applicable requirements of Federal Rule of Civil Procedure 23 and due process.

13.     The Court approves the procedures set forth in the Settlement Agreement and the Notice of Settlement of Class Action for exclusions from and objections to the Settlement.

14.     The Court directs that a hearing be scheduled on _____, 2018 at _____ a.m./p.m. (the "Fairness Hearing") to assist the Court in determining whether the Settlement is fair, reasonable and adequate; whether the Released Claims should be dismissed with prejudice; whether Class Counsel's application for fees and expenses should be approved; and whether Class Counsel's request for Service Awards to the Named Plaintiffs should be approved.  Plaintiffs shall file a motion for final approval of the Settlement no later than 14 days before the Fairness Hearing.

15.     Plaintiffs may file motions for attorneys' fees, costs, and class representative Service Awards.  Such motions shall be filed no later than 21 days before the Exclusion/Objection Deadline, and the reply briefs on such motions shall be filed no later than 14 days before the Fairness Hearing.

16.     Neither the Settlement, nor any exhibit, document or instrument delivered thereunder shall be construed as or deemed to be evidence of an admission or concession by Lyft of an interpretation of, any liability or wrongdoing by Lyft, or of the truth of any allegations asserted by Plaintiffs, Settlement Class Members or any other person.

17.     If the Settlement is not finally approved, or the Effective Date does not occur, or the Settlement is terminated under its terms, then (a) all parties will proceed as if the Settlement (except those provisions that, by their terms, expressly survive disapproval or termination of the Settlement) had not been executed and the related orders and judgment had not been entered, preserving in that event all of their respective claims and defenses in the action; and (b) all releases given will be null and void.  In such an event, this Court's orders regarding the Settlement, including this Preliminary Approval Order, shall not be used or referred to in litigation for any purpose.  Nothing in the foregoing paragraph is intended to alter the terms of the Settlement Agreement with respect to the effect of the Settlement Agreement if it is not approved.

18.     The Court directs that the following deadlines are established by this Preliminary

Approval Order:

             a.     Notice Date: within 45 days of this Preliminary Approval Order.

             b.     Opt-Out Deadline: 60 days after the Notice Date.

             c.     Objection Deadline: 60 days after the Notice Date.

             d.     Claims Submission Date: _____, 2018 [date of Fairness

Hearing] (though, as described above, later claims may be accepted).

             e.     Fairness Hearing: _____, 2018 at _____ a.m./p.m.


**IT IS SO ORDERED.**


Dated: _____          _____

                                               HON. VINCE CHHABRIA
                                             UNITED STATES DISTRICT JUDGE

1262192

# Exhibit B

<u>U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA</u>

# If you used the Lyft smartphone application to give a ride to a passenger in California during a "Prime Time" period between August 18, 2014 and April 7, 2017, you could get a payment from a class action settlement.

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- A lawsuit claims that Lyft, Inc. violated various laws and contract rights by charging commissions on drivers' "Prime Time" premiums.  Lyft denies these allegations but has agreed to settle the lawsuit by paying $1,950,000 and changing how its product works.

- The Court in charge of this case still has to decide whether to approve the settlement.  If it does, drivers who gave at least one ride in California during a "Prime Time" period between August 18, 2014 and April 7, 2017 may be eligible for payment from Lyft.

- Your legal rights are affected whether you act or don't act.  Read this notice carefully.

| Summary of Your Legal Rights and Options | |
|---|---|
| Submit a claim | **In order to receive a payment, you must submit a claim, which you can do electronically or by mail, as explained below in paragraph 9.** [A hyperlink will be included here that will take class members down to paragraph 9.]  By submitting a claim, you give up your right to be part of another case against Lyft about the claims being resolved by this settlement.   Submitting a claim will not affect your right to assert claims against Lyft arising after approval of this settlement, or to assert claims not resolved by this settlement. |
| Exclude yourself from the settlement | Get no payment.  Keep your right to bring or join a case against Lyft about the claims being resolved by this settlement. |
| Object to the settlement | Write to the Court about why you don't like the settlement.  You cannot object in order to ask the Court for a higher payment for yourself personally, although you can object to the payment terms (or any other terms) that apply generally to the class. |
| Go to a hearing | Follow the procedures below to ask to speak in Court about the fairness of the settlement.  The Court will hold a hearing for the settlement to decide whether to approve it. |
| Do nothing | If you do nothing, you will not get a payment.  **However, you will still release your claims that are covered by the settlement and give up your right to assert the claims being resolved by this settlement**. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

