Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Rachel Bien (Cal. Bar No. 315886)
rmb@outtengolden.com
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058

Michael J. Scimone (admitted *pro hac vice*)
mscimone@outtengolden.com
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

*Counsel for Plaintiffs, Aggrieved Employees,
and Class Members*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX ZAMORA and RAYSHON CLARK, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>LYFT, INC.<br><br>Defendant. | Case No. 3:16-cv-02558-VC<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS; MEMORANDUM IN SUPPORT OF MOTION**<br><br>Date:  September 20, 2018<br>Time:  10:00 a.m.<br>Courtroom:  4, 17th Floor<br>Judge:  The Honorable Vince G. Chhabria |

1

## NOTICE OF MOTION AND MOTION

2 To the Clerk of Court and all interested parties:

3          PLEASE TAKE NOTICE THAT on September 20, 2018, at 10:00 a.m., or as soon thereafter

4 as counsel may be heard, in Courtroom 4 of this Court, located at 450 Golden Gate Avenue, 17th

5 Floor, San Francisco, California 94102, before the Honorable Vince Chhabria, Plaintiffs Alex

6 Zamora and Rayshon Clark, hereby do and will move the Court for an award of $650,000 in attorneys'

7 fees, reimbursement of actual costs (currently $18,273.51), settlement administration expenses of

8 $190,000, and service payments of $10,000 for each of the two Named Plaintiffs.  Defendant Lyft,

9 Inc. does not oppose this motion.

10          As more fully discussed in the following memorandum in support of the motion, this motion

11 is made on the grounds that the requested fee is reasonable under the common fund doctrine, as it

12 represents one-third of the settlement fund and is consistent with the applicable Ninth Circuit

13 authority and with fees awarded in similar cases in this District.  In addition, the requested fee is

14 appropriate under the lodestar cross-check method.  Further, the requested litigation and settlement

15 administration expenses were all necessarily and properly incurred, and the requested service

16 awards are reasonable and mark an appropriate payment to the Named Plaintiffs in recognition of

17 their time, effort, and inconvenience, as well as the risk they were exposed to in asserting their and

18 others' rights in this litigation.

19          The motion is based on this notice of motion and motion; the memorandum in support of the

20 motion; the Declaration of Jahan C. Sagafi; the parties' Notice of Motion and Motion for

21 Preliminary Approval of Class Action Settlement, Conditional Certification of Class, Approval of

22 Class Notice, and Setting of Final Approval Hearing ("Preliminary Approval Motion") (ECF No.

23 85) (as well as the accompanying Declaration of Jahan C. Sagafi (ECF No. 85-1); the parties' Class

24 Action Settlement Agreement and Release ("Settlement Agreement") (ECF No. 85-2); the Court's

25 Order Granting Preliminary Approval to Proposed Class Action Settlement (ECF No. 90); the

26 Court's record of this action; all matters of which the Court may take notice; and any oral and

27 documentary evidence presented at the hearing on the motion.

28

Dated:  August 3, 2018

Respectfully submitted,

By: /s/ *Jahan C. Sagafi*
　　　Jahan C. Sagafi

Jahan C. Sagafi (Cal. Bar No. 224887)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com

Rachel Bien (Cal. Bar No. 315886)
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058
E-mail: rmb@outtengolden.com

Michael J. Scimone (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: mscimone@outtengolden.com

*Counsel for Plaintiffs, Aggrieved
Employees, and Class Members*

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 16-CV-02558-VC

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I.      INTRODUCTION ................................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................................... 2

      A.      Class Counsel Carefully Investigated Class Members' Claims, Conducted
            Discovery, and Engaged in Litigation Before Agreeing To the Settlement .......... 2

      B.      The Settlement Is Beneficial to Class Members .................................................... 3

      C.      Class Counsel Have Devoted Substantial Time and Resources to the
            Litigation ................................................................................................................ 3

      D.      Both Plaintiffs Contributed to the Litigation and Assumed Risk .......................... 3

      E.      Class Members Have Reacted Positively to All Aspects of the Settlement ........... 4

III.    ARGUMENT ........................................................................................................................ 4

      A.      The Equitable Common Fund Doctrine Requires That Counsel Be
            Compensated from the Fund .................................................................................. 4

      B.      The Fee Award Should Be Calculated As a Percentage of the Common Fund ...... 5

      C.      The Requested Fee Award Is Consistent with Applicable Ninth Circuit
            Authority ................................................................................................................ 6

      D.      The Requested Fee Award Is Consistent with Fees Awarded in Similar Cases
            in This District and Other California District Courts ............................................. 6

      E.      The Requested Fee Award Is Reasonable ............................................................. 7

      F.      The Requested Fee Is Reasonable Under a Lodestar Cross-Check ....................... 9

      G.      Class Counsel Are Entitled To Recover Their Out-of-Pocket Expenses,
            Which Are Reasonable and Have Inured to the Benefit of the Class ................. 11

      H.      The Class Representative Service Payments Are Reasonable ............................. 12

IV.     CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**                                                                                                        **PAGE(S)**

*In re Activision Sec. Litig.,*
  723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................................ 1,5,6

*Alvarez v. Farmers Ins. Exch.,*
  No. 14 Civ. 00574, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) .................................... 9

*In re Animation Workers Antitrust Litig.,*
  No. 14 Civ. 4062, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) .................................... 10

