1  Jahan C. Sagafi (Cal. Bar No. 224887)
2  jsagafi@outtengolden.com
   OUTTEN & GOLDEN LLP
3  One California Street, 12th Floor
   San Francisco, CA 94111
4  Telephone: (415) 638-8800
   Facsimile:  (415) 638-8810
5
6  Rachel Bien (Cal. Bar No. 315886)
   rmb@outtengolden.com
7  601 S Figueroa St., Suite 4050
   Los Angeles, CA 90017
8  Telephone: (323) 673-9900
   Facsimile:  (646) 509-2058
9
10 Michael J. Scimone (admitted *pro hac vice*)
   mscimone@outtengolden.com
11 OUTTEN & GOLDEN LLP
   685 Third Avenue, 25th Floor
12 New York, NY 10017
   Telephone: (212) 245-1000
13 Facsimile:  (646) 509-2060
14
15 *Counsel for Plaintiffs, Aggrieved Employees,*
   *and Class Members*

16                **UNITED STATES DISTRICT COURT**
17              **NORTHERN DISTRICT OF CALIFORNIA**
                  **SAN FRANCISCO DIVISION**
18

19 ALEX ZAMORA and RAYSHON CLARK,          Case No. 3:16-cv-02558-VC
   individually and on behalf of all other
20 similarly situated individuals,         **DECLARATION OF JAHAN C. SAGAFI**
                                           **IN SUPPORT OF MOTION FOR**
21                   Plaintiffs,           **AWARD OF ATTORNEYS' FEES,**
                                           **COSTS, AND SERVICE AWARDS**
22 v.
                                           Date:  September 20, 2018
23 LYFT, INC.                              Time:  10:00 a.m.
                                           Courtroom:  4, 17th Floor
24                   Defendant.            Judge:  The Honorable Vince G. Chhabria
25

26

27

28

I, Jahan C. Sagafi, declare as follows:

1.      I am a partner at Outten & Golden, LLP ("O&G"), attorneys for the Plaintiffs and the settlement class.  I make these statements based on personal knowledge and would so testify if called as a witness.

2.      This Declaration is submitted in support of the Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Service Awards.

3.      I am a member in good standing of the bar of the State of California, as well as the U.S. District Court for the Northern District of California.

### Outten & Golden's Background and Experience

4.      O&G is a 60+ attorney firm with offices in New York, San Francisco, Washington D.C., and Chicago, representing plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.  In addition to taking contingency fee matters, O&G maintains a substantial practice of hourly work for paying clients and often receives fee awards in the cases it handles, giving O&G a solid foundation of resources from which to take on class action matters such as this one.

5.      O&G has represented plaintiffs in hundreds of class and collective actions asserting employment rights on behalf of workers.  O&G attorneys "have . . . extensive experience and expertise in prosecuting wage-and-hour class actions and collective actions."  *Lillehagen v. Alorica*, No. 13 Civ. 0092, ECF No. 262 (C.D. Cal. May 31, 2016); *Galeener v. Source*, No. 13 Civ. 4960, ECF No. 131 (N.D. Cal. Mar. 13, 2015) (Chhabria, J.) (same); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *4 (S.D.N.Y. Oct. 2, 2013) (appointing O&G as class counsel, finding that O&G attorneys "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour and class action law"); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17, 2011) (same); *accord Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *7 (S.D.N.Y. Dec. 29, 2014) (appointing O&G as class counsel, explaining that "[b]ased

on the firm's performance before me in this and other cases and its work in the foregoing and other cases, I have no question that it will prosecute the interests of the class vigorously"); *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y. Sept. 16, 2014) (appointing O&G as class counsel and noting that "O & G has the requisite experience in handling class actions . . . , are well versed in the applicable law, and have the resources necessary to represent the NYLL Class fairly and adequately"); *Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Alli v. Boston Mkt. Corp.*, No. 10 Civ. 4, 2011 WL 6156938, at *2 (D. Conn. Dec. 9, 2011) (O&G counsel are "qualified and experienced in the issues raised in" wage and hour overtime litigation); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328 at *6 (S.D.N.Y. Mar. 3, 2010) (O&G "are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area").

