1  JAHAN C. SAGAFI (CAL. BAR NO. 227887)
   jsagafi@outtengolden.com
2  RELIC SUN (Cal. Bar No. 306701)
   rsun@outtengolden.com
3  OUTTEN & GOLDEN LLP
   One Embarcadero Center, 38th Floor
4  San Francisco, California 94111
   Telephone: (415) 638-8800
5  Facsimile: (415) 638-8810

6  RACHEL BIEN (Cal. Bar No. 315886)
   rmb@outtengolden.com
7  MICHAEL J. SCIMONE (admitted *pro hac vice*)
   mscimone@outtengolden.com
8  OUTTEN & GOLDEN LLP
   685 Third Avenue, 25th Floor
9  New York, New York 10017
   Telephone: (212) 245-1000
10 Facsimile: (646) 509-2060

11 Attorneys for Plaintiffs and Proposed Class Members

12 KEKER, VAN NEST & PETERS LLP
13 RACHEL E. MENY - # 178514
   rmeny@keker.com
14 SIMONA A. AGNOLUCCI - # 246943
   sagnolucci@keker.com
15 JAY RAPAPORT - #281964
   jrapaport@keker.com
16 633 Battery Street
   San Francisco, CA 94111-1809
17 Telephone:  (415) 391-5400
   Facsimile:  (415) 397-7188
18
19 Attorneys for Defendant LYFT, INC.

20                    UNITED STATES DISTRICT COURT

21                   NORTHERN DISTRICT OF CALIFORNIA

22                      SAN FRANCISCO DIVISION

23

24 ALEX ZAMORA and RAYSHON CLARK on behalf  ) Case No. 3:16-cv-02558-VC
   of themselves and all those similarly situated,  )
25                                                    )
                                                      )
26              Plaintiffs,                            ) **DECLARATION OF AMY TADEWALD**
                                                      ) **FOR RUST CONSULTING, INC.**
27      v.                                            )
                                                      )
   LYFT, INC.,                                        )
28                                                    )
                Defendant.                            )
                                                      )

I, Amy Tadewald, declare as follows:

1.      I am a Senior Project Manager for Rust Consulting, Inc. ("Rust").  My business address is 625 Marquette Avenue, Suite 900, Minneapolis, Minnesota 55402-2469.  My telephone number is (612) 359-2031.  I am over twenty-one years of age and am authorized to make this declaration on behalf of Rust and myself.

2.      Rust has extensive experience in class action matters, having provided services in class action settlements involving antitrust, securities fraud, property damage, employment discrimination, employment wage and hour, product liability, insurance and consumer issues.  We have provided notification and/or claims administration services in more than 6,000 cases.  Of these, more than 2,300 were Labor & Employment cases.

3.      Rust was engaged by Counsel for the Plaintiffs and Counsel for the Defendants (collectively the "Parties") to provide notification services in the *Alex Zamora, et al. v. Lyft, Inc.* Settlement ("Settlement").  Duties included: a) preparing, formatting and emailing the *Notice of Settlement of Class Action* ("Class Notice"); b) creating and maintaining a Settlement website; c) receiving and reviewing electronic and paper Claim Forms; c) tracking of requests for exclusion, objections and disputes; d) drafting and mailing Settlement Payment checks; e) for such other tasks as the Parties mutually agree or the Court orders Rust to perform.

4.      A website was created and a web address was included in the Class Notice for Class Members to submit electronic Claim Forms, view, download and/or print the Notice and Claim Form, and obtain information about the proposed Settlement.  The web address included in the Class Notice was www.lyftclassactionsettlement.com.  Attached as Exhibit A is a true and correct copy of the Claim Form and Notice.

5.      An email address was included in the Class Notice for receiving paper Claim Forms, requests for exclusion and other communications about the proposed Settlement.  The email address included in the Class Notice was info@lyftclassactionsettlement.com.

6.      Rust obtained a mailing address of Lyft Class Action Settlement Settlement Administrator, c/o Rust Consulting, Inc. –6069, P.O. Box 54, Minneapolis, Minnesota 55440-0054·

DECLARATION AMY TADEWALD FOR RUST CONSULTING, INC.

to receive paper Claim Forms, requests for exclusions, objections, undeliverable Class Notices and other communications regarding the Settlement.

