1  Jahan C. Sagafi (Cal. Bar No. 224887)
2  jsagafi@outtengolden.com
   Outten & Golden LLP
3  One California Street, 12th Floor
   San Francisco, CA 94111
4  Telephone: (415) 638-8800
   Facsimile: (415) 638-8810
5
6  Rachel Bien (Cal. Bar No. 315886)
   rmb@outtengolden.com
7  601 S Figueroa St., Suite 4050
   Los Angeles, CA 90017
8  Telephone: (323) 673-9900
   Facsimile: (646) 509-2058
9
10 Michael J. Scimone (admitted pro hac vice)
   mscimone@outtengolden.com
11 OUTTEN & GOLDEN LLP
   685 Third Avenue, 25th Floor
12 New York, NY 10017
   Telephone: (212) 245-1000
13 Facsimile: (646) 509-2060
14
   *Counsel for Plaintiffs, Aggrieved*
15 *Employees, and Class Members*
16               **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17                 **SAN FRANCISCO DIVISION**
18 ALEX ZAMORA and RAYSHON CLARK,          Case No. 3:16-cv-02558-VC
   individually and on behalf of all other
19 similarly situated individuals,          **NOTICE OF MOTION AND MOTION
                                            FOR FINAL APPROVAL OF
20                                          SETTLEMENT; MEMORANDUM IN
                    Plaintiffs,             SUPPORT OF MOTION**
21
22        v.                                Date:  September 20, 2018
                                            Time:  10:00 a.m.
23 LYFT, INC.                               Courtroom:  4, 17th Floor
                                            Judge:  The Honorable Vince G. Chhabria
24                  Defendant.
25
26
27
28

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE that on September 20, 2018 at 10:00 a.m., or as soon

3  thereafter as the matter may be heard, in Courtroom 10 of this Court, located at 450 Golden

4  Gate Avenue, San Francisco, California, Plaintiffs Alex Zamora and Rayshon Clark, on behalf

5  of themselves and all others similarly situated ("Plaintiffs") will, and hereby do, move this

6  Court to grant, pursuant to Federal Rule of Civil Procedure 23(e), final approval of the Parties'

7  proposed class action settlement (the "Settlement"), and entry of judgment and dismissal of the

8  action in accordance with the Settlement; final class certification of the Settlement Class

9  conditionally certified in the Preliminary Approval Order (ECF No. 90).  Defendant Lyft, Inc.

10  ("Lyft" or "Defendant") does not oppose this motion.

11      Plaintiffs make this motion on the ground that the Settlement was reached after arms-

12  length negotiations by Class Counsel and Lyft, is fair and reasonable, and has drawn a

13  favorable response from the Class.

14      The motion is based on this notice of motion and motion; the memorandum in support

15  of the motion; the Declaration of Jahan C. Sagafi; the parties' Notice of Motion and Motion for

16  Preliminary Approval of Class Action Settlement, Conditional Certification of Class, Approval

17  of Class Notice, and Setting of Final Approval Hearing ("Preliminary Approval Motion")

18  (ECF No. 85) (as well as the accompanying Declaration of Jahan C. Sagafi (ECF No. 85-1);

19  the parties' Class Action Settlement Agreement and Release ("Settlement Agreement") (ECF

20  No. 85-2); the Court's Order Granting Preliminary Approval to Proposed Class Action

21  Settlement (ECF No. 90); the Motion for Award of Attorneys' Fees, Costs, and Service

22  Awards (ECF No. 92) (as well as the accompanying Declaration of Jahan C. Sagafi (ECF No.

23  92-1); the Court's record of this action; all matters of which the Court may take notice; and

24  any oral and documentary evidence presented at the hearing on the motion.

25  Dated: September 6, 2018                    Respectfully submitted,

26                                             By: /s/ Jahan C. Sagafi

27                                             Jahan C. Sagafi (Cal. Bar No. 224887)
28                                             OUTTEN & GOLDEN LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com

Rachel Bien (Cal. Bar No. 315886)
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058
E-mail: rmb@outtengolden.com

Michael J. Scimone (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: mscimone@outtengolden.com

*Counsel for Plaintiffs, Aggrieved Employees,
and Class Members*

1

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION                                                                                          1

II.     BACKGROUND                                                                                          2

        A.    The Litigation.................................................................................................. 2

        B.    Preliminary Approval of the Settlement ........................................................ 2

        C.    The Settlement ................................................................................................ 3

        D.    Notice Process ................................................................................................ 5

              1.    The Notice Requirements Were Satisfied. ............................................ 5

              2.    CAFA's Notice Requirements Have Been Satisfied................................ 6

III.    ARGUMENT                                                                                          7

        A.    The Best Practicable Notice of Settlement Has Been Provided to The Class, And
              No Class Members Have Objected to The Settlement............................................ 7