**Questions? Visit www.[____].com or call (8XX) [___-____].**
**Para una notificación en español, visite nuestro website.**

1262062

# <u>What This Notice Contains</u>

BASIC INFORMATION ...................................................................................................................3

1.   WHY AM I RECEIVING THIS NOTICE? .....................................................................3

2.   WHAT IS THIS LAWSUIT ABOUT?.............................................................................3

3.   WHAT IS A CLASS ACTION AND WHO IS INVOLVED? ..........................................3

4.   WHY IS THERE A SETTLEMENT?................................................................................4

WHO IS IN THE SETTLEMENT? .................................................................................................4

5.   WHO IS INCLUDED IN THE CLASS UNDER THE SETTLEMENT?..........................4

THE SETTLEMENT BENEFITS—WHAT YOU GET .................................................................4

6.   WHAT DOES THE SETTLEMENT PROVIDE? ............................................................4

7.   WHAT CAN I GET FROM THE SETTLEMENT? .........................................................4

8.   WHAT IF I DISAGREE WITH MY PAYMENT?...........................................................5

HOW YOU GET A PAYMENT—SUBMITTING A CLAIM .......................................................6

9.   HOW CAN I GET A PAYMENT? ...................................................................................6

10.  WHEN WOULD I GET MY PAYMENT? .......................................................................6

11.  WHAT AM I GIVING UP BY STAYING IN THE CLASS AND GETTING A PAYMENT?.................6

EXCLUDING YOURSELF FROM THE SETTLEMENT .............................................................7

12.  HOW DO I GET OUT OF THIS SETTLEMENT? ..........................................................7

13.  IF I DON'T EXCLUDE MYSELF, CAN I SUE LYFT FOR THE SAME THING LATER?.................7

14.  IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THIS SETTLEMENT?..................7

THE LAWYERS REPRESENTING YOU .....................................................................................8

15.  DO I HAVE A LAWYER IN THIS CASE? .....................................................................8

16.  HOW WILL THE LAWYERS BE PAID?  ARE THE CLASS REPRESENTATIVES BEING PAID?...8

OBJECTING TO THE SETTLEMENT ..........................................................................................8

17.  HOW DO I TELL THE COURT THAT I DON'T LIKE THE SETTLEMENT?...................8

18.  WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING? ..................9

THE COURT'S FAIRNESS HEARING .........................................................................................9

19.  WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?.................9

20.  DO I HAVE TO COME TO THE HEARING? ................................................................9

21.  MAY I SPEAK AT THE FAIRNESS HEARING?..........................................................9

IF YOU DO NOTHING .................................................................................................................10

22.  WHAT HAPPENS IF I DO NOTHING AT ALL? .........................................................10

GETTING MORE INFORMATION.............................................................................................10

23.  ARE THERE MORE DETAILS ABOUT THE SETTLEMENT? ...................................10

24.  HOW DO I GET MORE INFORMATION? ...................................................................10

# Basic Information

**1.    WHY AM I RECEIVING THIS NOTICE?**

Lyft's records show that you used the Lyft smartphone application to give one or more rides to a passenger in California during a "Prime Time" period between August 18, 2014 and April 7, 2017.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement.  If the Court approves it and after any objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *Alex Zamora, et al. v. Lyft, Inc.*, Case No. 3:16-cv-02558-VC.

**2.    WHAT IS THIS LAWSUIT ABOUT?**

This lawsuit claims, generally, that Lyft improperly charged commissions on "Prime Time" premiums added to fares during periods of high demand and that, as a result of this, Lyft violated various laws and contracts.  Lyft denies that it improperly charged commissions and has asserted various defenses to the claims.

The lawsuit also claims, generally, that Lyft improperly classified drivers who gave rides in California as independent contractors rather than employees and that as a result of this classification, Lyft violated various laws and regulations.  Lyft denies these claims, argues that it complied with all applicable federal, state, and local laws and regulations at all times, and has asserted various defenses to these claims.  These classification claims will *not* be resolved by the proposed settlement in this lawsuit.