*Bennett v. SimplexGrinnell LP,*
  No. 11 Civ. 01854, 2015 WL 12932332 (N.D. Cal. Sept. 3, 2015) .................................. 7

*Blum v. Stenson,*
  465 U.S. 886 (1984) ................................................................................... 4, 5, 9

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) ...................................................................................... 4, 5

*Brown v. Permanente Medical Grp., Inc.,*
  No. 16-cv-05272, (N.D. Cal. Oct. 11, 2017) .................................................................. 12

*Buccellato v. AT&T Operations, Inc.,*
  No. 10-cv-00465, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ..................................... 12

*Chem. Bank v. Jaffe & Schlesinger, P.A.,*
  19 F.3d 1306 (9th Cir. 1994) ................................................................................. 4

*Cicero v. DirecTV, Inc.,*
  No. 07 Civ. 1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ..................................... 7

*Cook v. Niedert,*
  142 F.3d 1004 (7th Cir. 1998) ................................................................................. 12

*Cotter v. Lyft, Inc.,*
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) ............................................................... 10, 11

*Dudum v. Carter's Retail, Inc.,*
  No. 14 Civ. 00988, 2016 WL 7033750 (N.D. Cal. Dec. 2, 2016) .................................... 10

*In re Dun & Bradstreet Credit Servs. Customer Litig.,*
  130 F.R.D. 366 (S.D. Ohio 1990) ............................................................................ 13

*Elliott v. Rolling Frito-Lay Sales, LP,*
  No. 11 Civ. 01730, 2014 WL 2761316 (C.D. Cal. June 12, 2014) ................................... 5

*Epic Systems Corp. v. Lewis,*
  138 S.Ct. 1612 (2018) ........................................................................................ 8

*Fernandez v. Victoria Secret Stores, LLC,*
  No. 06 Civ. 04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ................................... 7

*Galeener v. Source Refrigeration & HVAC, Inc.*,
No. 13 Civ. 04960, 2015 WL 12976106 (N.D. Cal Aug. 20, 2015) ........................................... 7, 12

*Glass v. UBS Fin. Servs., Inc.*,
No. 06-cv-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................................................ 13

*Hainey v. Parrott*,
No. 02 Civ. 733, 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007) ...................................... 13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 9

*In Re Janney Montgomery Scott LLC Financial Consultant Litig.*,
No. 06 Civ. 3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) ...................................... 13

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) .............................................................................................. 9

*Lewis v. Wells Fargo & Co.*,
No. 08-cv-2670, (N.D. Cal Apr. 29, 2011) .................................................................... 12

*Lusby v. GameStop Inc.*,
No. 12 Civ. 03783, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ................................ 7

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................................................... 6

*In re Omnivision Techs., Inc.*,
559 F.Supp.2d 1036 (N.D. Cal. 2008) ........................................................................ 6, 7

*In re Optical Disk Drive Prods., Antitrust Litig.*,
No. 10 MD 2143, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ................................... 11

*In re Pacific Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .............................................................................................. 6

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ........................................................................................... 5

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986) ........................................................................................................ 9

*Rippee v. Boston Mkt. Corp.*,
No. 05 Civ. 1359, (S.D. Cal. Oct. 10, 2006) ................................................................... 7

*Ross v. U.S. Bank Nat'l Ass'n*,
No. 07-cv-2951, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) .................................... 12

*Silberblatt v. Morgan Stanley*,
524 F. Supp. 2d 425 (S.D.N.Y. 2007) ........................................................................... 13

*Singer v. Becton Dickinson & Co.*,
No. 08 Civ. 821, 2010 WL 2196104 (S.D. Cal. June 1, 2010) ........................................ 7

iii

*Six Mexican Workers v. Arizona Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990)................................................................................. 5, 7

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003)................................................................................. 4, 12, 13

*Stetson v. Grissom,*
  821 F.3d 1157 (9th Cir. 2016)................................................................................. 9

*Stuart v. Radioshack Corp.,*
  No. 07 Civ. 4499, 2010 WL 3155645 (N.D. Cal. Aug.9, 2010)....................................... 7

*Swedish Hosp. Corp. v. Shalala,*
  1 F.3d 1261 (D.C. Cir. 1993)................................................................................. 5

*In re Tricor Direct Purchaser Antitrust Litig.,*
  No. 05 Civ. 340, slip op. (D. Del. April 23, 2009)................................................... 13

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.,*
  Nos. 87 Civ. 3962, 86 Civ. 3538, 989 WL 73211, (C.D. Cal. Mar. 9, 1989)................. 11

*Van Vranken v. Atl. Richfield Co.,*
  901 F. Supp. 294 (N.D. Cal. 1995)......................................................................... 7, 13

*Vandervort v. Balboa Capital Corp.,*
  8 F. Supp. 3d 1200 (C.D. Cal. 2014)..................................................................... 7

*Vedachalam v. Tata Consultancy Servs., Ltd,*
  No. 06 Civ. 963, 2013 WL 3941319 (N.D. Cal. July 18, 2013)................................... 7

*Vedachalam v. Tata Consultancy Servs.,*
  No. 06-cv-0963, 2013 WL 3929129 (N.D. Cal. July 18, 2013)................................. 12

*Vincent v. Hughes Air West., Inc.,*
  557 F.2d 759 (9th Cir. 1977)................................................................................. 4

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002)................................................................................. 1, 6, 10

*Wade v. Kroger Co.,*
  No. 01 Civ. 699, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008)................................. 13

*Walton v. AT&T Servs., Inc.,*
  No. 15-cv-03653, (N.D. Cal. Feb. 2, 2018)............................................................ 12

*Wright v. Stern,*
  553 F. Supp. 2d 337 (S.D.N.Y. 2008).................................................................... 13

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 16-CV-02558-VC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Alex Zamora and Rayshon Clark secured this $1,950,000 settlement on behalf of themselves and approximately 245,000 Class Members.  Midway through the litigation, Lyft voluntarily removed the challenged "for the driver" language from its App.