## My Background and Experience

6.      I graduated *magna cum laude* from Harvard College in 1994, where I concentrated in Social Studies.  I graduated from Harvard Law School in 2001 and throughout my practice have specialized in class actions, with a focus on employment class actions.

7.      For the first year after I graduated from law school, I clerked for the Honorable William W Schwarzer, Senior Judge of the United States District Court for the Northern District of California.

8.      Immediately thereafter, in 2002, I began practicing with Lieff, Cabraser, Heimann & Bernstein, LLP, where I became a partner in January 2008.  My practice consisted primarily of representing class members in employment class actions (including wage and hour, employment

discrimination, and other employment-related disputes), as well as significant work representing plaintiffs in consumer class actions and appeals of consumer and product liability cases in the Ninth Circuit and other appellate courts.

9.      In fall 2013, I left Lieff Cabraser to help open O&G's San Francisco office.  Here, my practice has consisted primarily of representing workers in employment class actions (including wage and hour, employment discrimination, and other employment-related disputes).

10.     Currently, I represent plaintiffs asserting employment claims in representative actions in this District, other federal districts, and California state court.

a.      Ongoing wage and hour class actions in this District.  Currently, I represent plaintiffs and proposed class members asserting employment claims in several federal class and collective action cases in this District, including:  *Whitworth v. SolarCity Corp.*, No. 16-cv-1540-JSC (N.D. Cal.) (off-the-clock and meal break claims on behalf of installers); *Godhigh v Savers*, No. 16-cv-2874-WHO (N.D. Cal.) (misclassification claims on behalf of retail store assistant managers); *Wolf v. Permanente Medical Group, Inc.*, No. 17-cv-05345-VC (N.D. Cal.) (off-the-clock claims on behalf of telephone service representatives).

b.      Ongoing discrimination class actions in this District.  Currently, I represent plaintiffs and proposed class members asserting employment discrimination claims in several class and collective action cases in this District, including:  *del Toro Lopez v. Uber Technologies, Inc.*, No. 17-cv-06255-YGR (N.D. Cal.) (nationwide gender and race discrimination class action on behalf of software engineers); *Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-2276-JST (N.D. Cal.) (nationwide age discrimination class action on behalf of applicants for introductory accountant positions); *Onuoha v. Facebook, Inc.*, No. 16-cv-6440-EJD (N.D. Cal.) (discrimination claims on behalf of African American, Latino, and Asian American Facebook users excluded from employment, housing, and credit ads provided to similarly situated white users).

c.      Ongoing employment class actions in other districts.  I also represent plaintiffs and proposed class members asserting employment claims in several federal class and collective action cases in other Districts, including:  *Strauch v. Computer Sciences Corp.*, No. 14 Civ. 956 (D.

Conn.) (unanimous jury verdict for plaintiffs on classwide basis, with willfulness finding, in December 2017) (technical support worker exemption misclassification claims); *Delnoce v. GlobalTranz Enterprises*, No. 17 Civ. 01278-MHB (D. Ariz.) (misclassification claims on behalf of sales representatives and freight brokers). *Strauch* is one of a handful of employment class actions that have been successfully tried to verdict.

    d. <u>Ongoing employment class actions in California state courts.</u> I also represent plaintiffs asserting employment-related claims in class actions in California state court: *Olson v. Lyft, Inc.*, CGC-18-566788 (San Francisco Super. Ct.) (Lyft driver misclassification); *Borrego v. Raley's Family of Fine Stores*, 34-2015-00177687 (Sacramento Co. Super. Ct.) (pregnancy discrimination); *Chen v. Morgan Stanley Smith Barney LLC*, 30-2014-00724866-CU-OE-CJC (Orange Co. Super. Ct.) (PAGA claims on behalf of Financial Advisors regarding reimbursement of business expenses); *Lee v. The Hertz Corp.*, No. CGC-15-547520 (San Francisco Co. Super. Ct.) (Fair Credit Reporting Act claims based on employment application process); *Beilke v. Uber Technologies, Inc.*, No. CGC-17-560916 (San Francisco Co. Super. Ct.) (claims by drivers for miscalculation of fees contractually owed).