7.      Rust obtained a toll-free telephone number of (877) 310-0486 for Class Members to call with questions regarding the Settlement.

8.      On or about May 16, 2018, Rust received text for the Class Notice from Counsel. A draft of the formatted Class Notice and Claim Form were prepared by Rust and approved by the Parties.

9.      On or about June 11, 2018, Counsel for the Defendant provided Rust with an electronic list containing Class Member's names, last known addresses, email addresses and applicable Ride, Prime Time Ride, and unrefunded commissions during the Settlement Class Period ("Class List").  The Class List contained data for 245,976 potential Class Members.

10.     On June 25, 2018, Class Notices were emailed to 245,976 Class Members contained in the Class List.  The Class Notice advised Class Members that they could submit a Claim Form, request for exclusion, and/or objection postmarked by September 20, 2018.

11.     As of this date, 3,484 emailed Class Notices have been returned as undeliverable.

12.     On July 20, 2018, Class Notices were mailed to the 3,484 Class Members whose emailed Notices were returned as undeliverable via First Class Mail.

13.     As of this date, 183 Class Notices sent via First Class Mail have returned as undeliverable.

14.     As of this date, 16 Class Notices were returned by the Post Office with forwarding addresses attached.  Rust promptly re-mailed Class Notices to those Class Members via First Class mail.

15.     As of this date, Rust has received 12,948 Claim Forms and three (3) requests for exclusion.

16.     As of this date, Rust received has not received any objections.

17.     The cost for the administration of this Settlement to date is $40,040.61.

DECLARATION AMY TADEWALD FOR RUST CONSULTING, INC.

1   I declare under penalty of perjury under the laws of the State of California and the United States

2   that the above is true and correct to the best of my knowledge and that this Declaration was

3   executed this 2nd day of August 2018, at Minneapolis, MN.

4

5                                                   AMY TADEWALD

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION AMY TADEWALD FOR RUST CONSULTING, INC.

# Exhibit A

LYFT CLASS ACTION SETTLEMENT
SETTLEMENT ADMINISTRATOR
C/O RUST CONSULTING INC – 6069
PO BOX 54
MINNEAPOLIS, MN 55440-0054

**IMPORTANT LEGAL MATERIALS**



| FOR OFFICIAL USE ONLY |
|:---:|
| 03 |

Page 1 of 1

## CLAIM FORM

*Alex Zamora, et al. v. Lyft, Inc.,*
**Case No. 3:13-cv-02558-VC**

### INSTRUCTIONS

**To qualify for a payment, you must submit a Claim Form, either electronically or by mail.**

To submit a claim electronically, go to **www.lyftclassactionsettlement.com/Submit-a-Claim-Form**.

Filing a Claim Form online will generate a confirmation number for your records.

To submit a claim by mail, you must sign this Claim Form and return it to:

Lyft Class Action Settlement
Settlement Administrator
C/O Rust Consulting, Inc.–6069
PO Box 54
Minneapolis, MN 55440-0054

**This Claim Form must be submitted electronically or postmarked for return to the Settlement Administrator no later than September 20, 2018.**

Claimant ID (found in your Notice): _____

Name: _____

Other Name(s) Used While Driving for Lyft: _____

Street Address: _____

City/State/Zip: _____

Home Telephone Number: ( ____ ____ ____ ) ____ ____ ____ - ____ ____ ____ ____

Email Address: _____

**Certification Under Oath:** I understand that by agreeing to this settlement I am releasing claims against Lyft that arise out of, are based on, or relate to unpaid Prime Time Premiums, the charging of commissions on Prime Time Premiums, or any other Prime Time Premium-related allegation included in this Action, including but not limited to claims under the federal Fair Labor Standards Act ("FLSA"). I understand that the claims being released are the Class Members' Released Claims as defined in Paragraph 21(f) of the Class Action Settlement Agreement and Release, which I can view at **www.lyftclassactionsettlement.com/Settlement-Agreement**.