        B.    Final Approval Is Appropriate Under Rule 23 If It Is Fair, Adequate, And
              Reasonable .................................................................................................... 8

        C.    The Settlement Is Fair, Reasonable, And Adequate, And Has Already Been
              Approved by The Court at The Preliminary Approval Stage ............................... 9

              1.    The Parties Dispute the Strength of Plaintiffs' Case.............................. 9

              2.    The Risk, Expense, Complexity, and Delay of Further Litigation Support
                    Preliminary Approval............................................................................. 10

              3.    Plaintiffs Faced Risk of Losing Rule 23 Certification. ......................... 11

              4.    The Settlement Amount Will Fairly and Adequately Compensate Class
                    Members................................................................................................. 11

              5.    The Extent of Discovery Supports Settlement......................................... 12

              6.    Counsel's Experience and Views Support Approval. .............................. 12

              7.    The Parties Participated in Arms-Length Negotiations Before an
                    Experienced Neutral Mediator. ............................................................ 12

              8.    The Class Members Have Reacted Extremely Positively to
                    The Settlement ....................................................................................... 13

        D.    The Court Should Grant Final Class Certification.................................................. 14

IV.     CONCLUSION                                                                                          14

## TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE(S)**

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ...................................................................12

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)........................................................................7, 8

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992).................................................................2, 8, 10

*Cotter v. Lyft, Inc.*,
   176 F. Supp. 3d 930 (N.D. Cal. 2016) (*Cotter I*) ...............................................9

*Cotter v. Lyft, Inc.*,
   193 F. Supp. 3d 1030 (N.D. Cal. 2016) (*Cotter II*)......................................8

*Cotter v. Lyft, Inc.*,
   60 F. Supp. 3d (N.D. Cal. 2015) ...........................................................4

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)..............................................................................7

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ......................11

*Epic Systems Corp. v. Lewis Eyeglasses*,
   138 S.Ct. 1612 (2018)..............................................................................9

*Ford v. CEC Entm't Inc.*,
   No. 14 Civ. 677, 2015 WL 11439033 (S.D. Cal. Dec. 14, 2015) ................................7

*Guilbaud v. Sprint Nextel Corp.*,
   No. 13 Civ. 04357, 2016 WL 7826649 (N.D. Cal. Apr. 15, 2016).............................8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)...............................................................8, 11

*Harris v. Vector Marketing Corp.*,
   No. 08 Civ. 5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012).................................14

*Hughes v. Microsoft Corp.*,
   No. 93 Civ. 178C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ......................12

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014)..........................................................4, 10

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)...................................................................................11

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819 (D. Mass. 1987) ...............................................................................9

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)......................................................................................12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................................13

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982)...................................................................................8, 11

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)..................................................................................................8, 9

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)......................................................................................12

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)......................................................................................2, 8

*Tarlecki v. bebe Stores, Inc.*,
    No. 05 Civ. 1777, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009)...............................14

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ...............................................................................11

**STATUTES**

28 U.S.C. § 1715....................................................................................................................6, 7

Fair Labor Standards Act ..........................................................................................................14

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

**OTHER AUTHORITIES**

http://www.rustconsulting.com/About (last visited Mar. 20, 2018) ..........................................5

1

**MEMORANDUM IN SUPPORT OF MOTION**

2

**I.     INTRODUCTION**

3        Plaintiffs respectfully seek final approval of this $1,950,000 common fund settlement, as

4   set forth in the parties' Class Action Settlement Agreement and Release ("Settlement

5   Agreement") (ECF No. 85-2).  The settlement resolves all class and PAGA claims relating to

6   Lyft's alleged withholding of "Prime Time Premium" payments from Plaintiffs and Class

7   Members.  In addition, on April 7, 2017, Lyft ceased using the "for the driver" language that

8   Plaintiffs criticized as the foundation of their Prime Time Premium claims.  The remaining class

9   and PAGA claims (the non-Prime Time Premium-related claims such as mileage reimbursement,

10   overtime pay, minimum wage, and meal-and-rest breaks claims) are not being released, and will

11   be dismissed without prejudice.  All of Plaintiffs' individual claims will be released and

12   dismissed with prejudice.

13        The settlement is fair, reasonable, and adequate.  The Class has responded extremely

14   favorably to the Settlement.  Of the more than 245,000 Class Members to whom notices were e-

15   mailed or mailed (including reminder notices), no one has objected, only five Class Members

16   have opted out, and 65,609 Class Members (26.7%) have submitted Claim Forms.[1]  *See* Supp.