**3.    WHAT IS A CLASS ACTION AND WHO IS INVOLVED?**

In a class action lawsuit, one or more people, called "Class Representatives," sue on behalf of themselves and others who have similar claims.  All these people together are a "Class" or "Class Members."  One court resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the Class.  People who do not exclude themselves and remain in the Class may not file their own lawsuit on the issues that were resolved in the class action.

Here, the Class Representatives are current and/or former drivers who used the Lyft smartphone application to give rides to passengers in California.  Their names are Alex Zamora and Rayshon Clark.  These Class Representatives have sued the Defendant, Lyft, Inc., on behalf of themselves and other drivers who gave rides to passengers in California.

1262062

4.      **WHY IS THERE A SETTLEMENT?**

The Court did not decide in favor of the drivers or Lyft. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation and the benefits of changes to Lyft's product. The Class Representatives and their lawyers think the settlement is in the best interests of the Class because they believe that that the amount Lyft has agreed to pay, along with the changes Lyft has agreed to make to its product, is fair, adequate, and reasonable in light of the risks of continued litigation, and the time required to litigate the case.

## Who Is in the Settlement?

5.      **WHO IS INCLUDED IN THE CLASS UNDER THE SETTLEMENT?**

All current and former drivers who gave at least one ride to a passenger in California during a Prime Time period between August 18, 2014 and April 7, 2017, for which Lyft has not refunded the amount of its commission on the Prime Time Premium, excluding "Lyft Line" rides and other rides where the Lyft mobile smartphone application did not display a Prime Time "pop-up" of the type alleged in this case.

## The Settlement Benefits—What You Get

6.      **WHAT DOES THE SETTLEMENT PROVIDE?**

Lyft has agreed to pay money to Class Members and change its product:

- Lyft has agreed to create a settlement fund of $1,950,000.00 for payments by Lyft to Class Members who file a claim and the following: (1) the costs of providing notice to the Class (such as this document) and administering the settlement, and (2) the lawyers' fees, expenses, and Service Awards approved by the Court (see Question 16 for more details on these payments). The remaining amount in the settlement fund, called the "Net Settlement Fund," will then be distributed to Class Members who make a valid claim, as described in Question 7.

- Lyft has modified its product so that it does not tell passengers that a Prime Time premium is added to the ride total "for the driver" or goes "to the driver." Lyft has agreed not to use "to your driver," "for the driver," or comparable language when describing Prime Time premiums in its product in the future.

7.      **WHAT CAN I GET FROM THE SETTLEMENT?**

Payments to Class Members who submit valid claims (see Question 9) will be made based on each such Class Member's share of the "Net Settlement Fund." A Class Member's share will be determined by the number of "Points" awarded to the Class Member.

The settlement awards Points based on Lyft's records as to the number of Prime Time Rides a Class Member gave between August 18, 2014 and April 7, 2017. These Points do not have a value fixed at any particular dollar amount; they vary depending on how many people make a claim for a share of the settlement. For the purposes of calculating points, the settlement

defines a ride as beginning when a driver uses the Lyft smartphone application to accept a transportation request from a passenger and ending when a driver selects the "drop off" option in the Lyft smartphone application.  A Prime Time Ride is a ride that occurred when Prime Time pricing was in effect, excluding "Lyft Line" rides and other rides where the Lyft mobile smartphone application did not display a Prime Time "pop-up" of the type alleged in this case..

Points will be awarded as follows:

- Six hundred (600) points for each dollar of unrefunded commissions on Prime Time Rides given from August 18, 2014 through March 16, 2015;

- Two hundred (200) points for each dollar of unrefunded commissions on Prime Time Rides given from March 17, 2015 through October 30, 2016; and

- One (100) points for each dollar of unrefunded commissions on Prime Time Rides given from October 31, 2016 through April 7, 2017.

The point awards will also be multiplied as follows:

- Class members who submit valid claims and gave 400 to 999 rides between August 18, 2014 and April 7, 2017 will have their points doubled (i.e., multiplied by 2).

- Class Members who submit valid claims and gave 1,000 or more rides between August 18, 2014 and April 7, 2017 will have their points tripled (i.e., multiplied by 3).