Through this motion, Class Counsel, Outten & Golden LLP, request attorneys' fees of one-third of the settlement fund, or $650,000, which is consistent with applicable Ninth Circuit authority awarding fees under both the percentage and lodestar multiplier methods.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

Class Counsel's request for reimbursement of actual litigation expenses is also proper.  The $18,273.51 in costs incurred as of today were all reasonably incurred in connection with the prosecution of the action and the execution of the settlement.  Declaration of Jahan C. Sagafi in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Service Awards ("Sagafi Decl.") ¶ 43.

The Settlement Agreement provides for the settlement administrator to be compensated for its time and expenses up to $190,000.[1]

Finally, to recognize the time and effort that the two Named Plaintiffs expended for the benefit of the Class Members, the results they made possible for the Class, and the risks they accepted by leading and participating in the litigation, Plaintiffs request service payments of $10,000 for each named Plaintiff.

To date, of the 245,976 Class Members to whom notices were sent, no one has objected in any way to any aspect of the settlement, and only three have opted out.  *See* Declaration of Amy Tadewald for Rust Consulting, Inc. ("Tadewald Decl.") ¶¶ 15-16.

---

[1] The Settlement Agreement provides for a Notice and Administration Fund of up to $190,000, with any excess paid by the Settlement Fund.  Sagafi Decl. Ex. C (Settlement Agreement) ¶¶ 21(y), 52.  At present, the Claims Administrator projects that its costs will be the originally estimated $190,000.  However, unexpected developments pay push costs over that amount (e.g., a higher-than-expected claims rate, more disputes than expected, etc.).

1    Defendant Lyft, Inc. does not oppose this motion.[2]

2    **II.    FACTUAL BACKGROUND**

3         Class Counsel have zealously prosecuted these claims, including before filing of the initial

4    complaint, through litigation and discovery, and in overseeing and implementing the settlement.

5    The result of these efforts is a settlement that will benefit hundreds of thousands of Class Members

6    – as well as Lyft drivers in the future, due to Lyft's reformed practices.

7         **A.    Class Counsel Carefully Investigated Class Members' Claims, Conducted**

8         **Discovery, and Engaged in Litigation Before Agreeing To the Settlement.**

9         From before the filing of the action on May 11, 2016, Class Counsel have investigated these

10   claims to build a case on behalf of Lyft drivers.  Class Counsel interviewed drivers about company

11   policies and practices and conducted research to identify and understand Lyft's Prime Time

12   Premium policies.  Sagafi Decl. ¶ 18.  During the litigation, Class Counsel carefully researched

13   various theories of liability under federal and state statutory and common law (with respect to both

14   employment and consumer claims), as well as procedural hurdles (e.g., arbitration, choice-of-law,

15   and class certification).  Class Counsel also engaged in discovery, including propounding discovery

16   requests and reviewing and analyzing documents and data concerning Lyft's corporate policies,

17   payroll and time tracking data, and other documents related to Lyft's classification of drivers as

18   independent contractors and its Prime Time Premium policies.  *Id.* ¶ 19.

19        Class Counsel vigorously litigated the case, including surviving Lyft's motion to dismiss

20   many of the claims and obtaining permission to replead others.  *See* ECF No. 40.  Lyft also moved

21   to strike all claims subject to arbitration, which Plaintiffs opposed,[3] *see* ECF Nos. 66, 72, 77; and to

22   strike the nationwide claims.  *See* ECF No. 64.  These motions required significant time and effort

23   meeting and conferring with defense counsel, conducting legal research, and preparing briefs.

24   Sagafi Decl. ¶ 20.

25

26

27   ────────────────
     [2] Class Counsel will submit a proposed order with their forthcoming final approval motion that
     addresses their requests for attorneys' fees, costs, and service awards.

28   [3] These issues were not argued at hearing due to the parties' settlement negotiations.  *See* ECF No.
     79.

The parties participated in a private mediation before Mark Rudy, an extremely experienced class action mediator. *Id.* ¶ 22. In preparation for the mediation, the parties exchanged additional data, detailed mediation statements, and damages and penalties calculations. *Id.* ¶ 24. The parties were unable to reach a resolution and continued to negotiate with the assistance of Mr. Rudy for several months while litigation proceeded. *Id.* Eventually, a settlement was reached.

On May 11, 2018, this Court granted preliminary approval of that settlement. ECF No. 90.

### B.    The Settlement Is Beneficial to Class Members.

Each Class Member who submits a claim form is eligible to receive a share of the $1,950,000 settlement fund based upon the formula described in the Settlement Agreement. The formula is designed to fairly compensate Class Members by accounting for the number of rides they gave and the time period in which they worked. Sagafi Decl. Ex. C (Settlement Agreement), ¶ 43.