   11. During my career, I have represented plaintiff classes and collectives in many employment class actions.

    a. <u>Past wage and hour class actions in this District.</u> In the past, I have successfully represented plaintiff classes in other wage and hour class and/or collective actions in this District, including: *Zamora v. Lyft, Inc.*, No. 16-cv-02558-VC (N.D. Cal.) ($1,950,000 settlement for claims of drivers asserting that Lyft used deceptive language in explaining how Prime Time Premiums would be paid to drivers; Lyft eliminated the challenged language during the litigation); *Walton v. AT&T Svcs., Inc.*, No. 15-cv-03653-VC (N.D. Cal.) ($2,750,000 settlement for overtime misclassification claims of deliverers and designers of corporate trainings in 2018); *Brown v. Permanente Medical Group, Inc.*, No. 16-cv-05272-VC (N.D. Cal.) ($6,255,000 settlement for off-the-clock claims of advice nurses in 2017); *Zajonc v. Morgan Stanley & Co. LLC*, No. 14 Civ. 5563 (N.D. Cal.) ($5,995,000 settlement as part of multi-case settlement) (Final Analyst trainee off-the-

clock wage and hour claims); *Zaborowski v. MHN Gov't Servs.*, No. 12 Civ. 5102 (N.D. Cal.) (FLSA

conditional collective action certification granted; arbitration motion defeated and affirmed on appeal,

601 F. App'x 461 (9th Cir. 2014); settled on nationwide class basis) (military base counselor

independent contractor misclassification claims); *Buccellato v. AT&T, Inc.*, No. 10 Civ. 463 LHK

(N.D. Cal.) ($12.5 million settlement of overtime misclassification claims for technical support

workers in 2011); *Lewis v. Wells Fargo & Co.*, No. 08 Civ. 2670 CW (N.D. Cal.) ($6.72 million

settlement for overtime misclassification claims for technical support workers in 2011); *Higazi v.*

*Cadence Design Systems, Inc.*, No. 07 Civ. 2813 JW (N.D. Cal.) ($7.7 million settlement overtime

misclassification claims for technical support workers in 2008); *Adams v. Inter-Con Security*

*Services, Inc.*, No. 06 Civ. 5428 MHP (N.D. Cal.) ($4 million settlement of wage and hour off-the-

clock work class and collective action on behalf of security officers in 2008); *Rosenburg v. Int'l Bus.*

*Machines Corp.*, No. 06 Civ. 430 SBA (N.D. Cal.) ($65 million settlement in 2007 for overtime

misclassification claims for technical support workers); *Gerlach v. Wells Fargo & Co.*, No. 05 Civ.

585 CW (N.D. Cal.) ($12.8 million settlement in 2007 for overtime misclassification claims for

business systems consultants).

   b. <u>Past discrimination class actions in this District.</u> In the past, I have represented

plaintiff classes in employment discrimination class actions, including: *Wynne v. McCormick &*

*Schmick's Seafood Restaurants, Inc.*, No. 06 Civ. 3153 CW (N.D. Cal.) ($2.1 million settlement of

race discrimination class action in 2008); *Gonzalez v. Abercrombie & Fitch Stores, Inc.*, Case No. 03

Civ. 2817 SI (N.D. Cal.) ($50 million settlement of race and gender discrimination class action in

2005).

   c. <u>Past wage and hour cases outside this District.</u> I have also successfully

represented plaintiff classes in other wage and hour class and/or collective actions in other federal and

state courts, including: *Bush v. GlobalTranz Enterprises, Inc.*, No. 15-cv-0536-DJH (D. Ariz.)