By signing below, I consent to join the Settlement Class in *Zamora, et al. v. Lyft, Inc.* and receive my share of the settlement funds. I also agree to release all of my claims against Lyft that are covered by the Class Action Settlement Agreement and Release, including but not limited to claims under the FLSA.

Signature: _____    Date: _____

LYFT CLASS ACTION SETTLEMENT
SETTLEMENT ADMINISTRATOR
C/O RUST CONSULTING INC - 6069
PO BOX 54
MINNEAPOLIS MN 55440-0054

## IMPORTANT LEGAL MATERIALS

|||||||||||||||||||||||||||||||||||| - UAA - <<SequenceNo>>
* C L M N T   I D N O *

<<Name 1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address 1>>
<<Address2>>
<<City>> <<State>> <<Zip 10>>
<<CountryName>>

### U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

**If you used the Lyft smartphone application to give a ride to a passenger in California during a "Prime Time" period between August 18, 2014 and April 7, 2017, you could get a payment from a class action settlement.**

*A court authorized this notice. This is not a solicitation from a lawyer.*

- A lawsuit claims that Lyft, Inc. violated various laws and contract rights by charging commissions on drivers' "Prime Time" premiums. Lyft denies these allegations but has agreed to settle the lawsuit by paying $1,950,000 and changing how its product works.

- The Court in charge of this case still has to decide whether to approve the settlement. If it does, drivers who gave at least one ride in California during a "Prime Time" period between August 18, 2014 and April 7, 2017 may be eligible for payment from Lyft.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| Summary of Your Legal Rights and Options | |
|---|---|
| Submit a claim | **In order to receive a payment, you must submit a claim, which you can do electronically or by mail, as explained below in <u>paragraph 9</u>.** By submitting a claim, you give up your right to be part of another case against Lyft about the claims being resolved by this settlement. Submitting a claim will not affect your right to assert claims against Lyft arising after approval of this settlement, or to assert claims not resolved by this settlement. |
| Exclude yourself from the settlement | Get no payment. Keep your right to bring or join a case against Lyft about the claims being resolved by this settlement. |
| Object to the settlement | Write to the Court about why you don't like the settlement. You cannot object in order to ask the Court for a higher payment for yourself personally, although you can object to the payment terms (or any other terms) that apply generally to the class. |
| Go to a hearing | Follow the procedures below to ask to speak in Court about the fairness of the settlement. The Court will hold a hearing for the settlement to decide whether to approve it. |
| Do nothing | If you do nothing, you will not get a payment. **However, you will still release your claims that are covered by the settlement and give up your right to assert the claims being resolved by this settlement.** |

- These rights and options—and the deadlines to exercise them—are explained in this notice.

**Questions? Visit www.lyftclassactionsettlement.com or call (877) 310-0486.**
**Para una notificación en español, visite nuestro website.**

<u>What This Notice Contains</u>

**BASIC INFORMATION** ................................................................................................................ **3**
1.   WHY AM I RECEIVING THIS NOTICE? ......................................................................... 3
2.   WHAT IS THIS LAWSUIT ABOUT? .............................................................................. 3
3.   WHAT IS A CLASS ACTION AND WHO IS INVOLVED? ............................................... 3
4.   WHY IS THERE A SETTLEMENT? ............................................................................... 3

**WHO IS IN THE SETTLEMENT?** ............................................................................................... **3**
5.   WHO IS INCLUDED IN THE CLASS UNDER THE SETTLEMENT? ................................. 3

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ................................................................... **4**
6.   WHAT DOES THE SETTLEMENT PROVIDE? ................................................................ 4
7.   WHAT CAN I GET FROM THE SETTLEMENT? .............................................................. 4
8.   WHAT IF I DISAGREE WITH MY PAYMENT? ............................................................... 5

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM** ........................................................... **5**
9.   HOW CAN I GET A PAYMENT? ................................................................................... 5
10.  WHEN WOULD I GET MY PAYMENT? ......................................................................... 5
11.  WHAT AM I GIVING UP BY STAYING IN THE CLASS AND GETTING A PAYMENT? ....... 5