17   Decl. of Amy Tadewald for Rust Consulting, Inc. ("Tadewald Decl.") ¶¶ 12-14.  Furthermore,

18   Class Counsel have conducted sufficient discovery to enable them to adequately evaluate the

19   claims and defenses in the action.  Decl. of Jahan Sagafi in Supp. of Final Approval ("Sagafi

20   Decl.") ¶¶ 19-20.  Lastly, the Settlement is in line with the strength and recoverability of

21   Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation.

22

23

24

25

26   _____

[1] Although the opt out and exclusion deadline has passed, the period to submit claims does not

close until September 20, 2018, the date of the fairness hearing. Thus, Class Counsel will be

27   prepared to provide an updated claim submission total to the Court at that time.  However, should

the Court desire it, Plaintiffs can file a supplemental report in advance of the hearing.

28

1   *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*,

2   955 F.2d 1268, 1291 (9th Cir. 1992).[2]

3         In connection with requesting final settlement approval and consistent with the

4   Preliminary Approval Order, Plaintiffs also request that the Court confirm as final: (1) the

5   certification of the Class; and (2) the appointment of Plaintiffs as the Class Representatives and of

6   Plaintiffs' Counsel as Class Counsel. *See* Preliminary Approval Order, ECF No. 90 ("PA

7   Order").

8   **II.    BACKGROUND**

9       **A.    The Litigation**

10        Plaintiffs and Class Members are Lyft drivers who allege as follows. *See* Third Amended

11  Class Action Complaint, ECF No. 70 ("TAC") ¶ 14.  Starting in December 2013, during periods

12  of high rider demand relative to driver supply, Lyft began charging riders a premium (the "Prime

13  Time Premium"), in addition to the base price for a ride, in order to incentivize drivers to "drive

14  during the busiest times." *Id.* ¶ 15.  In the app, Lyft told customers that the Prime Time Premium

15  "goes entirely to your driver" or is "for your driver." *Id.* ¶¶ 15-17, 22-27.  In approximately

16  August 2014, despite telling customers that the Prime Time Premium goes to the driver (which

17  Plaintiffs argue made it a type of gratuity), Lyft began treating the Premium as a component of

18  the base fare from which it took a commission for itself. *Id.* ¶ 22.  Plaintiffs argue that this

19  violated California law because the Premiums belonged to the drivers as a gratuity and/or because

20  customers intended to provide them to drivers, not Lyft. *See id.* ¶ 28.  On April 7, 2017, Lyft

21  stopped using the challenged "for your driver" language. *Id.* ¶ 27.

22      **B.    Preliminary Approval of the Settlement**

23        On May 3, 2018, the Court held a Preliminary Approval hearing.  On May 11, 2018, it

24  granted preliminary approval, conditionally certified the Class, ordered that the Class be sent

25  notice of the Settlement, and set a schedule for final approval.  ECF No. 90 ("PA Order").

26  [2] Pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, Class
    Counsel have filed a reply to their motion for an award of attorneys' fees and costs, settlement

27  administration costs, and service payments to Plaintiffs (contemporaneously filed).

28

1

### C.    The Settlement

2      The Settlement Class[3] comprises all Drivers who gave at least one Prime Time Ride in

3  California during the Settlement Class period of August 18, 2014 to April 7, 2017.  ECF No. 85-2

4  (Settlement Agreement) ¶¶ 21 (qq), (ss).  There are approximately 245,975 Class Members.

5  Supp. Tadewald Decl. ¶ 4.

6      The $1,950,000 Settlement Amount will cover: (a) Class Member payments; (b) $100,000

7  for PAGA penalties, with 75% paid to the California Labor and Workforce Development Agency

8  (the LWDA); (c) two Named Plaintiff Service Awards of up to $10,000 each; (d) Class Counsel's

9  attorneys' fees of up to one-third of the Settlement Amount ($650,000); (e) litigation costs and

10  expenses (which are approximately $18,366.86 to date); and (f) settlement administration costs

11  expected to be $190,000.  ECF No. 85-2 (Settlement Agreement) ¶¶ 21(cc), 33, 37-38.  The "Net

12  Settlement Fund" (the amount allocated for Class Member payments) is defined as the Settlement

13  Amount minus items (b)–(f).  *Id.* ¶ 22(x).

14      To receive a Settlement Payment, a Class Member must timely submit a Claim Form,

15  must not have submitted a request for exclusion, and must be eligible for a payment under the