After Points are awarded to all Class Members submitting valid claims, the Net Settlement Fund will be divided among those Class Members in proportion to each Class Member's Points.  The exact amount each such Class Member will receive cannot be calculated until (1) the Court approves the settlement; (2) amounts are deducted from the settlement fund for the costs of providing notice to the Class, administering the settlement, paying lawyers' fees and expenses, and making Service Awards approved by the Court; and (3) the Settlement Administrator determines the number of Class Members who excluded themselves, submitted valid claims, and after payments are made, successfully received their payment.

## 8.    WHAT IF I DISAGREE WITH MY PAYMENT?

If you submit a timely claim form and if the Court grants final approval of the settlement, you will receive a check with information from the Settlement Administrator explaining how your payment was calculated.  If you believe that your payment was calculated incorrectly, you must promptly inform the Settlement Administrator and explain the basis for your belief. Information on how to do this will be included in the information you receive with your check. The Settlement Administrator, with input from Class Counsel and Lyft, will review your submission and determine whether your payment should be corrected.

## <u>How You Get a Payment—Submitting a Claim</u>

9. **HOW CAN I GET A PAYMENT?**

To qualify for payment, you must submit a claim, either electronically or by mail.

To submit a claim electronically, go to **www.[__].com** and enter your Claimant ID and Verification Number, provided below.  [Website name will be linked to website where claims can be submitted.]

Claimant ID: [__]
Verification Number: [__]

To submit a claim by mail, go to **www.[__].com/[__]**  to print out a claim form. [Website name will be linked to website where claim form can be downloaded.]

**In order to receive a monetary payment from this settlement, your claim form must be submitted electronically or postmarked no later than [__].**

You must inform the Settlement Administrator of any change in your address which was listed on the outside of the envelope containing this notice or at the top of the email containing this notice. You may update your address with the Settlement Administrator by submitting your former and current addresses to:

Lyft Class Action Settlement
Settlement Administrator
c/o [__]

You can also submit your address information via email to [__]@[__].com.

Please include your Claimant ID on any correspondence sent to the Settlement Administrator.

**If you do not keep your address current, your settlement payment may be delayed and it is possible that you will not receive your settlement payment.**

10. **WHEN WOULD I GET MY PAYMENT?**

The Court will hold a hearing on [__], to decide whether to approve the settlement.  If the Court approves the settlement after that, it is anticipated that you would receive your payment in the first quarter of 2019.  However, if there are appeals, it may take time to resolve them, perhaps more than a year.  You can obtain information on the progress of the settlement on the website. Please be patient.

11. **WHAT AM I GIVING UP BY STAYING IN THE CLASS AND GETTING A PAYMENT?**

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against Lyft about the legal issues resolved by this settlement.  It also means that all of the Court's orders will apply to you and legally bind

6

you.  If you submit a claim, you will agree to a "Release of Claims," available online as part of the claim submission process, which describes the exact legal claims that you give up if you do not exclude yourself.  Submitting a claim will not affect your right to assert claims against Lyft arising after the approval of this settlement.

# Excluding Yourself from the Settlement

If you don't want a payment from this settlement, but you want keep the right to sue or continue to sue Lyft, on your own, about the legal issues resolved by this settlement, then you must take steps to get out.  This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

**12.     HOW DO I GET OUT OF THIS SETTLEMENT?**

To exclude yourself from the settlement, you must send a letter by mail, **postmarked on or before [__]**, to the Settlement Administrator at the following address:

    Lyft Class Action Settlement
    Settlement Administrator
    c/o [__]

Your letter must contain: (1) a clear statement that you wish to be excluded from this case, *Zamora v. Lyft*, (2) your name (and former names, if any), address, and telephone number; (3) your signature (or the signature of your legally authorized representative).

If, before the deadline, you request to be excluded from the settlement, you will not receive any payment under the settlement and you will not be bound by anything that happens in this case.  However, if the settlement is finally approved, the settlement will prohibit you from making certain further claims under the California Labor Code Private Attorneys General Act of 2004 (also called "PAGA"), regardless of whether you ask to be excluded.