### C.    Class Counsel Have Devoted Substantial Time and Resources to the Litigation.

To date, Class Counsel have devoted over 3,500 hours to the prosecution of this action, with a lodestar value of approximately $730,678.50. Sagafi Decl. ¶¶ 34-35. Thus, the requested fee constitutes a 0.89x multiplier, which will only decrease as the case progresses through finality. Class Counsel have also paid $18,273.51 in out-of-pocket costs. *Id.* ¶ 43. By the time this Motion is heard, these figures will have increased due to additional work performed by Class Counsel for Class Members' benefit. Class Counsel took this matter on a pure contingency basis, expending effort and money without any guarantee of recovery. *Id.* ¶ 45. In prosecuting Plaintiffs' and the Class Members' claims, Class Counsel gave up the opportunity to perform other work during this time period. *Id.*

### D.    Both Plaintiffs Contributed to the Litigation and Assumed Risk.

The two Named Plaintiffs actively oversaw the litigation, making important contributions to it on behalf of Class Members by participating in many discussions with Class Counsel to enable them to understand Lyft's Prime Time policies, and how they impact Lyft drivers in practice. Sagafi Decl. ¶ 33. Both Plaintiffs faced potential retaliation from future employment and other negative consequences based on being publicly associated with the case.[4] *Id.*

---

[4] Plaintiffs do not allege that Lyft retaliated against them.

### E.     Class Members Have Reacted Positively to All Aspects of the Settlement.

The Class Members' positive response to the settlement is evidenced by the fact that not a single person has objected out of almost a quarter of a million Class Members.  On June 29, 2018, individualized notice was sent to each Class Member by personal email or by first-class mail at their last known address if email was not available.  Tadewald Decl. ¶ 10.  The notice explained important terms of the Settlement, including the size of the settlement fund, and Class Counsel's requests for attorneys' fees and costs.  *Id.*, Ex. A.  No Class Member has objected to any aspect of the settlement.  *Id.* ¶ 16.  Class Members' support for the Settlement further supports this Motion.

## III.     ARGUMENT

### A.     The Equitable Common Fund Doctrine Requires That Counsel Be Compensated from the Fund.

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air West., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Chem. Bank v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994). "Attorneys' fees provisions included in proposed class action agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is fundamentally fair, adequate and reasonable."  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)) (internal quotation marks omitted).  Either the lodestar method or percentage method can be appropriate; the latter is more common.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

Federal and state courts recognize that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it.  *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (observing that the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole").  The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients.  *Id.* at 478.  Where the attorneys' unnamed class member clients have no express retainer agreement, those who benefit

1   from the fund without contributing to it would be unjustly enriched if attorneys' fees were not paid

2   out of the common fund.  *Id.*

3        Here, Class Counsel have helped generate a $1,950,000 fund for the participating Class

4   Members (as well as spurring the defendant to cease the challenged practice).  None of the Class

5   Members has paid any fees or costs.  Equity requires them to pay a reasonable fee, based on what

6   the market would traditionally require, no less than if they had hired private counsel to litigate their

7   cases individually.  *Boeing*, 444 U.S. at 479-81.

8        **B.**   **The Fee Award Should Be Calculated As a Percentage of the Common Fund.**

9        Typically, the fairest and most efficient way to calculate a reasonable fee when contingency

10  fee litigation has produced a common fund is to award Class Counsel a percentage of the total fund.

11  *See, e.g.*, *Blum*, 465 U.S. at 900 n.16; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d

12  1301, 1311 (9th Cir. 1990) (common fund fee is generally "calculated as a percentage of the

13  recovery"); *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989).

14       The percentage of the fund method can be appropriate for several reasons.  The percentage

15  method comports with the legal marketplace, where plaintiffs' counsel's success is frequently

16  measured in terms of the results they have achieved.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d

17  1261, 1269 (D.C. Cir. 1993) (in common fund cases, "the monetary amount of the victory is often

18  the true measure of [counsel's] success").  By assessing the amount of the fee in terms of the

19  amount of the benefit conferred on the class, the percentage method "more accurately reflects the

20  economics of litigation practice" which, "given the uncertainties and hazards of litigation, must

21  necessarily be result-oriented."  *Id.* (internal quotations and citations omitted); *see also Elliott v.*

22  *Rolling Frito-Lay Sales, LP*, No. 11 Civ. 01730, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014)

23  (highlighting significant benefits of percentage approach and its consistency with contingency fee

24  calculations in the private market).

25       Moreover, the percentage approach aligns the incentives of the class members and their

26  counsel, so that time is spent efficiently and the class's recovery – rather than lodestar hours – is

27  maximized.  *In re Activision Sec. Litig.*, 723 F. Supp. at 1375-76.