($640,000 settlement for inside salespeople's misclassification claims); *Lillehagen v. Alorica, Inc.*,

No. 13 Civ. 92 (C.D. Cal.) (nationwide class action settlement) (call center worker off-the-clock

claims); *Sherrill v. Premera Blue Cross*, No. 10 Civ. 590 (W.D. Wash.) ($1.45 million settlement in

2011 for 133 class members in overtime misclassification case); *Danieli v. Int'l Bus. Machines Corp.*, No. 08 Civ. 3688 (S.D.N.Y.) ($7.5 million settlement of overtime misclassification claims in 2010); *In re Farmers Ins. Group Claims Reps. Overtime Litigation*, MDL Docket No. 1439 (D. Or.) ($8 million settlement of overtime misclassification class and collective action on behalf of insurance claims adjusters in 2010); *Giannetto v. CSC Corp.*, No. 03 Civ. 8201 (C.D. Cal.) ($24.0 million settlement in 2005 for overtime misclassification claims); *Barnett v. Wal-Mart*, No. 01-2-24553-8 (King Cty. Sup. Ct.) ($35 million settlement of wage and hour off-the-clock class action in 2009).

        12.     In addition, I have represented plaintiffs in various appeals.

        a.     I have represented plaintiffs at oral argument in *Marsh v. J. Alexander's LLC*, No. 15-15791 (9th Cir. en banc 2018) (validity of DOL's 20% rule from Field Operations Handbook, interpreting 29 C.F.R. § 531.56e (dual jobs regulation)); *Guess?, Inc. v. Russell*, No. 15-56870 (9th Cir. 2017) (delegation of class arbitrability to the arbitrator); *Zaborowski v. MHN Government Services, Inc.*, No. 13-15671 (9th Cir. 2014) (unconscionability analysis of arbitration clause); *Taragan v. Nissan North America, Inc.*, No. 11-15664 (9th Cir. 2012) (consumer deception regarding defective automobile design); *Degelmann v. Advanced Medical Optics Inc.*, No. 10-15222 (9th Cir. 2011-12) (medical device preemption); *Integon Corp. v. Gordon*, No. 1D05-3187 (Fla. 1st DCA 2007) (class certification of consumer claims asserting insurance pricing deception).

        b.     I have also volunteered to write amicus briefs in the Ninth Circuit and other appellate courts, including:  *Meyer v. Kalanick*, No. 16-2750 (2d Cir. 2016) (internet contract formation); *Braun v. Wal-Mart Stores, Inc.*, No. 32 EAP 2012 (S. Ct. Pa. 2013) (plaintiffs' class action trial victory upheld by Pennsylvania's highest court); *Mazza v. American Honda Motor Co.*, No. 09-55376 (9th Cir. 2012) (consumer class action choice-of-law issues); *DeLodder v. Aerotek, Inc.*, No. 10-56755 (9th Cir. 2011) (Rule 23 class certification of overtime misclassification case); *Gutierrez v. Johnson & Johnson*, No. 07-8025 (3rd Cir. 2007) (employment discrimination class action); *Ledbetter v. The Goodyear Tire & Rubber Co.*, No. 05-1074 (U.S. S. Ct. 2006) (employment discrimination); *Dukes v. Wal-Mart Stores, Inc.*, Nos. 04-16688 & 04-16720 (9th Cir. 2005) (employment discrimination class action).