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................................................ **6**
12.  HOW DO I GET OUT OF THIS SETTLEMENT? .............................................................. 6
13.  IF I DON'T EXCLUDE MYSELF, CAN I SUE LYFT FOR THE SAME THING LATER? ......... 6
14.  IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THIS SETTLEMENT? ....................... 6

**THE LAWYERS REPRESENTING YOU** ..................................................................................... **6**
15.  DO I HAVE A LAWYER IN THIS CASE? ....................................................................... 6
16.  HOW WILL THE LAWYERS BE PAID? ARE THE CLASS REPRESENTATIVES BEING PAID? ............... 7

**OBJECTING TO THE SETTLEMENT** ........................................................................................ **7**
17.  HOW DO I TELL THE COURT THAT I DON'T LIKE THE SETTLEMENT? ......................... 7
18.  WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING? ......................... 7

**THE COURT'S FAIRNESS HEARING** ....................................................................................... **7**
19.  WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? .. 7
20.  DO I HAVE TO COME TO THE HEARING? .................................................................... 8
21.  MAY I SPEAK AT THE FAIRNESS HEARING? ............................................................... 8

**IF YOU DO NOTHING** .............................................................................................................. **8**
22.  WHAT HAPPENS IF I DO NOTHING AT ALL? .............................................................. 8

**GETTING MORE INFORMATION** ............................................................................................ **8**
23.  ARE THERE MORE DETAILS ABOUT THE SETTLEMENT? ............................................ 8
24.  HOW DO I GET MORE INFORMATION? ...................................................................... 8

Basic Information

### 1.   WHY AM I RECEIVING THIS NOTICE?

Lyft's records show that you used the Lyft smartphone application to give one or more rides to a passenger in California during a "Prime Time" period between August 18, 2014 and April 7, 2017.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves it and after any objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *Alex Zamora, et al. v. Lyft, Inc.*, Case No. 3:16-cv-02558-VC.

### 2.   WHAT IS THIS LAWSUIT ABOUT?

This lawsuit claims, generally, that Lyft improperly charged commissions on "Prime Time" premiums added to fares during periods of high demand and that, as a result of this, Lyft violated various laws and contracts. Lyft denies that it improperly charged commissions and has asserted various defenses to the claims.

The lawsuit also claims, generally, that Lyft improperly classified drivers who gave rides in California as independent contractors rather than employees and that as a result of this classification, Lyft violated various laws and regulations. Lyft denies these claims, argues that it complied with all applicable federal, state, and local laws and regulations at all times, and has asserted various defenses to these claims. These classification claims will not be resolved by the proposed settlement in this lawsuit.

### 3.   WHAT IS A CLASS ACTION AND WHO IS INVOLVED?

In a class action lawsuit, one or more people, called "Class Representatives," sue on behalf of themselves and others who have similar claims. All these people together are a "Class" or "Class Members." One court resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the Class. People who do not exclude themselves and remain in the Class may not file their own lawsuit on the issues that were resolved in the class action.

Here, the Class Representatives are current and/or former drivers who used the Lyft smartphone application to give rides to passengers in California. Their names are Alex Zamora and Rayshon Clark. These Class Representatives have sued the Defendant, Lyft, Inc., on behalf of themselves and other drivers who gave rides to passengers in California.

### 4.   WHY IS THERE A SETTLEMENT?

The Court did not decide in favor of the drivers or Lyft. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation and the benefits of changes to Lyft's product. The Class Representatives and their lawyers think the settlement is in the best interests of the Class because they believe that that the amount Lyft has agreed to pay, along with the changes Lyft has agreed to make to its product, is fair, adequate, and reasonable in light of the risks of continued litigation, and the time required to litigate the case.

Who Is in the Settlement?

### 5.   WHO IS INCLUDED IN THE CLASS UNDER THE SETTLEMENT?

All current and former drivers who gave at least one ride to a passenger in California during a Prime Time period between August 18, 2014 and April 7, 2017, for which Lyft has not refunded the amount of its commission on the Prime Time Premium, excluding "Lyft Line" rides and other rides where the Lyft mobile smartphone application did not display a Prime Time "pop-up" of the type alleged in this case.