16  Plan of Allocation.  Each Class Member who satisfies these criteria is an Authorized Claimant.

17  *Id.* ¶ 40.  The Settlement Administrator will calculate the number of points to which each

18  Authorized Claimant is entitled based on the amount of unrefunded commissions he or she earned

19  for Prime Time Rides during various phases of the class period, as well as the total number of

20  Rides driven.  *Id.* ¶¶ 41-43.

21      The Plan of Allocation provides:

22    1.  Six hundred (600) points for each dollar of unrefunded commissions on Prime Time
        Rides the Authorized Claimant gave from the beginning of the Settlement Class
23        Period through March 16, 2015;

24    2.  Two hundred (200) points for each dollar of unrefunded commissions on Prime Time
        Rides the Authorized Claimant gave from March 17, 2015 through October 30, 2016;
25        and

26

---

[3] The use of capitalized terms in this Memorandum is consistent with those used in the Settlement

27  Agreement and are defined therein.  *See* ECF No. 85-2 (Settlement Agreement).

28

3. One hundred (100) points for each dollar of unrefunded commissions on Prime Time Rides the Authorized Claimant gave from October 31, 2016 through April 7, 2017.

*Id.* ¶ 43.  For each Authorized Claimant who gave: (1) 400 to 999 or more Rides during the Settlement Class period, the calculated points are doubled (*i.e.*, multiplied by 2); (2) 1,000 or more Rides during the Settlement Class period, the calculated points are tripled (*i.e.*, multiplied by 3).  *Id.* ¶ 44.

Class Members earn more points during the first time period (up through March 16, 2015) because Plaintiffs allege that the wording and placement of Prime Time Premium language on riders' Apps during this period makes the Prime Time Premium-related claims accruing in this period stronger than those accruing in later periods.  Sagafi Decl. ¶ 30.  Class members earn fewer points during the third time period (starting October 31, 2016) because on September 30, 2016, Lyft changed its arbitration agreement to provide drivers a thirty-day period during which each driver had the option of opting out of the arbitration agreement.  Thus, the allocation for this third period reflects the significantly greater litigation risk of these claims.  *Id.*; *see Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1077 (9th Cir. 2014).  Finally, the multiplier for drivers who provided substantially more rides reflects the potentially greater strength of their misclassification claims vis-à-vis drivers who provided fewer rides, a factor affecting several of Plaintiffs' claims.  *Id.*; *see Cotter v. Lyft, Inc.*, 60 F. Supp. 3d, 1607, 1081 (N.D. Cal. 2015).

The determination of each Authorized Claimant's number of Prime Time Rides is based on the relevant records that Lyft was able to identify following a good-faith inquiry, and Lyft has supplied those records to the Settlement Administrator in a standard electronic format.  ECF No. 85-2 (Settlement Agreement) ¶ 45; ECF No. 92-5 (Tadewald Decl.) ¶ 9.  Following the award of points to all Authorized Claimants, each Authorized Claimant's points shall be divided by the sum of the points awarded to the Authorized Claimants as a whole, and the resulting fraction shall be multiplied by the Net Settlement Fund.  ECF No. 85-2 (Settlement Agreement) ¶ 46.  The

1  product of this calculation is the Settlement Payment that each Authorized Claimant shall receive.

2  *Id.*

3  The Settlement Administrator has estimated its fees and costs will be $190,000.  *Id.* ¶

4  21(y).  To date, they are $50,675.55.  Supp. Tadewald Decl. ¶ 15.  To the extent this amount is

5  not sufficient to administer the settlement because of unanticipated costs, Plaintiffs will seek the

6  Court's approval to allocate an additional amount from the Net Settlement Fund.  ECF No. 85-2

7  (Settlement Agreement) ¶ 21(y).  Plaintiffs sought bids from several Settlement Administrators

8  before selecting Rust Consulting, Inc. ("Rust"), a claims administrator with significant expertise

9  and experience.[4]  Sagafi Decl. ¶ 32.  Rust's bid was substantially lower than its competitors' bids.

10  *Id.*

11  The deadline to submit Claim Forms is September 20, 2018 (the date of the final approval

12  hearing), and the deadline to opt out or object was August 24, 2018, which was 60 days after the

13  initial mailing of the Notice.  Supp. Tadewald Decl. ¶¶ 12-13; ECF No. 90 (PA Order) ¶ 18.