**13.     IF I DON'T EXCLUDE MYSELF, CAN I SUE LYFT FOR THE SAME THING LATER?**

Unless you exclude yourself, you give up the right to sue Lyft for the claims that this settlement resolves. However, not excluding yourself will not affect your right to assert claims against Lyft arising after the approval of this settlement.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You may have to exclude yourself from this Class to continue your own lawsuit.  **Remember, the exclusion deadline is [__].**

**14.     IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THIS SETTLEMENT?**

No.  If you exclude yourself, do not submit a claim to ask for any money.  However, you may sue, continue to sue, or be part of a different lawsuit against Lyft.

1262062

## <u>The Lawyers Representing You</u>

**15.    DO I HAVE A LAWYER IN THIS CASE?**

You do not need to hire your own lawyer.  The Court has decided that the interests of the Class, including you if you do not exclude yourself, are represented by these lawyers:

> Jahan C. Sagafi
> Rachel Bien
> OUTTEN & GOLDEN LLP
> One Embarcadero Center, 38th Floor
> San Francisco, CA 94111
> Telephone: (415) 638-8800
> Facsimile: (415) 638-8810
> Email:  lyftdriversettlement@outtengolden.com

You and other Class Members will not be separately charged for these lawyers, who are referred to as "Class Counsel."  If you want to be represented by your own lawyer, you may hire one at your own expense.

**16.    HOW WILL THE LAWYERS BE PAID?  ARE THE CLASS REPRESENTATIVES BEING PAID?**

Class Counsel will ask the Court for attorneys' fees up to one-third of the settlement fund ($650,000), plus their reasonable out-of-pocket costs.  Class Counsel also will ask for a Service Award of up to $10,000 each for Alex Zamora and Rayshon Clark for their services as the Class Representatives and for their efforts in bringing this case.  The Court will decide whether to approve Class Counsel's and the Class Representatives' requests.

## <u>Objecting to the Settlement</u>

You can tell the Court that you don't agree with the settlement or some part of it.

**17.    HOW DO I TELL THE COURT THAT I DON'T LIKE THE SETTLEMENT?**

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it.  The Court will consider your views.  If the Court rejects your objection, you will still be bound by the terms of the settlement and will also receive a monetary award if you submitted a timely claim.

To object, you must send your written objection by mail, **postmarked on or before** [**Exclusion/Objection Deadline**], to the following two addresses:

> Clerk of the Court
> U.S. District Court, N.D. Cal.
> 450 Golden Gate Avenue, 17th Floor
> San Francisco, CA, 94102

1262062

Lyft Class Action Settlement
Settlement Administrator
c/o [ ]

Your written objection must contain: (1) your full name, address, telephone number, and signature; (2) a heading that clearly refers to this case, *Zamora v. Lyft*; (3) a statement of the specific legal or factual reasons for your objection; and (4) a statement of whether you intend to appear at the Fairness Hearing, either in person or by having a lawyer represent you, and, if you will have a lawyer represent you, a statement identifying that lawyer by name, bar number, address, and telephone number. Your objection must be signed by you (or your legally authorized representative), even if you are represented by a lawyer.

## 18.    WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you cannot object to the settlement because the case no longer affects you.

# The Court's Fairness Hearing

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

## 19.    WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court has preliminarily approved the settlement and will hold a hearing, called a Fairness Hearing, to decide whether to give final approval to the settlement. At the hearing, the Court also will consider Class Counsel's requested attorneys' fees and costs and the Class Representatives' requested Service Awards.

The Court has scheduled the Fairness Hearing for [ ] on [ ], 2018, in Courtroom 4 of the United States District Court, Northern District of California located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102.

## 20.    DO I HAVE TO COME TO THE HEARING?

No. Class Counsel will represent the Class at the hearing and answer any questions the Court may have. However, you have the right to attend the Fairness Hearing and be represented by your own lawyer at your own expense. If you plan to attend the Fairness Hearing, you should contact Class Counsel to confirm the date and time, as the hearing may be rescheduled without further notice.

## 21.    MAY I SPEAK AT THE FAIRNESS HEARING?

You may ask the Court for permission to speak at the Fairness Hearing by following the steps listed under Question [ ] above. If you have requested exclusion from the Settlement, however, you may not speak at the Fairness Hearing.

9

# If You Do Nothing

**22.    WHAT HAPPENS IF I DO NOTHING AT ALL?**

If you do nothing, you'll get no money from this settlement.  But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Lyft about the legal issues resolved by this settlement.  Doing nothing will not affect your right to assert claims against Lyft arising after the approval of this settlement.