28

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 16-CV-02558-VC

1

2

**C.**   **The Requested Fee Award Is Consistent with Applicable Ninth Circuit Authority.**

3

In the Ninth Circuit, 25 percent of the common fund is the "benchmark" for fees in "mega-

4

fund" class actions (those in the $50-200 million range). *See, e.g., Vizcaino*, 290 F.3d at 1047.  The

5

Ninth Circuit and district courts in this Circuit have consistently reaffirmed that the 25 percent

6

benchmark is just that – a benchmark, which can be adjusted based on the circumstances of the

7

case. *See Vizcaino*, 290 F.3d at 1048-50 & Appendix.  Specifically, the *Vizcaino* court recognized

8

the "increase-decrease rule" – the percentage of an award generally decreases as the common fund

9

increases, and vice versa. *Id.* at 1047-48.  District courts are entrusted with wide discretion to

10

approve fees above or below that benchmark. *See id.* at 1048 ("The 25% benchmark rate, although

11

a starting point for analysis, may be inappropriate in some cases."); *see also, e.g., In re Omnivision*

12

*Techs., Inc.*, 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2008) ("in most common fund cases, the award

13

exceeds the [25%] benchmark.").  Where the common fund is below $50 million, fees above 25%

14

are often appropriate; conversely, in cases over $200 million, fees below 25% are often appropriate.

15

*See, e.g., In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of

16

33% of $12 million common fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir.

17

2000) (affirming award of 33.3% of $1.725 million).

18

Courts often employ a lodestar cross-check to confirm the reasonableness of a percentage-

19

based fee. *See Vizcaino*, 290 F.3d at 1050.  Here, the requested fee of $650,000 is significantly

20

lower than the lodestar of $$730,678.50, creating a multiplier of 0.89 (sometimes called a "negative

21

multiplier").  The lodestar cross-check confirms that the fee of one-third is eminently reasonable

22

and significantly below the range of fee multipliers courts routinely approve.

23

**D.**   **The Requested Fee Award Is Consistent with Fees Awarded in Similar Cases in This District and Other California District Courts.**

24

In this District, in class action common fund cases, a fee of one-third is well within the

25

range of awards commonly approved by courts. *In re Activision Sec. Litig.*, 723 F. Supp. at 1377

26

(surveying cases and stating, "[t]his court's review of recent reported cases discloses that nearly all

27

common fund awards range around 30%").  A fee award of one-third "is only modestly more than

28

the Ninth Circuit's 25% 'benchmark' percentage" and "[i]n light of the many cases in this circuit

that have granted fee awards of 30% or more," it is "well within the usual range of percentages awarded." *Vedachalam v. Tata Consultancy Servs., Ltd*, No. 06 Civ. 963, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013) (awarding fee of 30% of $29.75 million settlement; collecting cases awarding 30% or more); *see also In re Omnivision*, 559 F.Supp.2d at 1047 ("in most common fund cases, the award exceeds [the 25%] benchmark.").

California district courts "usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million." *Cicero v. DirecTV, Inc.*, No. 07 Civ. 1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010). *See, e.g., Bennett v. SimplexGrinnell LP*, No. 11 Civ. 01854, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015) (Tigar, J.) (38.8%; $4.9 million fund); *Rippee v. Boston Mkt. Corp.*, No. 05 Civ. 1359, Docket Nos. 53, 69 (S.D. Cal. Oct. 10, 2006) (40% fee; $3.75 million fund); *Fernandez v. Victoria Secret Stores, LLC*, No. 06 Civ. 04149, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (34% fee; $8.5 million fund); *Galeener v. Source Refrigeration & HVAC, Inc.*, No. 13 Civ. 04960, 2015 WL 12976106, at *4 (N.D. Cal Aug. 20, 2015) (Chhabria, J.) (33 1/3% fee; $10 million fund); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (Williams, J.) (percentages greater than 30% tend to be awarded in cases with class funds of less than $10 million); *Bennett*, 2015 WL 12932332, at *6 (38.8% of $4.9 million fund); *Lusby v. GameStop Inc.*, No. 12 Civ. 03783, 2015 WL 1501095, at *3-4 (N.D. Cal. Mar. 31, 2015) (Lloyd, J.) (33% of $750,000 fund); *Singer v. Becton Dickinson & Co.*, No. 08 Civ. 821, 2010 WL 2196104, at *2, *7-9 (S.D. Cal. June 1, 2010) (33.33% of $1 million fund); *Stuart v. Radioshack Corp.*, No. 07 Civ. 4499, 2010 WL 3155645, at *5-7 (N.D. Cal. Aug.9, 2010) (Chen, J.) (33.33% of $4.5 million fund); *Fernandez*, 2008 WL 8150856, at *16 (34% of $8.5 million fund).

### E.      The Requested Fee Award Is Reasonable.

The following factors are relevant to whether an award is reasonable and whether a departure from 25% is warranted, including: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs." *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209 (C.D. Cal. 2014) (citing *Vizcaino*, 290 F.3d at 1048–50); *Six Mexican Workers*, 904 F.2d at 1311.

These factors support Class Counsel's compensation in this case, where the financial burden of investigating, developing, and prosecuting the case, and the skill and diligence required to maintain the case in the face of forceful opposition were substantial.  *See* Sagafi Decl. ¶¶ 17-20.

First, Class Counsel achieved a good result for the Class.  The $1,950,000 common fund represents a significant portion of the damages Plaintiffs would have been owed had they succeeded on the Prime Time Premium claims.  *See* Pls.' Mot. for Prelim. Approval at 9-10, ECF No. 85.  In addition, Lyft stopped using the challenged "for the driver" language when describing the Prime Time Premium to riders, so that there is little remaining risk of confusion.  Plaintiffs believe that this decreases the chance that drivers believe that the Prime Time Premium is a tip that would obviate the need for riders to tip drivers providing Prime Time rides.