13.     In addition to being an active litigator, I have been involved in many educational and legal groups, including the American Constitution Society (Chair of the Executive Board of the Bay Area Lawyer Chapter, 2009-11; member of the Bay Area Lawyer Chapter Advisory Board 2014-present); Alliance for Justice (board of directors, 2014-present); Public Advocates, Inc. (board of governors, 2012-15); the American Civil Liberties Union of Northern California (2006-11) (Chair of the Legal Committee, 2010-11; Vice Chair, 2010-11; Executive Committee, 2009-11); the American Bar Association Labor & Employment Law Section; the State Bar of California (Litigation Section Executive Committee); the National Employment Lawyers Association; the American Association for Justice; the Consumer Attorneys of California; and the Bar Association of San Francisco (volunteer attorney fee dispute arbitrator).

14.     I have also received several awards, including being named one of the Top 75 Labor & Employment Lawyers in California by *The Daily Journal* in 2015-17; Top 100 in the *Super Lawyers* Top Lists of California lawyers in all fields from 2015-2017; a "Super Lawyer" from 2014-17 and a "Northern California Rising Star" in 2009, 2010, and 2011 by *Super Lawyers*; being named one of *The Daily Journal's* "Top 20 California Lawyers Under 40" in January 2011; and receiving the "2008 Community Justice Award," from Centro Legal de la Raza for my work on behalf of the class in the *Gonzalez v. Abercrombie & Fitch Stores, Inc.* race and gender discrimination class action.

### Rachel Bien's Background and Experience

15.     Ms. Bien is a partner at O&G, a co-chair of its Class Action Practice Group, and is also one of the attorneys principally responsible for prosecuting this case.  Prior to joining the firm in October 2006, Ms. Bien served as a judicial clerk for the Honorable Thomas G. Nelson of the Ninth Circuit Court of Appeals.  Ms. Bien received her J.D. *cum laude* from Brooklyn Law School in 2005. She is a member of the American Bar Association's Labor and Employment Law Section, the National Employment Lawyers Association ("NELA"), and NELA's California Chapter.  Ms. Bien was lead or co-lead counsel on several wage and hour cases that district courts have certified as class actions and/or collective actions including *Behzadi v. International Creative Management Partners, LLC*, No. 14 Civ. 4382, 2015 WL 4210906 (S.D.N.Y. July 9, 2015) (certifying class and collective of

unpaid interns and approving settlement of wage and hour class action brought under New York and federal law); *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014) (same); *Capsolas v. Pasta Resources Inc.*, No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012) (certifying class of restaurant workers and approving settlement of wage and hour class action brought under New York and federal law); *Toure v. Amerigroup New York LLC*, No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) (certifying class of Marketing Representatives and approving classwide settlement).

### **Michael J. Scimone's Background and Experience**

16.     Mr. Scimone is an associate at O&G.  He joined O&G after receiving his J.D. from CUNY School of Law in 2009.  He is a member of the American Bar Association's Labor and Employment Law Section, the National Employment Lawyers Association ("NELA"), NELA's New York Chapter, the National Lawyers' Guild, and the Sedona Conference Working Group 1.  Mr. Scimone has been involved in prosecuting several wage and hour cases that district courts have certified as class actions and/or collective actions including *Strauch v. Computer Scis. Corp.*, 322 F.R.D. 157 (D. Conn. 2017) (certifying class of System Administrators); *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *1 (E.D.N.Y. Sept. 16, 2014) (certifying class of no-fault insurance Adjusters); *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408 (S.D.N.Y. 2013), *on reconsideration in part*, 293 F.R.D. 578 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015) (certifying class of retail Assistant Store Managers); and *Toure v. Amerigroup New York LLC*, No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) (certifying class of Marketing Representatives and approving classwide settlement).

### **The Litigation**

17.     This litigation has been ongoing since 2016.  On May 11, 2016, named plaintiffs Alex Zamora and Rayshon Clark ("Plaintiffs") filed a complaint alleging that Lyft unlawfully withheld "Prime Time Premium" payments to Plaintiffs and putative class members who drive for Lyft.  ECF No. 1.  Based on Lyft's records, there are approximately 245,975 Class Members.