The Settlement Benefits—What You Get

| 6.   WHAT DOES THE SETTLEMENT PROVIDE? |

Lyft has agreed to pay money to Class Members and change its product:

- Lyft has agreed to create a settlement fund of $1,950,000.00 for payments by Lyft to Class Members who file a claim and the following: (1) the costs of providing notice to the Class (such as this document) and administering the settlement, and (2) the lawyers' fees, expenses, and Service Awards approved by the Court (see Question 16 for more details on these payments). The remaining amount in the settlement fund, called the "Net Settlement Fund," will then be distributed to Class Members who make a valid claim, as described in Question 7.

- Lyft has modified its product so that it does not tell passengers that a Prime Time premium is added to the ride total "for the driver" or goes "to the driver." Lyft has agreed not to use "to your driver," "for the driver," or comparable language when describing Prime Time premiums in its product in the future.

| 7.   WHAT CAN I GET FROM THE SETTLEMENT? |

Payments to Class Members who submit valid claims (see Question 9) will be made based on each such Class Member's share of the "Net Settlement Fund." A Class Member's share will be determined by the number of "Points" awarded to the Class Member.

The settlement awards Points based on Lyft's records as to the number of Prime Time Rides a Class Member gave between August 18, 2014 and April 7, 2017. These Points do not have a value fixed at any particular dollar amount; they vary depending on how many people make a claim for a share of the settlement. For the purposes of calculating points, the settlement defines a ride as beginning when a driver uses the Lyft smartphone application to accept a transportation request from a passenger and ending when a driver selects the "drop off" option in the Lyft smartphone application. A Prime Time Ride is a ride that occurred when Prime Time pricing was in effect, excluding "Lyft Line" rides and other rides where the Lyft mobile smartphone application did not display a Prime Time "pop-up" of the type alleged in this case.

Points will be awarded as follows:

- Six hundred (600) points for each dollar of unrefunded commissions on Prime Time Rides given from August 18, 2014 through March 16, 2015;

- Two hundred (200) points for each dollar of unrefunded commissions on Prime Time Rides given from March 17, 2015 through October 30, 2016; and

- One (100) points for each dollar of unrefunded commissions on Prime Time Rides given from October 31, 2016 through April 7, 2017.

The point awards will also be multiplied as follows:

- Class members who submit valid claims and gave 400 to 999 rides between August 18, 2014 and April 7, 2017 will have their points doubled (i.e., multiplied by 2).

- Class Members who submit valid claims and gave 1,000 or more rides between August 18, 2014 and April 7, 2017 will have their points tripled (i.e., multiplied by 3).

After Points are awarded to all Class Members submitting valid claims, the Net Settlement Fund will be divided among those Class Members in proportion to each Class Member's Points. The exact amount each such Class Member will receive cannot be calculated until (1) the Court approves the settlement; (2) amounts are deducted from the settlement fund for the costs of providing notice to the Class, administering the settlement, paying lawyers' fees and expenses, and making Service Awards approved by the Court; and (3) the Settlement Administrator determines the number of Class Members who excluded themselves, submitted valid claims, and after payments are made, successfully received their payment.

## 8.   WHAT IF I DISAGREE WITH MY PAYMENT?

If you submit a timely claim form and if the Court grants final approval of the settlement, you will receive a check with information from the Settlement Administrator explaining how your payment was calculated. If you believe that your payment was calculated incorrectly, you must promptly inform the Settlement Administrator and explain the basis for your belief. Information on how to do this will be included in the information you receive with your check. The Settlement Administrator, with input from Class Counsel and Lyft, will review your submission and determine whether your payment should be corrected.

How You Get a Payment—Submitting a Claim

## 9.   HOW CAN I GET A PAYMENT?

To qualify for payment, you must submit a claim, either electronically or by mail.

To submit a claim electronically, go to **www.lyftclassactionsettlement.com/Submit-a-Claim-Form** and enter your Claimant ID, provided below.

> Claimant ID: <<rustid>>

> To submit a claim by mail, go to **www.lyftclassactionsettlement.com/Download-a-Claim-Form** to print out a claim form.