14  **D.**     **Notice Process**

15            **1.**     **The Notice Requirements Were Satisfied.**

16  The parties have followed the Court-approved notice plan, as set forth in the Settlement

17  and Preliminary Approval Order.  *See* Supp. Tadewald Decl. ¶¶ 4-11; ECF No. 92-5 (Decl. of

18  Amy Tadewald for Rust Consulting, Inc.) ("Tadewald Decl."); ECF No. 90 (PA Order) ¶¶ 12-13.

19  On or about June 11, 2018, Lyft provided Rust with an electronic list containing Class

20  Members' names, last known addresses, email addresses and applicable Ride, Prime Time Ride,

21  and unrefunded commissions during the Settlement Class Period.  *See* ECF No. 92-5 (Tadewald

22  Decl.) ¶ 9.  On June 25, 2018, Class Notices were emailed to 245,976 Class Members contained

23  on the class list.  *Id.* ¶ 10.  Of those, 3,484 emailed Class Notices were returned as undeliverable,

24  so the Settlement Administrator sent them a hard-copy Notice via First Class Mail.  *Id.* ¶¶ 4-5.  Of

25  those, 358 of these Notices were returned as undeliverable without forwarding addresses.  The

26  Settlement Administrator searched for updated addresses for those 358 Class Members.  *Id.* ¶ 6.

27  ---
[4] *See* http://www.rustconsulting.com/About (last visited Mar. 20, 2018).

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT;
MEM. IN SUPPORT
Case No. 3:16-cv-02558-VC

The Settlement Administrator found 234 new addresses and re-mailed Notices to those addresses. *Id.* Of those, 27 were returned as undeliverable. *Id.* To date, a total of 179 Class Notices (0.07% of the total) remain undeliverable. *Id.*

Rust created a website and a web address which was included in the Class Notice for Class Members to submit electronic Claim Forms, view, download and/or print the Notice and Claim Form, and obtain information about the Settlement.  ECF No. 92-5 (Tadewald Decl.) ¶ 4. An email address was also included in the Class Notice for receiving paper Claim Forms, requests for exclusion and other communications about the proposed Settlement.  *Id.* ¶ 5.

On August 3 and 21, 2018, reminder emails were sent to all Class Members who had not returned Claim Forms.  Supp. Tadewald Decl. ¶¶ 10-11.

The Notice explained the process for objecting to the Settlement and excluding oneself from the Settlement, along with contact information for Class Counsel and the Settlement Administrator.  ECF No. 92-5 (Tadewald Decl.) Ex. A.

The Settlement Administrator also maintained a toll-free telephone number to provide Class Members with additional information and has responded to 3,423 calls.  Supp. Tadewald Decl. ¶ 8.  Class Counsel have also answered numerous Class Members' inquiries about the Settlement.  Sagafi Decl. ¶ 34.

As of September 4, 2018, 65,609 Class Members had submitted Claim Forms, five had made requests for exclusion, and none had objected.  Supp. Tadewald Decl. ¶¶ 12-14.

### 2.      CAFA's Notice Requirements Have Been Satisfied.

On April 6, 2018, Lyft served upon the Attorney General of the United States and the appropriate officials of the states in which the Class Members reside a notice of the Settlement consisting of: a copy of the complaint and any amended complaints in this action, including any materials filed with the complaints; a notice of the scheduled preliminary approval hearing in this class action; copies of the Settlement; the proposed Notice; and a chart providing estimates of the number of class members in each state.  Sagafi Decl. ¶ 35; *see also* ECF Nos. 87, 87-1, 87-2.  The Parties have not received any comments from any state officials on the Settlement or on the CAFA notice provided by Lyft.  Sagafi Decl. ¶ 36.  The Final Approval hearing, set for

1   September 20, 2018, is being held more than 90 days after the issuance of the CAFA notice, such

2   that the final approval order may be entered in accordance with CAFA's notice requirements if

3   the Court finds that all other requirements are met.  28 U.S.C. § 1715(d).

4   **III.    ARGUMENT**

5       **A.    The Best Practicable Notice of Settlement Has Been Provided to The Class,
       And No Class Members Have Objected to The Settlement.**

6

7       The notice here was the "best notice that is practicable under the circumstances," Fed. R.

8   Civ. P. 23(c)(2)(B), and was provided "in a reasonable manner to all class members who would

9   be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Notice is satisfactory "if it generally

10  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

11  investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d

12  566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted).  Notice mailed to each

13  class member "who can be identified through reasonable effort" constitutes reasonable notice.

14  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  For any class certified under Rule

15  23(b)(3), the notice must inform class members "that the court will exclude from the class any

16  member who requests exclusion," stating "the time and manner for requesting exclusion."  Fed.