# Getting More Information

**23.    ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?**

This notice summarizes the proposed settlement.  More details are in a settlement agreement.  You can get a copy of the settlement agreement by writing to Outten & Golden LLP at One Embarcadero Center, 38th Floor, San Francisco, CA 94111, lyftdriversettlement@outtengolden.com, or by visiting www.[    ].com.

**24.    HOW DO I GET MORE INFORMATION?**

You can visit www.[    ].com, call (8XX) [    -    ], or write to Lyft Class Action Settlement, Settlement Administrator, c/o [    ].  The website provides answers to common questions about the settlement, a claim-submission option, and key documents related to this case and this Settlement.

**PLEASE DO NOT CALL OR WRITE THE COURT**
**OR THE OFFICE OF THE CLERK OF COURT REGARDING THIS NOTICE**

1262062

Envelope #10 with window

_____

_____

_____

Business
Mail Return
No Postage
Necessary

Lyft Class Action Settlement

c/o _____

_____

_____

1262062

# Exhibit C

## CLASS ACTION SETTLEMENT NOTICE

**If you used the Lyft smartphone application to give rides to passengers in California between August 18, 2014 and April 7, 2017, you could get a payment from a class action settlement.**

**Para una notificación en español, visite nuestro website.**

A settlement has been proposed in a class action lawsuit about drivers who used Lyft, Inc.'s smartphone application in California to give rides during "Prime Time" periods.  Lyft will create a settlement fund of $1,950,000 for drivers and has made changes to its product.  If you qualify, you may submit a claim to get a payment, or you can exclude yourself from the settlement, or object to it.

The United States District Court for the Northern District of California authorized this notice.  Before any money is paid, the Court will have a hearing to decide whether to approve the settlement.

### Who's Included?

You are included if you are a driver who used the Lyft smartphone application to give rides to passengers in California during a "Prime Time" period between August 18, 2014 and April 7, 2017, for which Lyft has not refunded the amount of its commission on the Prime Time premium, excluding "Lyft Line" rides and other rides where the Lyft mobile smartphone application did not display a Prime Time "pop-up" of the type alleged in this case.

### What's This About?

The lawsuit claims that Lyft violated various laws and contract rights by charging commissions on drivers' Prime Time premiums.  Lyft denies these claims.  The Court did not decide who was right, but both sides agreed to a settlement to resolve the case.

### What Does the Settlement Provide?

Lyft will create a settlement fund of $1,950,000 for drivers.  Lyft also has removed language in the Lyft App indicating that Prime Time premiums went "to your driver" or were added to the total price "for the driver."

Your share of the fund will depend on the number of Class Members who submit valid claims, the number of Prime Time rides you gave, and the number of rides you gave overall.

### How Do You Ask for a Payment?

A detailed notice and claim package that will be emailed to you contains everything you need.  You can also visit the website or call the number below to get information.  To qualify for a payment, you must submit a claim by [ ].

### What Are Your Other Options?

If you don't want to be legally bound by the settlement, you must exclude yourself by [ ], or you won't be able to sue, or continue to sue, Lyft about the legal claims being resolved by this settlement.  If you exclude yourself, you can't get money from this settlement.  If you stay in the settlement, you may object to it by [ ].  The detailed notice explains how to exclude yourself or object.

The Court will hold a hearing in this case (*Alex Zamora, et al. v. Lyft, Inc.*, Case No. 3:13-cv-02558-VC) on [ ], to consider whether to approve the settlement and a request by the lawyers representing all Class Members (Outten & Golden LLP) for up to one-third of the settlement fund ($650,000) plus their out-of-pocket costs, for investigating the facts, litigating the case, and negotiating the settlement.  The fees and costs will be paid out of the settlement fund.  You may ask to appear at the hearing, but you don't have to.  For more information, visit the website or call the number below, or write to Lyft Class Action Settlement, Settlement Administrator, c/o [ ].