Second, this litigation presented several hurdles to a favorable result – loss on any one would eliminate or significantly reduce the recovery: (1) Rule 23 class certification; (2) Lyft's motion to strike claims subject to arbitration or a post-class certification motion to compel arbitration; (3) summary judgment on the third-party beneficiary contract or conversion theories; (4) liability at trial; (5) damages showing through expert calculations; and (6) appeal.

Arbitrability—whether resolved in Lyft's motion to strike or a subsequent motion to compel arbitration—is a particularly significant hurdle, especially now in light of the Supreme Court's decision in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018).  Only a few hundred drivers in California have attempted to opt out of Lyft's arbitration agreement.  *See* Sagafi Decl. Exh. C (Settlement Agreement) ¶ 9.

Third, Class Counsel specialize in complex class action wage and hour litigation and have substantial experience litigating wage and hour cases alleging misclassification of workers.  Sagafi Decl. ¶¶ 5-11, 15-16; *see* ECF No. 90 ¶ 6.  This expertise was critical in identifying the claim and bringing it to a successful resolution.

Fourth, Class Counsel have devoted over 3,500 hours to this litigation, resulting in a lodestar of $730,678.50, above the $650,000 (33 1/3%) sought.  Class Counsel's lodestar will continue to increase as Class Counsel continue to perform work for the Class.  Sagafi Decl. ¶ 37.

1    Class Counsel accepted this case on a pure contingency basis and have received no compensation

2    for their time or expenses. *Id.* ¶ 45.

3         Given the results achieved, the complexity of the claims, the contingent nature of the fee,

4    and financial burden for Class Counsel, 33 1/3% is reasonable.

5         <u>Finally</u>, no Class Member has objected to any aspect of the fee request. Tadewald Decl. ¶

6    16.

7         **F.      The Requested Fee Is Reasonable Under a Lodestar Cross-Check.**

8         "There is a strong presumption that the lodestar is a reasonable fee." *Stetson v. Grissom*,

9    821 F.3d 1157, 1165 (9th Cir. 2016). It is "well within the district court's discretion" to "apply the

10   lodestar method, rather than the percentage-of-fund method." *Id.* The lodestar is calculated by

11   multiplying the reasonable hours expended by a reasonable hourly rate. *Pennsylvania v. Delaware*

12   *Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The court may then apply a

13   multiplier to the lodestar to arrive at a reasonable fee. *Blum*, 465 U.S. at 888.

14        The appropriate multiplier is determined in light of certain factors, including:
          (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3)
15        the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance
          of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time
16        limitations imposed by the client or the circumstances; (8) the amount at controversy and the
          results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the
17        'undesirability' of the case; (11) the nature and length of the professional relationship with
          the client; and (12) awards in similar cases.
18

19   *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see Hanlon v. Chrysler Corp.*,

20   150 F.3d 1011, 1029 (9th Cir. 1998) (a lodestar figure "may be adjusted upward or downward to

21   account for several factors including the quality of the representation, the benefit obtained for the

22   class, the complexity and novelty of the issues presented, and the risk of nonpayment").

23        As discussed above, Class Counsel's lodestar is less than the fee they request. Sagafi Decl.

24   ¶ 34. Thus, the requested fee currently results in a lodestar multiplier of 0.89, meaning that Class

25   Counsel will receive less than their hourly rate for each hour worked. This already low figure will

26   only decrease in the coming months as Class Counsel continue to perform work for the Class. The

27   "negative" multiplier here confirms that the 33.33% fee is reasonable. *See e.g., Alvarez v. Farmers*

28   *Ins. Exch.*, No. 14 Civ. 00574, 2017 WL 2214585, at *5 (N.D. Cal. Jan. 18, 2017) (fee award that

1   was 53% of lodestar was "objectively reasonable under the lodestar method of calculation");

2   *Dudum v. Carter's Retail, Inc.*, No. 14 Civ. 00988, 2016 WL 7033750, at *7 (N.D. Cal. Dec. 2,

3   2016) (unusual negative multiplier, 0.87, supports the reasonableness of the fee request); *In re*

4   *Animation Workers Antitrust Litig.*, No. 14 Civ. 4062, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11,

5   2016) (requested fee was substantially below the lodestar and resulted in a multiplier of 0.67,

6   "markedly lower than the range of multipliers accepted by the Ninth Circuit and district courts

7   throughout the country").

8        Furthermore, consideration of the *Kerr* factors demonstrates that the requested fee is

9   warranted in this case.  Factors (1)-(3), (6), (8)-(9), and (12) set forth in *Kerr* support the requested

10  fee for the same reasons that 33 1/3% of the common fund is a reasonable fee.  *See above* at 5, 7-8.

11       As to the fourth *Kerr* factor, prosecution of this case precluded Class Counsel from

12  accepting other fee-generating matters, with this litigation consuming significant percentages of

13  Class Counsel's attorney and staff time.  Sagafi Decl. ¶ 41.

14       The customary fee (factor five) also supports awarding the requested fee.  Class Counsel's

15  requested fee is consistent with the applicable Ninth Circuit authority and with the fees awarded in

16  similar cases in this District.  *See above* at 6-7.  It also falls well below the range of multipliers

17  approved by the Ninth Circuit and district courts in this and other Circuits.  *Id*.  Class Counsel's

18  hourly rates are also reasonable.  The rates are commensurate with those prevailing in the

19  applicable markets for attorneys with comparable skill and experience litigating complex wage and

20  hour class and collective actions.  Sagafi Decl. ¶ 40.