DECLARATION OF JAHAN C. SAGAFI ISO PLS.'
MOTIONS FOR FEES, COSTS, AND SERVICE AWARDS,
CASE NO. 16-CV-02558-VC

18.     Prior to the start and throughout this litigation, O&G engaged in an extensive investigation of Plaintiffs' claims, thoroughly probing the factual basis for the allegations and defenses.  O&G interviewed drivers, researched and collected information about Lyft's representations about its Prime Time policies, and conducted legal research into the California state law claims.

19.     The parties have engaged in meaningful discovery.  Lyft produced data to enable Plaintiffs to analyze the damages, as well as its policies, communications, and other documents concerning Prime Time.

20.     The parties vigorously litigated this case.  On September 1, 2016, Lyft moved to dismiss several claims, which the Court granted in part, and denied in part, and granted Plaintiffs leave to replead.  ECF No. 40.  In November 2017, Lyft moved to strike claims subject to arbitration, which Plaintiffs opposed, ECF Nos. 66, 72, 77, and to strike the nationwide claims.  ECF No. 64.  On December 1, 2017, the Court approved a stipulation under which Lyft withdrew its motion to strike the nationwide claims and Plaintiffs filed a Third Amended Complaint limiting the class to drivers who worked in California.  ECF Nos. 68, 68-1, and 69.  These motions required significant time and effort meeting and conferring with defense counsel, conducting legal research, and preparing briefs.

21.     Lyft entered into arbitration agreements with their drivers, which were amended to permit drivers to opt out of arbitrating claims based on an alleged employment relationship and between Lyft and the driver or related to Lyft's commissions on fares, yet we understand that only a few hundred drivers in California have attempted to do so.

**The Mediation and Settlement**

22.     O&G attended a full day of mediation with Lyft on February 1, 2017, facilitated by experienced mediator Mark Rudy.

23.     I have represented employment class action plaintiffs in approximately twenty mediations before various mediators, a few of which have been before Mr. Rudy.  Mr. Rudy has a stellar reputation among plaintiffs' and defense counsel for being an expert in substantive and procedural aspects of employment law.  He has earned this reputation by carefully preparing for each

DECLARATION OF JAHAN C. SAGAFI ISO PLS.'
MOTIONS FOR FEES, COSTS, AND SERVICE AWARDS,
CASE NO. 16-CV-02558-VC

mediation by mastering the facts and legal issues, staying abreast of developments in employment law, and tirelessly pursuing every angle for settlement, including diligent, tenacious follow-up with the parties after mediation.  I find that Mr. Rudy is always prepared, focused, and effective, which is not something one can take for granted with even well-known mediators.

24.     Before the mediation, O&G prepared a statement that set out extensive evidence detailing Lyft's policies and practices and their effect on potential class members, offered a detailed analysis of the evidence and data, thoroughly analyzed the relevant legal issues, and provided damages calculations.  Lyft also provided a detailed mediation statement for our review on its defenses and legal theories.  The parties were unable to reach a resolution and continued to negotiate with the assistance of Mr. Rudy for several months while litigation proceeded.  The terms of the parties' agreement following those negotiations are contained in the settlement agreement, attached as **Exhibit C** to this Declaration.

25.     The extensive investigation and discovery in this matter, as well as the mediation, have given me, and the other attorneys of the O&G legal team, ample opportunity to assess the strengths and weaknesses of the claims against Lyft and the benefits of the settlement under the circumstances of this case.  Although I believe that Plaintiffs have a strong chance of proceeding on a class basis, that Plaintiffs have a strong chance of prevailing on the merits, and that Plaintiffs have a strong chance of proving substantial damages, each of those hurdles presents significant risk.  These risks include the possibility that the case, if not resolved now, might result in no recovery, lesser recovery, and/or significantly delayed recovery, which would be less favorable to Plaintiffs and class members than the terms offered by this settlement.