**In order to receive a monetary payment from this settlement, your claim form must be submitted electronically or postmarked no later than September 20, 2018.**

You must inform the Settlement Administrator of any change in your address which was listed on the outside of the envelope containing this notice or at the top of the email containing this notice. You may update your address with the Settlement Administrator by submitting your former and current addresses to:

> Lyft Class Action Settlement
> Settlement Administrator
> C/O Rust Consulting, Inc.—6069
> PO Box 54
> Minneapolis, MN 55440-0054

You can also submit your address information via email to **info@lyftclassactionsettlement.com**.

Please include your Claimant ID on any correspondence sent to the Settlement Administrator.

**If you do not keep your address current, your settlement payment may be delayed and it is possible that you will not receive your settlement payment.**

## 10. WHEN WOULD I GET MY PAYMENT?

The Court will hold a hearing on September 20, 2018, to decide whether to approve the settlement. If the Court approves the settlement after that, it is anticipated that you would receive your payment in the first quarter of 2019. However, if there are appeals, it may take time to resolve them, perhaps more than a year. You can obtain information on the progress of the settlement on the website. Please be patient.

## 11. WHAT AM I GIVING UP BY STAYING IN THE CLASS AND GETTING A PAYMENT?

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against Lyft about the legal issues resolved by this settlement. It also means that all of the Court's orders will apply to you and legally bind you. If you submit a claim, you will agree to a "Release of Claims," available online as part of the claim submission process, which describes the exact legal claims that you give up if you do not exclude yourself. Submitting a claim will not affect your right to assert claims against Lyft arising after the approval of this settlement.

<u>Excluding Yourself from the Settlement</u>

If you don't want a payment from this settlement, but you want keep the right to sue or continue to sue Lyft, on your own, about the legal issues resolved by this settlement, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

## 12. HOW DO I GET OUT OF THIS SETTLEMENT?

To exclude yourself from the settlement, you must send a letter by mail, **postmarked on or before August 24, 2018**, to the Settlement Administrator at the following address:

> Lyft Class Action Settlement
> Settlement Administrator
> C/O Rust Consulting, Inc.—6069
> PO Box 54
> Minneapolis, MN 55440-0054

Your letter must contain: (1) a clear statement that you wish to be excluded from this case, *Zamora v. Lyft*, (2) your name (and former names, if any), address, and telephone number; (3) your signature (or the signature of your legally authorized representative).

If, before the deadline, you request to be excluded from the settlement, you will not receive any payment under the settlement and you will not be bound by anything that happens in this case. However, if the settlement is finally approved, the settlement will prohibit you from making certain further claims under the California Labor Code Private Attorneys General Act of 2004 (also called "PAGA"), regardless of whether you ask to be excluded.

## 13. IF I DON'T EXCLUDE MYSELF, CAN I SUE LYFT FOR THE SAME THING LATER?

Unless you exclude yourself, you give up the right to sue Lyft for the claims that this settlement resolves. However, not excluding yourself will not affect your right to assert claims against Lyft arising after the approval of this settlement. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You may have to exclude yourself from this Class to continue your own lawsuit. **Remember, the exclusion deadline is August 24, 2018.**

## 14. IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THIS SETTLEMENT?

No. If you exclude yourself, do not submit a claim to ask for any money. However, you may sue, continue to sue, or be part of a different lawsuit against Lyft.

<u>The Lawyers Representing You</u>

## 15. DO I HAVE A LAWYER IN THIS CASE?

You do not need to hire your own lawyer. The Court has decided that the interests of the Class, including you if you do not exclude yourself, are represented by these lawyers:

> Jahan C. Sagafi
> Rachel Bien
> OUTTEN & GOLDEN LLP
> One Embarcadero Center, 38th Floor
> San Francisco, CA 94111
> Telephone: (415) 638-8800
> Facsimile: (415) 638-8810
> Email: lyftdriversettlement@outtengolden.com

You and other Class Members will not be separately charged for these lawyers, who are referred to as "Class Counsel." If you want to be represented by your own lawyer, you may hire one at your own expense.