17  R. Civ. P. 23(c)(2)(B)(v)-(vi).

18      As described above, the emailing (and where email was unavailable, mailing) of Notices

19  to Class Members and the administration of the notice process ensured that the best notice

20  practicable was sent to Class Members, as due process requires.  The parties and Rust have

21  complied with the notice procedures set forth in the Settlement Agreement, which the Court

22  endorsed in its Preliminary Approval Order.  *See* ECF No. 90 (PA Order) ¶ 12.  Because Class

23  Members have been given a full and fair opportunity to consider the terms of the proposed

24  Settlement Agreement and to make an informed decision on whether to participate, the Court

25  should find that notice given was adequate for purposes of establishing due process.  *See Ford v.*

26  *CEC Entm't Inc.,* No. 14 Civ. 677, 2015 WL 11439033, at *3 (S.D. Cal. Dec. 14, 2015) (finding

27  notice standards satisfied when claims administrator provided notice in accordance with the

28  procedures previously approved by the court in its preliminary approval order).

B.      **Final Approval Is Appropriate Under Rule 23 If It Is Fair, Adequate, And Reasonable.**

On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton,* 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks omitted)). "Assessing a settlement proposal requires [a] court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Hanlon,* 150 F.3d at 1026; *accord Guilbaud v. Sprint Nextel Corp.*, No. 13 Civ. 04357, 2016 WL 7826649, at *2 (N.D. Cal. Apr. 15, 2016) (Chhabria, J.). In making an approval inquiry, the court must be mindful that the law favors the compromise and settlement of class action suits. *See, e.g., In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Additionally, a settlement is considered fair and reasonable if it occurred as a result of arms-length negotiations before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

Because "further factual development[s]" between preliminary and final approval, as well as the comments of objectors, may reveal unfairness in the settlement, even a "rigorous inquiry" at the preliminary approval stage does not "convert final review to a mere formality." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016) (Chhabria, J.) (*Cotter II*). Thus, Plaintiffs review the factual record supporting final approval below.

1

2

**C.**     **The Settlement Is Fair, Reasonable, And Adequate, And Has Already Been Approved by The Court at The Preliminary Approval Stage.**

3     The Court should find that the Settlement is fair, reasonable, and adequate, because the

4   *Hanlon* factors support approval.  *See Ortiz*, 527 U.S. at 852 (holding that arms-length

5   negotiations conducted by competent counsel after appropriate discovery are *prima-facie*

6   evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall*

7   *Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class

8   settlement has been reached after meaningful discovery, after arm's length negotiation, conducted

9   by capable counsel, it is presumptively fair.").  Applying a rigorous review at the preliminary

10   stage, the Court has already found the Settlement fair and reasonable.  ECF No. 90 (PA Order) ¶

11   2.  Here, the most significant development since the parties entered into the Settlement – the

12   Supreme Court's *Epic Systems* decision, allowing companies to require employees to sign, as a

13   condition of employment, contracts prohibiting future legal action in court and any collective or

14   class resolution of claims such as the Prime Time and misclassification claims – confirms that the

15   Settlement is an excellent outcome for Class Members.

16           **1.**     **The Parties Dispute the Strength of Plaintiffs' Case.**

17     The Parties have balanced "plaintiffs' expected recovery . . . against the value of the

18   settlement offer," taking into account "the relative strengths and weaknesses of the plaintiffs'

19   case." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (Chhabria, J.) (internal

20   quotations omitted) (*Cotter I*).  While Plaintiffs believe that they can prevail on all issues, to

21   recover full damages, they would have to surmount the following hurdles – loss on any one would

22   eliminate or significantly reduce the recovery: (1) Rule 23 class certification; (2) Lyft's motion to

23   strike claims subject to arbitration or a post-class certification motion to compel arbitration; (3)

24   summary judgment on the misclassification question and/or the third-party beneficiary contract or

25   conversion theories; (4) liability at trial; (5) damages showing through expert calculations; and (6)

26   appeal.

27

28

Arbitrability—whether resolved in Lyft's motion to strike or a subsequent motion to compel arbitration—is a particularly significant hurdle, the importance of which has grown since this case was filed.  Lyft has entered into arbitration agreements with its drivers, which were amended in September 2016 to permit drivers to opt out of arbitrating claims based on an alleged employment relationship between Lyft and the driver.  Only a few hundred drivers in California have attempted to do so.  *See* ECF No. 85-2 (Settlement Agreement) ¶ 9.  Thus, Lyft's opt-out provision is significant in protecting Lyft against the claims asserted here. *See Johnmohammadi*, 755 F.3d at 1077.