**QUESTIONS? VISIT WWW.[ ].COM OR CALL (8XX) [ ]**

# Exhibit D

JAHAN C. SAGAFI (CAL. BAR NO. 227887)
jsagafi@outtengolden.com
RELIC SUN (CAL. BAR NO. 306701)
rsun@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

RACHEL BIEN (CAL. BAR NO. 315886)
rmb@outtengolden.com
MICHAEL J. SCIMONE (PRO HAC VICE)
mscimone@outtengolden.com
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

Attorneys for Plaintiffs, Aggrieved Employees, and Proposed Class Members

KEKER, VAN NEST & PETERS LLP
RACHAEL E. MENY - # 178514
rmeny@keker.com
SIMONA A. AGNOLUCCI - # 246943
sagnolucci@keker.com
JAY RAPAPORT - # 281964
jrapaport@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant LYFT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX ZAMORA and RAYSHON CLARK on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | Case No. 3:16-cv-02558-VC<br><br>**STIPULATED ORDER DISMISSING NON-RELEASED CLAIMS WITHOUT PREJUDICE**<br><br>Courtroom: 4, 17th Floor<br>Judge:     Hon. Vince Chhabria<br><br>Date Filed: May 11, 2016<br>Trial Date: None |

1        Pursuant to Federal Rule of Civil Procedure 23(e), the parties' Class Action Settlement

2  Agreement and Release ("Settlement Agreement"), and the District Court's Final Approval order,

3  the Court hereby orders that all Non-Released Claims (as defined in the Settlement Agreement)

4  are dismissed without prejudice.

5

6  Dated: _____           _____

7                                        HON. VINCE CHHABRIA
UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATED ORDER DISMISSING NON-RELEASED CLAIMS WITHOUT PREJUDICE
Case No. 3:16-cv-02558-VC

1260745

# Exhibit E

1  JAHAN C. SAGAFI (CAL. BAR NO. 227887)
   jsagafi@outtengolden.com
2  RELIC SUN (CAL. BAR NO. 306701)
   rsun@outtengolden.com
3  OUTTEN & GOLDEN LLP
   One Embarcadero Center, 38th Floor
4  San Francisco, CA 94111
   Telephone: (415) 638-8800
5  Facsimile: (415) 638-8810

6  RACHEL BIEN (CAL. BAR NO. 315886)
   rmb@outtengolden.com
7  MICHAEL J. SCIMONE (PRO HAC VICE)
   mscimone@outtengolden.com
8  OUTTEN & GOLDEN LLP
   685 Third Avenue, 25th Floor
9  New York, NY 10017
   Telephone: (212) 245-1000
10 Facsimile: (646) 509-2060

11 Attorneys for Plaintiffs, Aggrieved Employees, and Proposed Class Members

12 KEKER, VAN NEST & PETERS LLP
   RACHAEL E. MENY - # 178514
13 rmeny@keker.com
   SIMONA A. AGNOLUCCI - # 246943
14 sagnolucci@keker.com
   JAY RAPAPORT - # 281964
15 jrapaport@keker.com
   633 Battery Street
16 San Francisco, CA 94111-1809
   Telephone:   415 391 5400
17 Facsimile:   415 397 7188

18 Attorneys for Defendant LYFT, INC.

19                UNITED STATES DISTRICT COURT

20              NORTHERN DISTRICT OF CALIFORNIA

21                 SAN FRANCISCO DIVISION

22 ALEX ZAMORA and RAYSHON CLARK          Case No. 3:16-cv-02558-VC
   on behalf of themselves and all those
23 similarly situated,                    **PROPOSED SETTLEMENT APPROVAL
                                          SCHEDULE**
24          Plaintiffs,

25     v.

26 LYFT, INC.,                            Date Filed:  May 11, 2016
                                          Trial Date:  None
27          Defendant.

28

1260806

| Event | Date |
|---|---|
| Preliminary Approval Date | TBD |
| Notice Date | 45 days after Preliminary Approval Date |
| Deadline for petition for attorney's fees and enhancement awards | 39 days after Notice Date |
| Exclusion/Objection Deadline | 60 days after Notice Date |
| Deadline for reply briefs in support of petition for attorney's fees and enhancement awards | At least 14 days before Fairness Hearing |
| Deadline for motion for final approval | At least 14 days before Fairness Hearing |
| Fairness Hearing<br><br>Bar Date (deadline to submit claim forms) | At least 21 days after Exclusion/Objection Deadline |

1

1260806