21       The amount of time spent for the results (factor eight) also supports the requested fee.  Class

22  Counsel obtained a favorable settlement for the Class, given the risks of litigation in this case.

23  Sagafi Decl. ¶¶ 25-28.  Class counsel "achieved a timely result for class members in need of

24  immediate relief."  *Vizcaino*, 290 F.3d at 1050 n.5.

25       The undesirability of the case (factor ten) also supports the fee request.  The risk and

26  complexity summarized above demonstrate that a recovery was by no means guaranteed.  In fact, at

27  the outset, the Court explained that "[b]ased on the evidence currently in the record, the new

28  gratuity claims asserted by the *Zamora* plaintiffs do not seem very strong."  *Cotter v. Lyft, Inc.*, 193

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 16-CV-02558-VC

1    F. Supp. 3d 1030, 1038 (N.D. Cal. 2016).  The Court viewed the *Zamora* Plaintiffs' theory as

2    "questionable" and held that "[t]his makes the [*Zamora*] Prime Time gratuity claims far weaker

3    than the gratuity claim asserted by the *Uber* drivers in *O'Connor*."  *Id.* at 1039.  Many other

4    attorneys experienced in employment litigation might have refused to represent these Class

5    Members.

6         Finally, the nature and length of Class Counsel's professional relationship with the Named

7    Plaintiffs (factor eleven) also weighs in favor of the fee request.  Named Plaintiffs selected Class

8    Counsel to litigate these claims, and Class Counsel have maintained a close and productive

9    relationship with them throughout the litigation.  Sagafi Decl. ¶ 33.

10        The fees requested here are significantly lower than the lodestar.  Based on each of the *Kerr*

11   factors discussed above, the requested fee is reasonable.

12        **G.    Class Counsel Are Entitled To Recover Their Out-of-Pocket Expenses, Which**
13             **Are Reasonable and Have Inured to the Benefit of the Class.**

14        Class Counsel seek reimbursement of actual litigation expenses.  "Attorneys who create a

15   common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket

16   expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary,

17   and directly related to the prosecution of the action."  *In re Optical Disk Drive Prods., Antitrust*

18   *Litig.*, No. 10 MD 2143, 2016 WL 7364803, at *10-11 (N.D. Cal. Dec. 19, 2016).

19        To date, Class Counsel have incurred $18,273.51 in litigation costs and expenses and will

20   incur additional costs through the conclusion of this matter.  Sagafi Decl. ¶ 43, Exh. B.  These costs

21   include discovery costs, filing fees, payment to the mediator, photocopying, telephone conference

22   calls, mailing expenses, travel, and other reasonable litigation-related costs.  *Id.*  All of these costs

23   were necessary in connection with the prosecution of this litigation and were incurred for the

24   benefit of the Class.  No Class Member has objected to the request for costs.  *See* Tadewald Decl. ¶

25   16.  Accordingly, they are reimbursable.  *See In re United Energy Corp. Solar Power Modules Tax*

26   *Shelter Inv. Sec. Litig.*, Nos. 87 Civ. 3962, 86 Civ. 3538, 989 WL 73211, at *6 (C.D. Cal. Mar. 9,

27   1989).

28

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 16-CV-02558-VC

Further, the Settlement allows reimbursement to the Settlement Administrator in an amount not to exceed $190,000.  Sagafi Decl. Exh. C (Settlement Agreement) ¶ 33.  The activities already underway and those yet to be conducted (including distribution of settlement proceeds) are necessary to effectuate notice of the settlement and proper distribution of the settlement fund to the Class Members.  No Class Members have objected to the request for settlement administrator expenses.  *See* Tadewald Decl. ¶ 16.

## H.    The Class Representative Service Payments Are Reasonable.

 "[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement.  *Staton*, 327 F.3d at 977.  Service or incentive payments are appropriate in a class action because they provide an incentive to bring important cases that have a broad impact benefiting a class of individuals, not just the plaintiff.  *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  These payments also recognize the Plaintiffs' time, effort, and inconvenience, as well as the risk they are exposed to in asserting their and others' rights in a particularly public manner.  By bringing the litigation on behalf of others in addition to themselves, class representatives in employment class actions provide a valuable service to their fellow workers.  More broadly, they promote the public policy goals set forth by the legislatures that enacted the underlying substantive statutes at issue.