26.     Further, even if there was a strong chance that the Court would certify the misclassification issue, Lyft has argued in this case that certification of the Prime Time Premium claim would not be appropriate because customers received different messages and had varying understandings about the Prime Time Premiums during the class period.

27.     According to Lyft's data, if Plaintiffs were able to prevail on the Prime Time Premium claims, Lyft would owe approximately $11,515,389 in unrefunded commissions – to all Class

Members, most of whom agreed to Lyft's arbitration policy.  However, the vast majority of this value is recoverable only (a) under a consumer theory, in individual arbitrations, or (b) under an employment theory (also in individual arbitrations, assuming the Supreme Court reverses the Ninth Circuit's *Morris* decision).

28.     The average gross recovery per Class Member is $7.93 ($1,950,000 ÷ 245,975 drivers); assuming the claims rate is 10%, the average gross recovery will be approximately $79.28 per Class Member.

29.     The settlement provides for a fair and efficient allocation of payment to class members according to a points formula based on the amount of unrefunded commissions the class member earned for Prime Time Rides during various phases of the class period, as well as the total number of rides driven.  Per the allocation formula in the settlement agreement, class members earn more points during the first time period (up through March 16, 2015) because of the wording and placement of Prime Time Premium language on riders' Apps, which render the claim stronger during this period than in later periods.  After September 30, 2016, Lyft changed its arbitration agreement, allowing drivers thirty days to opt out.  Thus, the allocation for the third period reflects the greater risk of these claims.  Finally, the multiplier for drivers who provided substantially more rides reflects the greater strength of their misclassification claims vis-à-vis drivers who provided fewer rides.

30.     Pursuant to the settlement agreement, notice of the settlement will be sent to class members via email, unless the email bounces back, in which case the notice will be sent to the class member by mail.  It is my understanding that this method was used effectively in the *Cotter* case.

31.     To provide administrative support to the settlement process, O&G sought bids from several settlement administrators before selecting Rust Consulting, Inc. ("Rust"), a claims administrator with significant expertise and experience.  Rust's bid was substantially lower than those of its competitors.

32.     Plaintiffs moved for preliminary approval of the settlement on March 28, 2018.  ECF No. 85.  After a hearing on the motion, the Court granted Plaintiffs' motion.  ECF No. 90.

**The Named Plaintiffs**

33.     The two individual named plaintiffs have provided substantial value to the class to justify the requested service awards.  They engaged Class Counsel to investigate whether Lyft had violated the law with respect to its policy of receiving a portion of drivers' Prime Time Premiums, and throughout the litigation, maintained a close and productive relationship with Class Counsel and each other.  Both were integral to the litigation, in that they participated in discussions with Class Counsel and each other to guide us in our understanding of Lyft's policies and practices, so that we could make better decisions about the contours of the case, documents and information to seek in discovery, and other legal strategy issues.  Furthermore, both Plaintiffs faced potential retaliation by Lyft and other employers based on being publicly associated with the case.  Based on my experience, fear of the publicity resulting from serving as a named Plaintiff is far and away the primary reason people whose rights have been violated decide not to sue their employer.

**Class Counsel's Lodestar**

34.     O&G have invested substantial time and maintained significant expenses to prosecute this case.  O&G's lodestar as of July 31, 2018 was $730,678.50.

35.     As of July 31, 2018, O&G has devoted over 3,500 hours to the prosecution of this action.  By the time this Fees Motion is heard, these figures will have increased due to additional work performed by Class Counsel for the Class Members' benefit.

36.     In my experience, implementing class settlements of this nature requires a substantial and ongoing commitment.  Class Counsel will continue to invest time and incur costs over the next several months as the legal team communicates with class members regarding the settlement, prepares for and attends the hearing on settlement approval, and monitors the implementation of the settlement.  Thus, the time and costs expended in this case will continue to grow.