**16. HOW WILL THE LAWYERS BE PAID? ARE THE CLASS REPRESENTATIVES BEING PAID?**

Class Counsel will ask the Court for attorneys' fees up to one-third of the settlement fund ($650,000), plus their reasonable out-of-pocket costs. Class Counsel also will ask for a Service Award of up to $10,000 each for Alex Zamora and Rayshon Clark for their services as the Class Representatives and for their efforts in bringing this case. The Court will decide whether to approve Class Counsel's and the Class Representatives' requests.

### Objecting to the Settlement

You can tell the Court that you don't agree with the settlement or some part of it.

**17.  HOW DO I TELL THE COURT THAT I DON'T LIKE THE SETTLEMENT?**

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. If the Court rejects your objection, you will still be bound by the terms of the settlement and will also receive a monetary award if you submitted a timely claim.

To object, you must send your written objection by mail, **postmarked on or before August 24, 2018**, to the following two addresses

Clerk of the Court
U.S. District Court, N.D. Cal.
450 Golden Gate Avenue, 17th Floor
San Francisco, CA, 94102

Lyft Class Action Settlement
Settlement Administrator
C/O Rust Consulting, Inc.—6069
PO Box 54
Minneapolis, MN 55440-0054

Your written objection must contain: (1) your full name, address, telephone number, and signature; (2) a heading that clearly refers to this case, *Zamora v. Lyft*; (3) a statement of the specific legal or factual reasons for your objection; and (4) a statement of whether you intend to appear at the Fairness Hearing, either in person or by having a lawyer represent you, and, if you will have a lawyer represent you, a statement identifying that lawyer by name, bar number, address, and telephone number. Your objection must be signed by you (or your legally authorized representative), even if you are represented by a lawyer. The requirement of submitting a written objection before any appearance at the final approval hearing may be excused upon a showing of good cause. More generally, substantial compliance with the requirements for submitting an objection is sufficient to have your objection heard by the Court.

**18. WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?**

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you cannot object to the settlement because the case no longer affects you.

### The Court's Fairness Hearing

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

**19. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**

The Court has preliminarily approved the settlement and will hold a hearing, called a Fairness Hearing, to decide whether to give final approval to the settlement. At the hearing, the Court also will consider Class Counsel's requested attorneys' fees and costs and the Class Representatives' requested Service Awards.

The Court has scheduled the Fairness Hearing for 10:00 a.m. on September 20, 2018, in Courtroom 4 of the United States District Court, Northern District of California located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102.

## 20. DO I HAVE TO COME TO THE HEARING?

No. Class Counsel will represent the Class at the hearing and answer any questions the Court may have. However, you have the right to attend the Fairness Hearing and be represented by your own lawyer at your own expense. If you plan to attend the Fairness Hearing, you should contact Class Counsel to confirm the date and time, as the hearing may be rescheduled without further notice.

## 21. MAY I SPEAK AT THE FAIRNESS HEARING?

You may ask the Court for permission to speak at the Fairness Hearing by following the steps listed under Question 17 above. If you have requested exclusion from the Settlement, however, you may not speak at the Fairness Hearing.

### If You Do Nothing

## 22. WHAT HAPPENS IF I DO NOTHING AT ALL?

If you do nothing, you'll get no money from this settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Lyft about the legal issues resolved by this settlement. Doing nothing will not affect your right to assert claims against Lyft arising after the approval of this settlement.

### Getting More Information

## 23. ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

This notice summarizes the proposed settlement. More details are in a settlement agreement. You can get a copy of the settlement agreement by writing to Outten & Golden LLP at One Embarcadero Center, 38th Floor, San Francisco, CA 94111, lyftdriversettlement@outtengolden.com, or by visiting **www.lyftclassactionsettlement.com**.

## 24. HOW DO I GET MORE INFORMATION?

You can visit **www.lyftclassactionsettlement.com**, call (877) 310-0486, or write to Lyft Class Action Settlement, Settlement Administrator, C/O Rust Consulting, Inc.—6069, PO Box 54, Minneapolis, MN 55440-0054. The website provides answers to common questions about the settlement, a claim-submission option, and key documents related to this case and this Settlement.

## PLEASE DO NOT CALL OR WRITE THE COURT
## OR THE OFFICE OF THE CLERK OF COURT REGARDING THIS NOTICE