The PAGA allocation of $100,000 represents 5.1% of the total $1,950,000 settlement amount, which is in line with applicable precedent.  *See, e.g.*, *Cotter*, 193 F. Supp. 3d at 1037 ($1 million allocated to PAGA penalties for California-only $27 million settlement (*i.e.*, 3.7%)); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1329-30 (N.D. Cal. 2014) ($10,000 allocated to PAGA penalties from $1.25 million settlement (*i.e.*, 0.8%)).  This slightly greater allocation compared to other settlements is appropriate, given that the PAGA claim likely provides the only route by which Class Members could pursue claims on a representative basis.  However, proving entitlement to all PAGA penalties would be challenging, requiring both a victory on the underlying Labor Code claims and the Court exercising its discretion to award 100% of the penalty for all violations.  *See* Cal. Lab. Code § 2699(e)(2).

In light of these obstacles, the settlement amount is fair, reasonable, and adequate.

## 2. The Risk, Expense, Complexity, and Delay of Further Litigation Support Preliminary Approval.

Settlement now saves Class Members from significant risk of no recovery, the cost of individual litigation, and the delay inherent in further litigation and possible appeals.  As detailed above, the litigation is highly complex, both procedurally and substantively.  Settling Class Members' claims saves the parties from conducting substantial additional discovery, taking depositions, and engaging in pre-trial motion practice.  For these reasons, the law strongly favors settlements, particularly where complex class action litigation is concerned.  *See Class Plaintiffs*, 955 F.2d at 1276.

### 3.     Plaintiffs Faced Risk of Losing Rule 23 Certification.

Plaintiffs face the risk of losing on class certification.  Even if there was a strong chance that the Court would certify the misclassification issue, Lyft has argued that certification of the Prime Time Premium claim would not be appropriate because drivers and customers received different messages and had varying understandings about the Prime Time Premiums on their Apps during the class period, and has made clear that it would vigorously litigate the issue. Sagafi Decl. ¶ 27.  In addition, Lyft has argued that the pleaded class cannot be certified for litigation purposes because the vast majority of class members are subject to arbitration agreements with class waivers. *See* ECF No. 66.  These risks support the reasonableness of the Settlement.

### 4.     The Settlement Amount Will Fairly and Adequately Compensate Class Members.

The settlement amount, as with any settlement, represents a compromise between receiving full damages and penalties on the one hand, and total defeat (including possible imposition of defense costs) on the other.  Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010).  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the

Parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (citation omitted).  Accordingly, the settlement is not to be judged against a speculative measure of what might have been achieved.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  As set forth above, the compromise amount here is fair and adequate.

1

**5.      The Extent of Discovery Supports Settlement.**

2

Adequate discovery is required to justify settlement.  The touchstone of the analysis is

3

whether "the parties have sufficient information to make an informed decision about settlement,"

4

including formal and informal discovery.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

5

(9th Cir. 2000).  Here, Plaintiffs have thoroughly probed the factual basis for Class Members'

6

claims.  Sagafi Decl. ¶¶ 19-20.  They interviewed drivers and reviewed thousands of pages of

7

documents and data relevant to the claims.  *Id.* ¶ 19.  In sum, Plaintiffs engaged in sufficient

8

investigation to support this Settlement.

9

**6.      Counsel's Experience and Views Support Approval.**

10

The judgment of experienced counsel regarding the settlement is entitled to great weight.

11

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th

12

Cir. 1981) (Orrick, J.).  Reliance on such recommendations is premised on the fact that "[p]arties

13

represented by competent counsel are better positioned than courts to produce a settlement that

14

fairly reflects each party's expected outcome in litigation."  *Rodriguez v. W. Publ'g Corp.*, 563

15

F.3d 948, 967 (9th Cir. 2009) (quotations omitted).

16

Class Counsel are experienced attorneys specializing in complex employment class

17

actions.  Sagafi Decl. ¶¶ 4-17.  Over the past many years, they have successfully – and

18

unsuccessfully – litigated many such cases, enabling them to assess Plaintiffs' claims and the

19

Settlement.  *Id.*  The fact that qualified and well-informed counsel endorse the Settlement as

20

being fair, reasonable, and adequate favors this Court's approval of the Settlement.

21

**7.      The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator.**

22

23

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by

24

experienced, competent counsel equipped with enough information to act intelligently.  *See*

25

*Hughes v. Microsoft Corp.*, No. 93 Civ. 178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26,

26

2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length

27

negotiations between experienced capable counsel after meaningful discovery.") (quoting *Manual*

28

*for Complex Litigation (Third)* § 30.42 (1995) (internal quotation marks omitted)).