For these reasons, courts in the Ninth Circuit routinely approve the award of service payments to class representatives for their assistance to the class.  *See, e.g., Brown v. Permanente Medical Grp., Inc.*, No. 16-cv-05272, ECF No. 105 at 2 (N.D. Cal. Oct. 11, 2017) (Chhabria, J.) ($10,000 each to three class representatives); *Walton v. AT&T Servs., Inc.*, No. 15-cv-03653, ECF No. 221 at 5 (N.D. Cal. Feb. 2, 2018) (Chhabria, J.) ($20,000 to two class representatives and $5,000 to seven witnesses); *Galeener*, 2015 WL 12976106, at *3 ($27,000 and $25,000 to two class representatives); *Vedachalam v. Tata Consultancy Servs.*, No. 06-cv-0963, 2013 WL 3929129, at *2 (N.D. Cal. July 18, 2013) (Wilken, J.) ($35,000 and $25,000 to class representatives); *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-00465, 2011 WL 3348055, at *3 (N.D. Cal. June 30, 2011) (Koh, J.) ($20,000 to lead plaintiff); *Lewis v. Wells Fargo & Co.*, No. 08-cv-2670, ECF No. 315 at 4 (N.D. Cal Apr. 29, 2011) (Wilken, J.) ($22,000 and $20,000 for named plaintiffs); *Ross v. U.S.*

1   *Bank Nat'l Ass'n*, No. 07-cv-2951, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (Illston, J.)

2   ($20,000 service award for each of four class representatives); *Glass v. UBS Fin. Servs., Inc.*, No.

3   06-cv-4068, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) (Chesney, J.) ($25,000 to each

4   of four class representatives).[5]

5       When evaluating the reasonableness of a service award, courts may consider factors such as

6   "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class

7   has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in

8   pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at

9   977; *see also Van Vranken*, 901 F. Supp. at 299; *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d

10   425, 435 (S.D.N.Y. 2007) ("A class representative . . . whose future employability has been

11   impaired may be worthy of receiving an additional payment, lest others be dissuaded.").

12       Here, the Named Plaintiffs made important contributions to the prosecution and fair

13   resolution of this action on behalf of Class Members.  The $10,000 service payments they seek

14   reflect reasonable compensation for their efforts in making possible a valuable settlement for

15   hundreds of thousands of Class Members and Lyft drivers in the future, expending time and effort

16   providing support to Class Counsel since the inception of the case, and subjecting themselves to the

17   risk of unfavorable treatment by future employers.  Sagafi Decl. ¶ 33.

18       In short, Plaintiffs' participation in the litigation was integral to its success (this case, by

19   definition, would not have existed without them), and they took risks in pursuing the claims of

20   Class Members.  The requested service awards are reasonable, especially in light of well-

21   established precedent in this Circuit approving such award amounts.

22

23   [5] *See also In re Tricor Direct Purchaser Antitrust Litig.*, No. 05 Civ. 340, slip op. at 11 (D. Del.

24   April 23, 2009), ECF No. 543 ($50,000 each three class representatives); *In Re Janney Montgomery
    Scott LLC Financial Consultant Litig.*, No. 06 Civ. 3202, 2009 WL 2137224, at *12, *21 (E.D. Pa.

25   July 16, 2009) ($20,000 each to three class representatives); *Wade v. Kroger Co.*, No. 01 Civ. 699,
    2008 WL 4999171, at *13 (W.D. Ky. Nov. 20, 2008) ($30,000 each to multiple class

26   representatives); *Wright v. Stern*, 553 F. Supp. 2d 337, 342, 345 (S.D.N.Y. 2008) ($50,000 each to
    11 class representatives) ; *Hainey v. Parrott*, No. 02 Civ. 733, 2007 WL 3308027, at *6 (S.D. Ohio

27   Nov. 6, 2007) ($50,000 each to four class representatives); *In re Dun & Bradstreet Credit Servs.*

28   *Customer Litig.*, 130 F.R.D. 366, 374, 376-77 (S.D. Ohio 1990) ($35,000 to $55,000 each to five
    class representatives).

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 16-CV-02558-VC

1       Finally, no Class Members to date has objected to these requested service awards after

2   receiving notice of the settlement.  Tadewald Decl. ¶ 16.

3   **IV.**    **CONCLUSION**

4       For the foregoing reasons, Class Counsel respectfully request that the Court issue an order

5   approving: (1) $650,000 in attorneys' fees, (2) actual costs (currently expected to be less than

6   $25,000), (3) $190,000 for settlement administration expenses, and (4) service payments in the

7   amount of $10,000 to each Named Plaintiff.  Plaintiffs will file updated information with their reply

8   brief at least 14 days before the Final Approval Hearing.

9

10  Dated:  August 3, 2018                  Respectfully submitted,

11                           By: /s/ *Jahan C. Sagafi*

12                               Jahan C. Sagafi

13                         Jahan C. Sagafi (Cal. Bar No. 224887)
    OUTTEN & GOLDEN LLP

14                         One California Street, 12th Floor
    San Francisco, CA 94111

15                         Telephone: (415) 638-8800
    Facsimile: (415) 638-8810

16                         E-mail: jsagafi@outtengolden.com

17

18                         Rachel Bien (Cal. Bar No. 315886)
    601 S Figueroa St., Suite 4050

19                         Los Angeles, CA 90017
    Telephone: (323) 673-9900

20                         Facsimile: (646) 509-2058
    E-mail: rmb@outtengolden.com

21

22                         Michael J. Scimone (admitted *pro hac vice*)
    OUTTEN & GOLDEN LLP

23                         685 Third Avenue, 25th Floor
    New York, NY 10017

24                         Telephone: (212) 245-1000
    Facsimile: (646) 509-2060

25                         E-mail: mscimone@outtengolden.com

26                         *Counsel for Plaintiffs, Aggrieved*

27                         *Employees, and Class Members*

28