37.     The requested fee currently results in a lodestar multiplier of 0.89x, meaning that Class Counsel will receive less than their hourly rate for each hour worked.  This already low figure will only decrease in the coming months as Class Counsel continue to perform work for the Class.  Class Counsel do not request reimbursement for those further fees.

38.     O&G made every effort to have work performed by the attorney or paralegal with the lowest hourly rate that was able to perform the work effectively.

39.     O&G ordinarily and regularly bills clients on an hourly fee basis, based upon each attorney's standard hourly rate.  Currently, O&G's rates range from $550 to $1,200 per partner's hour, $650 to $900 per counsel's hours, $290 to $500 per associate's hour, $280 to $600 per staff or contract attorney's hour, $245 per law clerk's hour, and $240 to $285 per paralegal's hour.  The firm's clients regularly accept and pay O&G's hourly rates.

40.     The rates are commensurate with those prevailing in the applicable market for attorneys with comparable skill and experience litigating complex wage and hour class and collective actions.

41.     Prosecution of this litigation precluded Class Counsel from accepting other fee-generating matters, with this litigation consuming significant percentages of Class Counsel's attorney and staff time.

42.     Attached as **Exhibit A** are summaries of the time spent by each attorney, paralegal, and support staff member as of July 31, 2018.

## Class Counsel's Costs

43.     As of July 31, 2018, O&G has paid approximately $18,273.51 in out-of-pocket costs and will incur additional costs through the conclusion of this matter.  These costs include discovery costs, filing fees, payment to the mediator, photocopying, telephone conference calls, mailing expenses, travel, and other reasonable litigation-related costs.  All of these costs were necessary in connection with the prosecution of this litigation and were incurred for the benefit of the Class.  We anticipate that these costs will not exceed $25,000.00.

44.     Attached as **Exhibit B** is a true and correct summary of the costs incurred in this matter.  O&G has not received any reimbursement for any of the monies expended.

## Risks of Representation

45.     This matter has required Class Counsel to expend substantial time that could have been spent on other fee-generating matters.  We took this matter on a pure contingency basis,

expending this effort without any guarantee of recovery.  At various times, the litigation has consumed a significant percentage of my time, my attorney colleagues' time, and my staff's time.

46.     There is no shortage of hourly work at O&G.  Thus, when O&G lawyers spend time on contingency matters, they do so at significant opportunity cost for the firm.  Based upon O&G's records, as of October 31, 2017, approximately 27% of the hours lawyers spent on client matters this year were billed to paying clients.  O&G frequently turns away hourly matters, including hourly litigation matters, in order to enable its attorneys to work on contingency matters, primarily (though not exclusively) class actions.

47.     Because we constantly decline to represent workers with valid legal claims – who might pay hourly or retain us on a contingency basis – there is a significant opportunity cost to each class action we pursue.  Class Counsel undertook representation of plaintiffs in this action without any assurance of payment for its services, litigating the case on a wholly contingent basis in the face of significant risk.  Class wage and hour cases of this type are, by their very nature, complicated and time-consuming.  Any lawyer undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  Sometimes these cases result in a recovery for the class, and sometimes they do not, in which case we are paid nothing for our time and costs incurred.

48.     For example, we have invested millions of dollars of time and hundreds of thousands of dollars of expenses with no reimbursement in cases with no recovery.  *See, e.g.*, *Benedict v. Hewlett-Packard Co.*, No. 13 Civ. 119 (N.D. Cal.) (technical support worker exemption misclassification claims); *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (2013); *Pippins v. KPMG LLP*, No. 11 Civ. 377, 2012 WL 6968332 (S.D.N.Y. Nov. 30, 2012).

*          *          *

1    I declare, under penalty of perjury, under the laws of the State of California that the foregoing

2 is true and correct.  Executed this 3rd day of August 2018 at San Francisco, California.

Jahan C. Sagafi