MOTION FOR FINAL APPROVAL OF SETTLEMENT;
MEM. IN SUPPORT
Case No. 3:16-cv-02558-VC

1    On February 1, 2017, Plaintiffs and Lyft mediated in San Francisco, California with

2    mediator Mark Rudy.  The Parties did not reach a settlement but continued to negotiate for

3    several months with the mediator's active assistance before reaching agreement on the

4    Settlement.  Sagafi Decl. ¶ 23.

5                  **8.      The Class Members Have Reacted Extremely Positively to The**
                            **Settlement.**
6

7    The reaction of the Class, which has been overwhelmingly positive, supports the

8    conclusion that the Settlement is fair and reasonable.  No Class Members have objected to the

9    Settlement and only five have opted out.  Supp. Tadewald Decl. ¶¶ 12-13.  The lack of objections

10   and minimal number of exclusions favors final approval.  *See Chun-Hoon v. McKee Foods Corp.*,

11   716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (Walker, J.) (granting final approval where only 16 of

12   329 class members opted out, and explaining that where exclusions and opt-outs are low, there is

13   presumption of favorable class reaction); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221

14   F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed

15   class action settlement raises a strong presumption that the terms of a proposed class settlement

16   action are favorable to the class members.").

17   In addition, 26.7% of the Class submitted Claim Forms, which is an excellent claims rate

18   in a case like this.  Courts consistently approve settlements with far lower claims rates in

19   consumer cases.[5]  *See, e.g.*, *Messineo v. Ocwen Loan Servicing, LLC*, No. 15-cv-02076-BLF,

20   2017 WL 733219, at *6 (N.D. Cal. Feb. 24, 2017) (9.3% percent of 9,000 potential class

21   members was "higher than average" for consumer class settlements); *Sylvester v. CIGNA Corp.*,

22   369 F. Supp. 2d 34, 52 (D. Me. 2005) (claim rates in claims made settlements "regularly yield

23   response rates of 10 percent or less"); *Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) ("claim rate as

24   low as 3 percent is hardly unusual in consumer class actions"); *Sullivan v. DB Invs., Inc.*, 667

25   F.3d 273, 329 n.60 (3d Cir. 2011) (citing evidence suggesting that "consumer claim filing rates

26   _____
     [5] Consumer cases provide an appropriate basis for comparison given that one main theory here is
27   a consumer theory (the alleged deceptiveness of "for the driver") and that the average awards
     were more in line with consumer cases than employment cases.

28

1    rarely exceed seven percent, even with the most extensive notice campaigns").  Even in more

2    conventional wage and hour class action settlements, claims rates are comparable or lower.  *See,*

3    *e.g., Harris v. Vector Marketing Corp.*, No. 08 Civ. 5198, 2012 WL 381202, at *2 (N.D. Cal.

4    Feb. 6, 2012) (approving settlement in FLSA case with a claims rate of 1% for sample kit

5    subclass and 27.4% for training time subclass); *Tarlecki v. bebe Stores, Inc.*, No. 05 Civ. 1777,

6    2009 WL 3720872, at *1-2 (N.D. Cal. Nov. 3, 2009) (approving settlement in FLSA case with

7    response rate of approximately 18%).

8           In these, and all other respects, the Settlement is fair, reasonable, and adequate, and is

9    appropriate for final approval.

10          **D.      The Court Should Grant Final Class Certification.**

11          The Court's Preliminary Approval Order provisionally certified the Settlement Class

12   pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  ECF No. 90 (PA

13   Order) ¶ 4.  The Court ruled that, for purposes of settlement, the Class meets the Rule 23

14   requirements.  *Id*.  The Court also appointed the named Plaintiffs as Class Representatives and

15   Plaintiffs' counsel as Class Counsel.  *Id*. ¶¶ 5-6.  For these reasons, and the reasons set forth in

16   Plaintiffs' motion for preliminary settlement approval and the present motion, Class Counsel

17   respectfully submit that the Court should grant final certification and collective action designation

18   for purposes of settlement of this matter and should confirm the appointment of the Class

19   Representatives and Class Counsel.

20   **IV.   CONCLUSION**

21          For the reasons set forth above, Class Counsel respectfully request that the Court grant

22   final approval of the Settlement.

23

24

25

26

27

28

Dated: September 6, 2018

Respectfully submitted,

By: /s/ Jahan C. Sagafi

Jahan C. Sagafi (Cal. Bar No. 224887)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com

Rachel Bien (Cal. Bar No. 315886)
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058
E-mail: rmb@outtengolden.com

Michael J. Scimone (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: mscimone@outtengolden.com

*Counsel for Plaintiffs, Aggrieved Employees, and Class Members*